IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHELLE ANDERSON, an individual, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TRAVELEX INSURANCE SERVICES INC. and TRANSAMERICA CASUALTY INSURANCE COMPANY,<br><br>Defendants. | Case No. 8:18-cv-00362<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Michelle Anderson ("Anderson" or "Plaintiff") alleges, on behalf of herself and all others similarly situated, upon personal knowledge as to herself and her acts and as to all other matters upon information and belief, as follows:

## NATURE OF THE ACTION

1.      This is a class action for damages and restitution against Travelex Insurance Services Inc. ("Travelex") and Transamerica Casualty Insurance Company ("Transamerica," and collectively with Travelex, "Defendants") arising from their wrongful conduct towards Plaintiff and other similarly-situated insurance policyholders. Plaintiff, along with the Class (defined below) she seeks to represent: purchased a travel insurance policy plan from Defendants which included an array of travel-related coverage protections offering indemnification for both pre- and post-departure perils; then subsequently canceled her insured travel plans prior to departure; but did not receive any *pro rata* refund for that portion of the gross policy premium which was paid exclusively for post-departure coverages that were unearned by Defendants because of the cancellation of those trips. As a result, Plaintiff, along

with the Class she seeks to represent, have suffered injury in the form of monetary loss by having paid premiums for insurance coverages for which Defendants had never been exposed to, or assumed, any transferred risk of loss.

2.     Travel insurance products provide reimbursement in the event of financial loss or hardship related to travel. Travel insurance is available to cover a wide array of perils associated with travel, including both pre-departure risks, such as the possibility that a traveler will lose pre-paid nonrefundable deposits or payments if a trip needs to be canceled prior to departure, as well as risks that arise exclusively post-departure, such as interruption of a trip, medical or dental emergencies during a trip, and baggage being lost, stolen or damaged during a trip. By its nature, this second category of coverages -- exclusively for post-departure risks -- is insurance coverage providing indemnification for travel related perils that can only arise after travel is underway.

3.     Travelex is one of the world's largest travel insurance providers. Travelers can purchase "Travelex Travel Insurance" through a number of distribution channels, including from a travel agent (either online or traditional "brick-and-mortar"), the Travelex website, a travel service provider's own website or other web-based booking platforms offered by third parties.

4.     Transamerica underwrites travel insurance policies (also referred to as "plans") sold by Travelex (hereinafter, "Travelex Travel Insurance Plans" or "Travel Insurance Plans").

5.     Defendants' Travelex Travel Insurance Plans group together insurance policy protection for various risks and sell that protection in a pre-packaged bundle. Travelex Travel Insurance Plans can include some or all of the travel insurance protections offered by Defendants.  Typically, the more perils covered by the Travel Insurance Plan, the more expensive is the gross premium for all the policy coverages combined within a single plan.

6. Travel Insurance Plans sold by Defendants include at least some travel benefits that are applicable exclusively post-departure, meaning that Defendants are not at risk of having to cover the associated risks prior to commencement of actual travel by the insured.

7. When an insured purchases a Travel Insurance Plan from Defendants, he or she receives a "Description of Coverage." The Travel Insurance Plan underwritten by Defendants consists of the Description, which governs the terms and conditions for coverage when there is a sudden, unexpected problem or event before or during travel. The Description delineates the different policy benefits actually purchased by the insured through his or her particular Travelex Travel Insurance Plan, the coverage limits of each corresponding benefit, and finally, the gross premium paid for the entire package of separate coverage options purchased.

8. Defendants can readily identify the *pro rata* share of the gross premium which is attributable to each policy benefit purchased by each insured under that person's specific plan.

9. The Travel Insurance Plans offered by Defendants do not address how refunds are to be handled, such as Defendants' legal obligation to refund any portion of the gross insurance premium that was paid in advance for delineated post-departure coverages that were in fact never provided.

10. Whenever a Certificate holder informs Travelex that he or she is cancelling their trip for whatever reason, Defendants systematically refuse to return *any* portion of the gross premium paid for the purchased Travel Insurance Plan. This systematic refusal to refund any portion of the gross premium includes even the failure by Defendants to return the *pro rata* portion of the gross premium which the insured paid exclusively for coverage of post-departure risks – which risks are never assumed by, or transferred to Defendants, when an insured cancels his or her trip prior to commencement of actual travel.

11. Contrary to the non-refund policy adopted by Defendants, when an insured

3

cancels his or her trip prior to departure, Defendants are obligated to return the portion of the premium paid for coverage of risks that are only applicable post-departure. This is because the portion of the gross premium paid in exchange for these exclusively post-departure benefits is unearned, inasmuch as Defendants were never at risk of having to cover the perils of actual travel. Thus, in this precise situation, Defendants have failed to provide any consideration in return for the portion of the gross premium which must always be paid in advance of travel for any of the provided coverages, including post-departure perils.

12. This systematic failure of Defendants to return the unused and unearned premium to purchasers of Defendants' Travel Insurance Plans is unfair, unjust and unlawful. Each member of the proposed Class (defined below) has been similarly injured financially by Defendants' misconduct, and is entitled to restitution of the portion of the gross premium that Defendants accepted in exchange for insuring against post-departure risks, but for which they never provided any coverage (*i.e.*, assumed the specified risks) in return.

**PARTIES**

13. At all relevant times, Plaintiff Anderson was (and continues to be) a citizen and resident of Arizona.

14. Defendant Travelex Insurance Services Inc. ("Travelex") is a Delaware Corporation, with its principal U.S. office located at 9140 West Dodge Road, Suite 300, Omaha, Nebraska and its global headquarters in London, England. Travelex operates in the U.S. and worldwide, and purports to be a leading provider of travel insurance in North America. Travelex is part of the Travelex Group, which specializes in currency exchange.

15. Defendant Transamerica Casualty Insurance Company ("Transamerica") is an Ohio corporation, with its principal office located in Baltimore, Maryland. Transamerica is the underwriter for travel insurance policies, pursuant to which Travel Insurance Plans are issued by

Travelex to individual insureds in nearly every other state in the United States. Transamerica is licensed with the Nebraska Department of Insurance.

## JURISDICTION AND VENUE

16. This Court has original jurisdiction over the claims asserted herein individually and on behalf of the class pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005. Subject matter jurisdiction is proper because: (1) the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; and (2) there are more than 100 Class members; (3) at least one member of the Class is diverse from the Defendants; and (4) the Defendants are not governmental entities.

17. Personal jurisdiction is proper as Defendants have purposefully availed themselves of the privilege of conducting business activities within the State of Nebraska. Venue is proper in this District pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims asserted herein occurred in the this District. At all pertinent times, Defendants were (and remain) in the business of marketing, advertising, distributing, and selling travel insurance throughout Nebraska and nationwide.

## FACTUAL ALLEGATIONS

### A. Defendants' Travel Insurance Policies and Practices

18. Defendants sell travel insurance policies on either an annual basis or for a single trip. Annual policies are not trip-specific and are designed to provide insurance coverage for 365 days of travel. Conversely, single-trip policies are designed specifically to cover the perils associated with a specific trip. This case relates exclusively to single-trip policies.

19. Pursuant to an agreement executed between Travelex and Transamerica, Travelex is responsible for collecting and refunding premium payments in connection with ravel insurance underwritten by Transamerica. Travelex collects, maintains, and refunds premiums from

Nebraska.

20. Defendants' travel insurance policies are sold through numerous platforms, such as their own website, by phone, through travel agents or via the internet, including through airline and cruise ship websites (often in conjunction with the purchase of a ticket), as well as other travel service websites.

21. Defendants' single-trip travel insurance policies are sold in a variety of Travelex Travel Insurance Plan packages, offering varying levels and types of coverages.

22. The Travelex Travel Website's "Travelex Travel Insurance Plans" section describes multiple plans, "Travel Basic," "Travel Select," "Travel Max," "Business Traveler," and "Flight Insure Plus," each of which have single-trip coverage options.

23. Defendants represent these Travelex Travel Insurance Plans as being tailored for travelers facing different circumstances. The "Travel Basic" plan is marketed as "Travel protection for all your essential travel needs"; the "Travel Select" plan is marketed as "travel protection to match your lifestyle"; the "Travel Max" plan is marketed as being "[l]uxury protection for complete coverage"; the "Business Traveler" plan is marketed as providing "extra peace of mind when traveling for business"; and finally, the "Flight Insure Plus" plan allows insureds "to choose between different levels of flight insurance protection."

24. The common denominator of all of Defendants' single-trip Travel Insurance Plans is that they all include at least one benefit covering a peril which can *only* arise post-departure, and has zero possibility of ever occurring prior to commencement of the single insured trip.

25. For instance, even the "Travel Basic" plan includes "100% of Insured Trip Cost" for "Trip Interruption." As made clear by the very title of "Trip Interruption," if the insured person never commences the insured travel, the insurance company never assumes any risk that it will have to pay for an interrupted trip.

26. The more expensive the plan, the more post-departure benefits are included in the plan. For instance, the "Travel Select" plan, which is the level above "Travel Basic", includes higher coverages applicable exclusively post-departure, such as coverage for: a) "Baggage / Baggage delay"; b) "Medical Expense Benefits"; and c) "Medical Evacuation / Repatriation of Remains" -- all of which can only be triggered after a trip has started. The next level up, the "Travel Max" plan, increases the coverage limit further for each benefit, and adds "Common Carrier AD&D [accidental death and dismemberment]" coverage.

27. Regardless of the purchase platform utilized, or the specific benefits included in any purchased Travelex Travel Insurance Plan, Defendants as a matter of standard course and practice, do not refund any portion of the gross premium paid, including those premiums paid exclusively in exchange for post-departure coverage even when an insured does not commence the insured trip.

28. This practice is wrong. Defendants are not at risk of ever having to cover any post- departure perils until an insured actually commences his or her trip. When an insured cancels an insured trip prior to departure, Defendants have neither accepted nor assumed any transferred risk of loss associated with post-departure perils, and as such, provide no consideration in exchange for, and have not earned, the premiums they have been paid to cover those particular risks.

29. Therefore, when an insured cancels his or her trip prior to commencement, Defendants are required, but systematically fail, to return the *pro rata* portion of any gross premium already paid which represents the Defendants' charges for purportedly insuring against post-departure perils.

30. Aside from the absence in the Trip Insurance Plans of any provision stating that Defendants have no obligation to make a *pro rata* refund of that portion of the gross premium

which was paid exclusively for post-departure coverages when an insured does not commence insured travel, the Policy affirmatively states that any coverages for perils besides "trip cancellation" never even begin until the scheduled departure date. Specifically, the Description states: "Post-Departure Trip Interruption coverage will take effect on the Scheduled Departure Date."

31. Therefore, even the express terms of Defendants' own drafted policy language makes clear that, when an insured cancels their insurance prior to the date of departure, no peril is being insured by Defendants besides those perils specifically covered by "trip cancellation."

B. **Allegations Related to Michelle Anderson**

32. On September 21, 2015, plaintiff Anderson purchased one ticket from American Airlines for round-trip travel from Phoenix Sky Harbor to London Heathrow, with travel scheduled to begin on November 5, 2015 and to return on November 15, 2015 through a travel business named Just Air Ticket. Anderson's step mother was dying and Anderson wanted to visit her before she passed away.

33. On the same day, she purchased a travel insurance policy to insure the same trip. She purchased the policy from Just Air Ticket. It was a Travelex "Custom Wholesale" plan, plan number 414A-0815, version 0815. The policy included pre- and post-departure benefits. (Policy, page 1, column 2.) The pre-departure benefit was Trip Cancellation. (*Id*.) Post-departure benefits were Trip Interruption, Trip Delay, Baggage & Personal Effects, Baggage Delay, and Travel Assistance & Concierge Services. (*Id*.) The policy indicates that coverage for post-departure risks will never begin before "the date and time you start your Covered Trip." (Policy, page 1, column 3.)

34. Anderson purchased the policy through a link to Travelex's website which is maintained in Omaha, Nebraska. After she purchased the policy, Travelex sent her an email from

Omaha with links to the Description of Coverage and the Confirmation of Coverage.

35. The Description of Coverage contained a phone number for questions about the insurance. The phone number is maintained by Travelex in Nebraska.

36. Travelex collected Anderson premium in Nebraska and Travelex remitted a portion of the premium to Transamerica.

37. Approximately twenty-four hours before her scheduled departure, Anderson's abusive husband told her that if she left to go to London, he would neglect her children. Feeling that she had no choice, Anderson canceled her travel and did not depart.

38. On November 29, 2015, Anderson submitted a claim to Defendants. On December 9, 2015, Transamerica Casualty Insurance Company denied her claim. "According to the information provided you cancelled your trip because your husband threatened to take your children if you left on your trip. As the reason for trip cancellation is not covered under the policy, we regret we are unable to consider your claim."

39. On November 10, 2016, Anderson sent another letter to Defendants, demanding that they return her the premium she paid for post-departure travel insurance coverage that was not provided. On November 24, 2016, Defendants again denied her request.

40. The policy does not contain contractual provisions relevant to the return by Defendants of unearned, risk-free premiums. Additionally, as discussed above, the travel insurance plan contains language indicating that coverages will never begin before the scheduled departure date and most coverage will not begin before the actual departure occurs.

41. The Travel Insurance Plan fails to address the refund of premiums when a trip is canceled prior to commencement. Therefore, Defendants were obligated to return that portion of the gross premium that had been paid by Anderson for benefits exclusively covering post-departure risks. Defendants had not earned these premiums, as they had provided no

9

consideration in exchange for the premiums paid by Anderson for those benefits as they were never at risk of having to pay for any such benefit.

42. Defendants' practice of failing to refund any portion of the premiums paid for post-departure benefits is systematic and uniform whenever an insured cancels an insured trip before he or she gets started.

## CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and all others similarly situated, on behalf of a proposed nationwide class (the "Class"), initially defined as:

> All persons (including natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons) who while in the United States, or who as residents of the United States, purchased a single trip travel insurance plan from Defendants that included any coverages applicable exclusively to post- departure risks, canceled the travel associated with that plan prior to the scheduled departure and did not receive a refund from Defendants for the insurance premium paid exclusively for post-departure benefits.

44. Excluded from the Class are Defendants, their employees, officers, directors, legal representatives, heirs, successors and wholly- or partly-owned subsidiaries or affiliates.

45. The number of persons who are members of the Class is so numerous that joinder of all members in one action is impracticable. The Class is reasonably estimated to be at least in the thousands. While the precise number, names, and addresses of all members of the Class are unknown to Plaintiff, such information is ascertainable from Defendants' records, including as to the identity of its insureds and the policies and coverages purchased.

46. The claims of the Class all derive directly from a single uniform policy of Defendants of not refunding insurance premiums paid for post-departure benefits, whenever an insured cancels their travel prior to the scheduled departure.

47. The objective facts are the same for all Class members in that: a) each paid a gross premium to Defendants as consideration for a travel insurance plan with pre-bundled coverage options, which included coverage protection exclusively against post-departure travel risks; b) each canceled their insured trip prior to the scheduled departure; and, Defendants unfairly, unjustly and unlawfully failed in that precise circumstance to ever return to each and every Class member the *pro rata* portion of the gross premium that was paid for exclusively post-departure benefits (whether or not requested by the Class member).

48. Defendants did not differentiate, in degree of care or candor, their actions or inactions among individual members of the Class in regard to their failure to make *pro rata* refunds of unearned, risk-free premiums for post-departure perils that were never actually insured by Defendants as a result of trips that were canceled before departure. The objective facts on this subject is the same for all members of the Class. Within each Claim for Relief asserted below by the respective Class, the same legal standards govern resolution of the same operative facts existing across all members' individual claims.

49. Because the claims of each member of the Class have a common origin and share a common basis in terms of Defendants' systematic misconduct, there are common questions of fact and law which exist as to each Class member under Federal Rule of Civil Procedure 23(a)(2), and which predominate over any questions affecting only individual members under Federal Rule of Civil Procedure 23(b).

50. Substantial questions of fact and law that are common to all members of the Class, and which control this litigation and predominate over any individual issues, include the following:

    a) Whether Defendants, as a matter of course and policy, retained unearned, risk-free premiums paid exclusively for coverage of post-departure perils, whenever the purchaser of a Travelex Travel Insurance Plan canceled their travel prior to his or her scheduled departure;

11

b) Whether Defendants' Travel Insurance Plans addresses the entitlement of insureds to refund of unearned, risk-free premiums paid for post-departure perils that were never actually insured departure;

c) Whether by virtue of the travel insurance purchaser cancelling his or her trip prior to departure, Defendants faced no risk of having to cover post-departure perils and thus retained unearned premium;

d) Whether by virtue of the travel insurance purchaser cancelling his or her trip prior to departure, Defendants provided no consideration in exchange for the premiums paid exclusively for coverage of post-departure perils;

e) Whether it would be unjust for Defendants to retain the *pro rata* portion of the gross premium paid exclusively for post-departure coverage, when an insured cancels his or her trip; and

f) Whether Defendants' conduct constitutes unlawful conduct in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601, et. seq.

51. Plaintiff's claims are typical of the claims of the Class, and arise from the same course of conduct undertaken by Defendants against the Class as a whole. There are no conflicts between the interests of the named Plaintiff and the interests of the members of the Class. The relief Plaintiff seeks is typical of the relief sought for the members of the Class.

52. Plaintiff will fairly and adequately represent and protect the interests of the Class because of the common injury and interests of the members of the Class and the singular conduct of Defendants that is, and was, applicable to all members of the Class. Plaintiff has retained counsel competent and experienced in class action litigation that will adequately represent and protect the interests of the members of the Class.

53. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) not only because common questions of fact and law predominate, but also because a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications

of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

54. Plaintiff is also not aware of any litigation that has been commenced over the controversies alleged herein or any management difficulties which should preclude maintenance of this litigation as a class action. Plaintiff does not anticipate any difficulty in the management of this action as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into further Subclass.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

55. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56. Defendants have been unjustly enriched at the expense of Plaintiff and other members of the Class as a result of Defendants' systematic and willful misconduct.

57. Plaintiff and other members of the Class have conferred a benefit upon Defendants, in the form of unearned, risk-free premiums, and Defendants have appreciated and

knowingly retained that benefit without lawful justification or excuse. Upon information and belief, Defendants will not return the unearned, risk-free premiums which they have deliberately retained absent this litigation.

58. Whenever travel is canceled by insureds prior to commencement of the insured trip, Defendants' retention of the premiums paid for these post-departure benefits is unjust and inequitable because Defendants are never placed in a position of being at risk of having to pay post-departure benefits to Plaintiff and other members of the Class. Put simply, no coverage of any post-departure peril is ever transferred to or assumed by Defendants in this cancellation scenario, and thus, such coverage is wholly illusory since the *sine qua non* of post-departure travel insurance (irrespective of the type and level purchased within any particular Plan) is *actual travel* on the insured trip.

59. Never having been placed at risk, Defendants' retention of these premiums is also unjust because they have provided no consideration in return for their retention of these premiums.

60. Further, there is no lawful justification or excuse for Defendants' systematic and willful misconduct. The Travel Insurance Plans executed by and between Plaintiff and other members of the Class, on the one hand, and Defendants, on the other, nowhere set forth the alleged right of Defendants to withhold refund of any premiums previously paid for post-departure benefits in the event that an insured needs to cancel his or her insured trip. If anything, the Travel Insurance Plans (written exclusively by Defendants) expressly state that "Post-Departure Trip Interruption coverage" will take effect on the Scheduled Departure Date."

61. Because Defendants do not give any consideration for the premiums which are allocable to post-departure benefits, even if any portion of the insurance contract purported to allow retention of premiums paid for exclusively post-departure benefits when an insured does

not commence travel, this provision would be void and/or ineffective as a matter of law.

62. It would be inequitable for Defendants to retain the profits obtained from their wrongful conduct, and retaining such profits would come at the expense of Plaintiff and other members of the Class who are entitled to a *pro rata* refund of their gross premium. Plaintiff and other members of the Class are entitled to restitution and/or disgorgement of all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

## SECOND CAUSE OF ACTION

**Violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601, et seq.
(On Behalf of Plaintiff and the Class)**

63. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64. Through their conduct described above, Defendants have engaged in unfair and deceptive acts and practices that resulted in injury to Plaintiff and the other members of the Class.

65. Defendants' acts and practices were directed to consumers, including Plaintiff and members of the Class.

66. By virtue of Plaintiff and other members of the Class having canceled their trips prior to departure, Defendants' consideration (namely, the provision of insurance coverage protecting against post-departure perils) either became entirely void or materially failed before ever being rendered, because Defendants never had to assume the risk of having to cover any of these perils.

67. Plaintiff and other members of the Class have suffered monetary damages, including in the form of the unearned premiums retained by Defendants.

68. By reason of the foregoing, Defendants violated the Nebraska Consumer Protection Act by, *inter alia*, failing to return the premium apportionable to travel that did not occur and for which they never had to assume the risk of having to cover any of these perils.

69.     Defendants should be enjoined from their unlawful refunding practices and failure to failing to disclose their actual practices. Defendant is also liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus attorneys' fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and other members of the Class, respectfully requests that the Court:

A.     Certify the Class defined herein pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and designate the Plaintiff as the representative of, and their undersigned counsel as Counsel for the Class;

B.     Enter judgments against each of the Defendants and in favor of the Plaintiff and other members of the Class predicated on Defendants' unjust enrichment;

C.     Enter judgments against each of the Defendants and in favor of the Plaintiff and other members of the Class predicated on Nebraska Consumer Protection Act;

D.     Award Plaintiff and the Class actual and compensatory damages as allowed by law in an amount to be determined at trial;

E.     Award Plaintiff and the Class restitution and/or disgorgement of ill-gotten gains, as appropriate;

F.     Award Plaintiff and the Class costs and reasonable attorneys' fees, as allowed by law under the Nebraska Consumer Protection Act;

G.     Award Plaintiff and the Class their costs of suit, including reasonable attorneys' fees, as allowed by law under the common fund doctrine and any other applicable statute or rule;

H.     Award Plaintiff and the Class pre-judgment and post-judgment interest, as

allowed by law;

    I.      Award Plaintiff and the Class injunctive relief, as appropriate; and

    J.      Award such further and additional relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff, on behalf of herself and the proposed Class, demands a trial by jury on all issues so triable.

DATED: July 30, 2018        */s/ Burke Smith*
                                         Burke Smith, #19883
                                         BURKE SMITH LAW
                                         10730 Pacific St #100
                                         Omaha, NE 68114
                                         Tel: (402) 718-8865
                                         Fax: (402) 218-4391
                                         burke@burkesmithlaw.com

                                         *Local Counsel for Plaintiff and the Proposed Class*

                                         BERGER & MONTAGUE, P.C.
                                         Peter R. Kahana, #33587
                                         Lane L. Vines, #80854
                                         Y. Michael Twersky, #312411
                                         1622 Locust Street
                                         Philadelphia, PA  19103
                                         Tel: (215) 875-3000
                                         Fax: (215) 875-4604
                                         pkahana@bm.net
                                         lvines@bm.net
                                         mitwersky@bm.net

                                         BERGER & MONTAGUE, P.C.
                                         John G. Albanese, #0395882
                                         43 S.E. Main Street, Suite 505
                                         Minneapolis, MN 55414
                                         Tel:  (612) 594-5997
                                         Fax:  (612) 584-4470
                                         jalbanese@bm.net

                                                  -and-

EVANS LAW FIRM, INC.
Ingrid Evans, #179094
3053 Fillmore Street, #236
San Francisco, CA 94123
Tel.: (415) 441-8669
Fax: (888) 891-4906
ingrid@evanslaw.com

*Co-Lead Counsel for Plaintiff and the Proposed Class*