## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

MICHELLE ANDERSON, an individual, on
behalf of herself and all others similarly
situated,

                Plaintiff,

v.

TRAVELEX INSURANCE SERVICES INC.
and TRANSAMERICA CASUALTY
INSURANCE COMPANY,

                Defendants.

Case No. 8:18-cv-00362-JMG-SMB

---

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO CERTIFY THE COURT'S MARCH 20, 2020 ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b), AND FOR A STAY OF PROCEEDINGS

---

Julianna Thomas McCabe
Michael N. Wolgin
CARLTON FIELDS, P.A.
Miami Tower, Suite 4200
100 S.E. Second Street
Miami, Florida 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055

Markham R. Leventhal
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
Telephone: (202) 965-8189
Facsimile: (202) 965-8104

*Attorneys for Defendants*
*Travelex Insurance Services, Inc. and*
*Transamerica Casualty Insurance Company*

## <u>TABLE OF CONTENTS</u>

<div align="right"><u><i>Page</i></u></div>

INTRODUCTION AND BACKGROUND ................................................................. 1

LEGAL STANDARD......................................................................................... 3

ARGUMENT ................................................................................................. 4

I.     THE COURT SHOULD CERTIFY THE MARCH 20, 2020 ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)........................................ 4

     A.     The Order Involves a Controlling Question of Law ................................. 4

     B.     The Order Involves Substantial Grounds For A Difference Of Opinion............... 7

          1.     The Order deepens the split of district court decisions within the Eighth Circuit addressing a named plaintiff's standing to assert class claims ........................................................................... 7

          2.     The Court's reading of *In re SuperValu* creates a conflict with other Eighth Circuit authority ................................................. 10

     C.     An Immediate Appeal Will Materially Advance The Ultimate Termination Of The Litigation ............................................................... 12

II.     THE COURT SHOULD STAY THE PROCEEDINGS PENDING RESOLUTION OF THE APPEAL TO THE EIGHTH CIRCUIT ................................. 14

CONCLUSION............................................................................................... 16

CERTIFICATE OF COMPLIANCE ..................................................................... 18

CERTIFICATE OF SERVICE ............................................................................ 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Altman v. White House Black Market, Inc.*,
    2018 WL 3203151 (N.D. Ga. Apr. 9, 2018) ....................................................................11

*APCC Servs., Inc. v. Sprint Commc'ns, Co.*,
    297 F. Supp. 2d 90 (D.D.C. 2003) .................................................................................6

*Beaver County Employees' Retirement Fund v. Tile Shop Holdings, Inc.*,
    94 F. Supp. 3d 1035 (D. Minn. 2015) .....................................................................2, 8, 9

*Blum v. Yaretsky*,
    457 U.S. 991 (1982) ......................................................................................................10

*Bussing v. COR Clearing, LLC*,
    2014 WL 3548278 (D. Neb. July 17, 2014) ...................................................................7

*Chelette v. Harris*,
    229 F.3d 684 (8th Cir. 2000) ..........................................................................................3

*Chin v. General Mills, Inc.*,
    2013 WL 2420455 (D. Minn. June 3, 2013) ..................................................................8

*Delock v. Securitas Sec. Servs. USA, Inc.*,
    883 F. Supp. 2d 784 (E.D. Ark. 2012) .....................................................................4, 16

*Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft,*
    *MBH*,
    495 F.3d 582 (8th Cir. 2007) ..........................................................................................4

*Elizabeth M. v. Montenez*,
    458 F.3d 779 (8th Cir. 2008) ..................................................................................10, 11

*Emerson Elec. Co. v. Yeo*,
    2013 WL 440578 (E.D. Mo. Feb. 5, 2013) ................................................................4, 5

*In re Endosurgical Products Direct Purchaser Antitrust Litig.*,
    2007 WL 9772276 (C.D. Cal. Oct. 9, 2007) ..................................................................6

*Ferrari v. Best Buy Co.*,
    2015 WL 2242128 (D. Minn. May 12, 2015) ................................................................8

*In re General Mills Glyphosate Litig.*,
    2017 WL 2983877 (D. Minn. July 12, 2017) ...................................................8

*Grant v. Convergys Corp.*,
    2013 WL 1342985 (E.D. Mo. Apr. 3, 2013)..........................................7, 12, 16

*Grisham v. Welch Foods, Inc.*,
    2017 WL 2257342 (E.D. Mo. May 22, 2017) ...................................................8

*H&R Block Tax Servs. LLC v. Franklin*,
    2011 WL 13233811 (W.D. Mo. Nov. 16, 2011)........................................12, 16

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*,
    2014 WL 943224 (D. Minn. Mar. 11, 2014) ....................................................8

*Johnson v. Atkins Nutritionals, Inc.*,
    2017 WL 6420199 (W.D. Mo. Mar. 29, 2017)..................................................8

*Kelly v. Cape Cod Potato Chip Co.*,
    81 F. Supp. 3d 754 (W.D. Mo. 2015) .........................................................2, 8

*Moore v. Apple Central, LLC*,
    2017 WL 11195761 (W.D. Ark. March 16, 2017) ...........................11, 14, 15, 16

*Olberding v. Union Pacific Railroad Co.*,
    2007 WL 1656276 (W.D. Mo. Jun. 7, 2007)..................................................11

*Perry v. Johnston*,
    2010 WL 546774 (E.D. Mo. Feb. 9, 2010)..........................................5, 7, 16

*Prado-Steiman v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) ...............................................................10, 11

*Pro-Edge L.P. v. Gue*,
    2006 WL 8456918 (N.D. Iowa May 15, 2006)..........................................7, 16

*Rawa v. Monsanto Co.*,
    2017 WL 3392090 (E.D. Mo. Aug. 7, 2017) ...................................................8

*Retirement Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago
    v. Bank of N.Y. Mellon*,
    775 F.3d 154 (2d Cir. 2014)........................................................................5

*School District of Kansas City, Mo. v. Missouri*,
    460 F. Supp. 421 (W.D. Mo. 1978) ...............................................................6

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
  2012 WL 5389674 (D. Minn. Nov. 2, 2012) ............................................................ *passim*

*Smith v. Atkins Nutritionals, Inc.*,
  2018 WL 9868591 (W.D. Mo. May 8, 2018) ................................................................8

*Stearns v. NCR Corp.*,
  2000 WL 34423090 (D. Minn. Oct. 11, 2000) ................................................14, 15, 16

*In re SuperValu, Inc.*,
  870 F.3d 763 (8th Cir. 2017) .............................................................................10, 11

*In re: Target Corp. Customer Data Sec. Breach Litig.*,
  892 F.3d 968 (8th Cir. 2018) .......................................................................................10

*White v. Nix*,
  43 F.3d 374 (8th Cir. 1994) ...........................................................................................4

*Wieboldt Stores, Inc. v. Schottenstein Stores Corp.*,
  1989 WL 51068 (N.D. Ill. May 5, 1989) ....................................................................14

*Wong v. Wells Fargo Bank N.A.*,
  789 F.3d 889 (8th Cir. 2015) .......................................................................................11

## **Statutes**

28 U.S.C. 1292(b) .............................................................................................................1

28 U.S.C. §1292(b) ................................................................................................ *passim*

Defendants Travelex Insurance Services, Inc. ("TIS") and Transamerica Casualty Insurance Company ("Transamerica") (collectively, "Defendants") respectfully submit this memorandum of law in support of their Motion to Certify the Court's March 20, 2020 Memorandum and Order for Interlocutory Appeal Pursuant to 28 U.S.C. §1292(b), and for a Stay of Proceedings (the "Motion").

## INTRODUCTION AND BACKGROUND

Section 1292(b) of Title 28 of the United States Code permits a district court to certify for interlocutory appeal an order that "involves a controlling question of law as to which there is substantial ground for difference of opinion," when "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. 1292(b). This Court's March 20, 2020 Memorandum and Order (Doc. No. 82) (the "Order") meets all of these criteria and involves a fundamental, threshold issue of subject matter jurisdiction that will drastically impact the scope and complexity of this matter. In addition, the Article III standing issue addressed in the Order has split the district courts within this Circuit, and as the Court noted in its Order, the Eighth Circuit has not had the opportunity to directly address the issue. Given the importance and recurring nature of this issue in class action litigation throughout this Circuit, this issue presents a classic example of the exceptional case in which an appeal pursuant to 28 U.S.C. § 1292(b) is appropriate.

The Order denied Defendants' Motion to Dismiss Certain Claims for Lack of Article III Standing (Doc. Nos. 65, 66) (the "Motion to Dismiss"). In the Motion to Dismiss, Defendants argued that Plaintiff's claims on behalf of purchasers of travel protection plans that she did not herself purchase, were due to be dismissed for lack of Article III standing. Defendants relied on a majority of district court cases in this Circuit addressing this issue, which hold that, as a matter of subject matter jurisdiction, a plaintiff is not permitted to expand her lawsuit to assert claims

relating to financial or consumer products that the plaintiff did not purchase and that did not cause the plaintiff injury. *See, e.g., Beaver County Employees' Retirement Fund v. Tile Shop Holdings, Inc.*, 94 F. Supp. 3d 1035, 1057-58 (D. Minn. 2015) (dismissing putative class claims related to common stock purchased in a different public offering than the offering in which the named plaintiffs had purchased their stock); *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 763 (W.D. Mo. 2015) (plaintiff "did not purchase twelve of the sixteen varieties of the Chips, [therefore] she was neither personally nor actually harmed as to those twelve varieties" and "she cannot seek relief as to those twelve varieties on behalf of the class").[1]

In its Order, the Court denied the Motion to Dismiss, agreeing with Plaintiff that she need only establish individual standing with respect to her own claim and could "proceed to Rule 23 criteria to determine whether, and to what extent, the plaintiff may serve in a representative capacity on behalf of the class."  *See* Plaintiff's Brief in Response to Defendants' Motion to Dismiss (Document No. 72) ("Plaintiff's Response Brief") at 11; Order at 8.  The Plaintiff refers to this position as the "class certification approach," and it is in contrast to the majority position argued by Defendants, which Plaintiff refers to as the "standing approach."  The Order furthers a split of decisions in this Circuit, joining the minority of district courts that have followed the class certification approach.

The impact of the Order on this case is dramatic.  There were 27,120 purchasers of the Just Air Ticket Travel Protection Plans (the "Just Air Plan") like the plaintiff purchased to insure her airline trip to London.  However, there are more than *5 million* purchasers of all 221 travel

---

[1] As Magistrate Judge Bazis recognized, that "the case law in this circuit is that [the Plaintiff] would not have standing for anything other than what she purchased."  Document No. 62, at 24:16.

protection plans.[2]   The effect that the Order has on the scope, size, and complexity of these proceedings illustrates the ability of an appeal to materially advance the ultimate termination of this litigation.   This effect is particularly significant in light of the current COVID-19 pandemic and its impact on the travel industry in particular.   Absent an interlocutory appeal, the Court and the parties risk exponentially more complicated and expensive discovery, pretrial proceedings, class certification proceedings, and a potentially unnecessary and complicated trial, which would be rendered a nullity if the Eighth Circuit were later to reverse the conclusion in the Order.   An immediate appeal would eliminate this risk and afford the Eighth Circuit an opportunity to provide much-needed clarity to resolve an admittedly difficult legal issue that has divided the district courts.

For these reasons and those set forth below, the Order meets all of the factors of 28 U.S.C. § 1292(b), and the Court should grant this Motion and amend the March 20, 2020 Order, to state that it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation."   *See* 28 U.S.C. § 1292(b).   In the interests of justice and to render an immediate appeal most effective, the Court should also stay these proceedings pending resolution by the Eighth Circuit of the petition for appeal.

## LEGAL STANDARD

Section 1292(b) creates an "exception to the rule" that "only a final order may be appealed[.]"   *See Chelette v. Harris*, 229 F.3d 684, 686 (8th Cir. 2000).   District courts may

---

[2]   *See* Declaration of Sally G. Dunlap ¶ 2 ("Dunlap Decl.") ("For all 221 varieties of single trip travel protection plans sold through TIS and underwritten by Transamerica Casualty Insurance Company from 2012 through 2018, the total number of plans purchased was 5,701,300.").   A copy of the Dunlap Declaration is included as Exhibit 1 to the Index of Evidence being filed contemporaneously with this Motion.

"certify interlocutory orders for immediate appeal when the 'order involves a controlling question of law as to which there is substantial ground for difference of opinion and ... an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *See Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 585 (8th Cir. 2007) (quoting 28 U.S.C. § 1292(b)). An application for a 1292(b) appeal will stay proceedings in the district court only if "the district judge or the Court of Appeals or a judge thereof shall so order." *See* 28 U.S.C. § 1292(b).

Section 1292(b) should be used "in exceptional cases," such as this case, "where a decision on appeal may avoid protracted and expensive litigation[.]" *See White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994). The movant bears the burden to show that immediate appeal is warranted. *See id.* Defendants respectfully submit that they have met that burden here.

## **ARGUMENT**

## I.   THE COURT SHOULD CERTIFY THE MARCH 20, 2020 ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

### A.   The Order Involves a Controlling Question of Law

The "idea" behind § 1292(b) "was that if a case turned on a pure question of law, something the court of appeal could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait [until] the end of the case." *See Delock v. Securitas Sec. Servs. USA, Inc.*, 883 F. Supp. 2d 784, 791 (E.D. Ark. 2012) (granting appeal under 1292(b) because the enforceability of a class action waiver in a contract's arbitration clause was a pure question of law) (citation omitted). Accordingly, the "question for appeal must be a question of law as opposed to a question of fact or matter for the court's discretion." *See Emerson Elec. Co. v. Yeo*, 2013 WL 440578, at *2 (E.D. Mo. Feb. 5, 2013) (citing *White*, 43 F.3d. at 376).

The Motion to Dismiss and the Court's resulting Order addressed a pure question of law related to the scope of Article III's standing requirement in a case filed as a class action. The Order recognized that Defendants' Motion to Dismiss raised issues of subject matter jurisdiction, and noted "an acknowledged tension" in the Supreme Court case law regarding whether or not "the differences between a named plaintiff's claims and those of putative class members is a matter of Article III standing, or a matter of class certification [under Rule 23]." Order at 5. It is well-settled that "[s]tanding is a legal question." *Schwendimann v. Arkwright Advanced Coating, Inc.*, 2012 WL 5389674, at *3 (D. Minn. Nov. 2, 2012) (citation omitted).

The Court decided that, once the Plaintiff establishes standing to sue with respect to her particular insurance transaction, that ends the standing inquiry, and whether she can represent purchasers of different products should be addressed as a class certification question under Rule 23. Order at 7 ("Because named plaintiffs are not required to have individual standing to litigate claims belonging to unnamed class members, it makes no sense to dismiss unnamed class members' claims for lack of standing when there is no requirement that the named plaintiffs have individual standing to litigate those claims"). The Second Circuit accepted for interlocutory appeal a very similar question of "class standing" in *Retirement Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 155 (2d Cir. 2014) (considering on interlocutory appeal pursuant to 28 U.S.C. § 1292(b) whether "a named plaintiff in a putative class action has 'class standing' to assert, on absent class members' behalf, breach-of-duty claims against the trustee of [a trust] in which the named plaintiff did not invest").

Courts have found issues "controlling" under section 1292(b) if their resolution on appeal "could materially affect the outcome of the litigation in the district court." *See Emerson Elec. Co. v. Yeo*, 2013 WL 440578, at *2 (E.D. Mo. Feb. 5, 2013) (citations omitted); *Perry v. Johnston*, 2010 WL 546774, at *2 (E.D. Mo. Feb. 9, 2010) (issues were "controlling" that could

"affect the outcome" of two of plaintiff's claims); *In re Endosurgical Products Direct Purchaser Antitrust Litig.*, 2007 WL 9772276, at *1 (C.D. Cal. Oct. 9, 2007) (question was controlling where a successful appeal meant that plaintiff "and other similarly situated hospitals would be positioned to recover under the federal antitrust laws" but otherwise, "only direct purchasers … have standing to recover"). Here, there is no question that resolution of the standing issue in the Order will have a profound and material impact on this litigation.

The Plaintiff, who purchased only a Just Air Plan,[3] claims that she, and other class members who cancelled their trips prior to departure, are entitled to a partial refund. There were two varieties of Just Air Plans purchased by 27,120 persons, and 219 other travel protection plans purchased by over 5.7 million persons. *See supra* note 2.[4] Whether the Plaintiff has standing to begin adjudicating claims on behalf of persons who purchased these 219 other plans and cancelled their trips prior to departure is controlled by the issue addressed in the Court's Order. The issue therefore presents a prototypical controlling legal question for a 1292(b) appeal. *See School District of Kansas City, Mo. v. Missouri*, 460 F. Supp. 421, 445 (W.D. Mo. 1978) ("because the denial of the motion [to dismiss] rests on a resolution of a determinative question of law as to the scope of federal remedial powers in relation to the cause of action rather than on a question of 'pleading etiquette,' certification under 1292(b) is appropriate") (citation omitted); *see also See APCC Servs., Inc. v. Sprint Commc'ns, Co.*, 297 F. Supp. 2d 90, 96-97 (D.D.C. 2003) (finding jurisdictional issues "controlling" because the Court "should not speak to any matter over which it lacks jurisdiction"). The standing issue also presents a controlling

---

[3] *See* Deposition of Sally Dunlap at 58-59 ("Dunlap Dep."). A transcript of the Dunlap Deposition is attached as Exhibit 1 to the Declaration of Michael N. Wolgin (Document No. 81).

[4] It is unknown how many persons cancelled their trips prior to departure.

question of law because its resolution will impact the structure of the litigation.[5]   Accordingly, the first factor of section 1292(b) is satisfied.

### B.     The Order Involves Substantial Grounds For A Difference Of Opinion

#### 1.     The Order deepens the split of district court decisions within the Eighth Circuit addressing a named plaintiff's standing to assert class claims

Given the significant split among the district courts within the Eighth Circuit on the class action standing issue, the Order plainly satisfies the requirement that there be a "substantial ground for difference of opinion."  *See Perry*, 2010 WL 546774, at *2 (finding substantial ground for difference of opinion where there was "some inconsistency" with how the issue was treated in certain districts within the Eighth Circuit).[6]   The Order acknowledged a "tension" in the law on the question of standing in the class action context, and that "[t]he district court cases the defendants cite … fall on the standing side of this tension."  Order at 5.  The Court also noted that there is no controlling Eighth Circuit case directly resolving whether "differences between a named plaintiff's claims and those of putative class members is a matter of Article III standing, or a matter of class certification."  *Id.*  But the Court concluded that it would follow the "class certification approach" advocated by the Plaintiff, ruling that the Plaintiff had adequate standing to proceed on behalf of purchasers of all varieties of travel protection plans, including those that

---

[5]  *See Grant v. Convergys Corp.*, 2013 WL 1342985, at *2 (E.D. Mo. Apr. 3, 2013) (granting 1292(b) certification because the "threshold" decision on the inclusion of the potential class claims "significantly affects the structure" of the litigation); *see also Bussing v. COR Clearing, LLC*, 2014 WL 3548278, at *1 (D. Neb. July 17, 2014) (question is controlling if it "is quite likely to affect the further course of the litigation, even if not certain to do so").

[6]  *See also Schwendimann*, 2012 WL 5389674, at *3 (substantial grounds for difference of opinion exists if there are a "sufficient number of conflicting and contradictory opinions" on the issue); *Pro-Edge L.P. v. Gue*, 2006 WL 8456918, at *2 (N.D. Iowa May 15, 2006) (finding substantial ground for difference of opinion where, *inter alia*, "courts have come to differing conclusions" with respect to the issue for appeal).

the Plaintiff herself did not purchase.  *See* Plaintiff's Response Brief at 15 (citing three decisions: *Johannessohn v. Polaris Industries, Inc.*, 2017 WL 2787609 (D. Minn. June 27, 2017); *Gabriele v. ConAgra Foods, Inc.*, 2015 WL 3904386 (W.D. Ark. June 25, 2015); and *Penrose v. Buffalo Trace Distillery, Inc.*, 2018 WL 705054 (E.D. Mo. Feb. 5, 2018)).

However, as the Court noted in its Order, other district courts in the Eighth Circuit have rejected the "class certification approach," and addressed this legal issue as a matter of Article III standing.[7]  Indeed, these cases represent the majority of decisions on this issue in the Eighth Circuit.  For example, in *Beaver County Employees' Retirement Fund*, the court rejected the plaintiffs' attempt to assert claims related to unpurchased financial products.  *See* 94 F. Supp. 3d at 1058.  There, investors brought a class action against a company based on alleged omissions in registration statements and prospectuses issued in connection with offerings in 2012 and 2013.  Similar to the Plaintiff's purchase of only the Just Air Plan here, the plaintiffs in *Beaver* purchased stock in only a 2012 offering, but not stock in a 2013 offering.  *See id.* at 1057.  The *Beaver* plaintiffs argued "that because both the 2012 and 2013 registration statements failed to include the related-party transactions and the claim directed to the [2013] Offering implicates the same wrongful conduct as the claim directed to the [2012] Offering, the [2013] claim should also

---

[7] These cases include *Beaver County Employees' Retirement Fund v. Tile Shop Holdings, Inc.*, 94 F. Supp. 3d 1035 (D. Minn. 2015); *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 763 (W.D. Mo. 2015); *Smith v. Atkins Nutritionals, Inc.*, 2018 WL 9868591, at *7 (W.D. Mo. May 8, 2018); *In re General Mills Glyphosate Litig.*, 2017 WL 2983877, at *3 (D. Minn. July 12, 2017); *Grisham v. Welch Foods, Inc.*, 2017 WL 2257342, at *3 (E.D. Mo. May 22, 2017); *Johnson v. Atkins Nutritionals, Inc.*, 2017 WL 6420199, at *3 (W.D. Mo. Mar. 29, 2017); *Ferrari v. Best Buy Co.*, 2015 WL 2242128, at *9 (D. Minn. May 12, 2015); *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 2014 WL 943224, at *11 (D. Minn. Mar. 11, 2014); *Chin v. General Mills, Inc.*, 2013 WL 2420455, at *3 (D. Minn. June 3, 2013); *cf. Rawa v. Monsanto Co.*, 2017 WL 3392090, at *5 (E.D. Mo. Aug. 7, 2017) (relying on *Kelly*).

survive." *See id.*[8]  The court rejected this argument and the case law upon which it relied, explaining that it "has been criticized as being inconsistent with established Supreme Court precedent and prior holdings at the Circuit level."  *See id.* at 1058 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352-53 (2006); *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp. 2d 1219 (C.D. Cal. 2013)).  The court held:

> Holding that the Plaintiffs here do not have standing to assert claims on behalf of absent class members is consistent with this Circuit's established jurisprudence.  *See*, *e.g.*, *Miller v. Redwood Toxicology Lab. Inc.*, 688 F.3d 928, 933 (8th Cir. 2012) (noting that Article III standing requires the plaintiff to suffer an injury).

*Beaver Cty.*, 94 F. Supp. 3d at 1058.

Here, Plaintiff purchased an airfare-only plan through Just Air Ticket, sold exclusively to Just Air Ticket customers.  Plaintiff could not assert an individual claim based on the purchase of any other plans and, as illustrated by the split among the district courts within the Eighth Circuit, there exists a "substantial ground for difference of opinion" as to whether the Plaintiff has Article III standing to assert class claims on behalf of those who purchased these other plans.  Accordingly, the Order satisfies the second requirement of § 1292(b).

---

[8] The Order here found standing for all of Defendants' plans because they all "include at least one benefit covering a peril that can only arise post-departure, but as a matter of standard practice, the defendants do not refund any part of the premium paid for post-departure coverages when the purchaser cancels the scheduled trip."  Order at 8.  But the cases on which Defendants rely hold that the existence of the same alleged flaw is not the test for standing.  For example, in *Beaver*, the stock offerings contained the same alleged omissions in failing "to include the related-party transactions."  *See Beaver*, 94 F. Supp. 3d at 1057.  Nonetheless, the court in that case, applying Article III, dismissed the claims related to the unpurchased offerings.  The analysis under *Beaver* and the other cases cited by Defendants is whether Plaintiff and the proposed class were allegedly denied partial refunds for purchases of the <u>same plan</u>, not whether the alleged flaw in the plans is the same.

2. **The Court's reading of** *In re SuperValu* **creates a conflict with other Eighth Circuit authority**

In addition to the divergence of opinion among the district courts, the Order also meets the second requirement of § 1292(b) because the Eighth Circuit decisions are conflicting and, as this Court observed, the Eighth Circuit has never directly addressed the particular issue in this case. Order at 5. In the Order, the Court determined that *In re SuperValu, Inc.*, 870 F.3d 763 (8th Cir. 2017) "comes down on the class certification side." Order at 5 (quoting *In re SuperValu*, 870 F.3d at 773 for the proposition that "there is no separate class action standing requirement"). *In re SuperValu*, however, did not address the standing question at issue here, and the Eighth Circuit's statements on standing in *In re SuperValu*, as they relate to class certification, can just as easily be interpreted as requiring the Plaintiff to establish standing in connection with the breadth of alleged injuries asserted through her class definition. *Id.* at 768 ("The requirements for standing do not change in the class action context."). Indeed, in a published decision, the Eighth Circuit has itself applied this language from *In re SuperValu* consistent with Defendants' position, when it cited the case in concluding that a class action settlement objector had no standing to pursue objections on behalf of absent class members regarding statutory injuries they may have suffered which he did not share. *See In re: Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 973 at n.4 (8th Cir. 2018). Other Eighth Circuit decisions also recognize the applicability of Article III standing requirements in the class action context. *See Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2008) (citing *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000)).[9] In *Elizabeth M.*, the Eighth Circuit

---

[9] In *Prado-Steiman*, the Eleventh Circuit relied on *Blum v. Yaretsky*, 457 U.S. 991 (1982) and held: "Only *after the court determines the issues for which the named plaintiffs have standing* should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others. It is not enough that a named

*(footnote continued on next page)*

held that the lower court should "ensure that it has Article III jurisdiction to entertain each claim asserted by the named plaintiffs" before certifying any class on remand. *Id.* at 784 (addressing an injunctive relief class); *see also Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 895-96 (8th Cir. 2015) (dismissing putative class claims with respect to certain defendants, holding that a "class certification order does not confer standing on a plaintiff who otherwise lacks it"). Accordingly, the Court's interpretation of *In re SuperValu* is debatable and potentially conflicts with other Eighth Circuit decisions. *Moore v. Apple Central, LLC*, 2017 WL 11195761, at *1 (W.D. Ark. March 16, 2017) (finding "substantial ground for difference of opinion" existed because there was "reason to believe" one Eighth Circuit decision "may be inconsistent" with another Eighth Circuit decision).

For all of these reasons, a "substantial ground for difference of opinion" exists regarding the Article III question at issue here, and this Court should provide the Eighth Circuit with the opportunity to resolve the issue. *See Olberding v. Union Pacific Railroad Co.*, 2007 WL 1656276, at *3 (W.D. Mo. Jun. 7, 2007) (certifying for interlocutory review where the Supreme Court and Eighth Circuit had not directly addressed the issue and "a substantial difference of opinion exists among the district courts"); *Altman v. White House Black Market, Inc.*, 2018 WL 3203151, at *1 (N.D. Ga. Apr. 9, 2018) (finding substantial ground for difference of opinion based on "non-binding cases" cited "by both parties in which some courts have found standing and others have found a lack of standing").

---

plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert. *Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.*" *See id.* at 1280 (internal quotations and citations omitted) (emphasis added)

**C.    An Immediate Appeal Will Materially Advance The Ultimate Termination Of The Litigation**

The third and final factor required under § 1292(b)—whether an immediate appeal may "materially advance the ultimate termination of this litigation"—is also is satisfied here.  This requirement is met where the "litigation will <u>not</u> be conducted in substantially the same manner" based on the determination of the issue on appeal.  *See H&R Block Tax Servs. LLC v. Franklin*, 2011 WL 13233811, at *2 (W.D. Mo. Nov. 16, 2011) (emphasis added).  This factor is also satisfied if an immediate appeal would promote "the interests of efficiency, judicial economy, and fairness to all parties."  *Grant*, 2013 WL 1342985, at *2.  An immediate appeal in this case would further these interests.

As a result of the Order, instead of a litigation addressing a potential class derived from 27,120 customers of the simple airfare-only Just Air Plan purchased by Plaintiff, the litigation will involve a potential class derived from approximately 5.7 million customers of 221 varieties of plans purchased through all types of travel retailers, including brick and mortar travel agencies, online travel agencies, travel aggregators, tour operators, cruise lines, time shares, and others.[10]  This massive difference in the scope of the putative class would impact every aspect of this case, and the "class certification approach" to standing would exponentially increase the complexity of these proceedings, including all types of discovery, experts, class certification proceedings, dispositive motions, and trial.  *See Grant*, 2013 WL 1342985, at *2 (granting 1292(b) certification where reversal of ruling on putative class action would "fundamentally alter[]" the manner in which the litigation would proceed).

---

[10] *See* prior Declaration of Sally G. Dunlap ¶¶ 13-14 (Doc. No. 67-1), filed in Support of Motion to Dismiss.

With respect to discovery, for example, Plaintiff seeks information and documents from 2012 to the present regarding actuarial material, internal communications regarding plan pricing, refunds policies, plan-by-plan premium information, electronic and other correspondence with policyholders, correspondence with regulators, all contracts, plan material, and correspondence with travel businesses (travel suppliers, tour operators, and travel agencies), and data regarding refunds and trip cancellation claims. For the Just Air Plan alone and its 27,120 customers, these requests would require substantial resources to collect and review potentially responsive data and documents.[11] For all 221 varieties of plans and millions of customers, the time and resources required by the discovery requests dramatically increase two-hundredfold.

Multiple issues in the case also become significantly more complex based on the Order. Because Defendants do not track whether customers complete their travel plans or decide to cancel their trips, the inclusion of all plans in this case will exponentially complicate any attempt to identify which customers would be included in the putative class. With respect to damages and expert witness issues, Defendants' plans utilized different pricing methodologies, including (1) "percentage of the trip cost," (2) "flat rate," (3) "trip cost banding," and (4) "trip-cost based plus" other factors including age of the travelers and length of the trip. *See* Dunlap Dep. at 37-38.[12] Individualized factors "go into the pricing" developed for the different travel suppliers,

---

[11] This discovery will require a significant diversion of the Defendants' resources. Ms. Dunlap explained that extracting and reviewing documents related to the plans would be extremely burdensome and expensive. *See* Dunlap Dep. at 57 (it would take four or five days *just to pull the data for the Just Air Plan* based on the "sheer volume of data" in TIS's database, the fact that it is archived, and the need to "engage with [TIS's] technology person to pull [it]"). This does not include the resources that will be required to collect and review emails and other documents requested by Plaintiff.

[12] Plans were designed based on customer demographics, number of customers annually, average customer age, travel protection needs, travel risks, and prior claims experience. Dunlap. Dep. at 20-21.

such as "age demographics, their cancellation penalties, [and] loss ratio of their business." *Id.* at 48. Plaintiff's claims purport to require disassembling these plans in order to calculate a partial refund for a portion of the plan's benefits. The complexity of this case with over 200 different plans cannot be overstated.

An appeal at this stage would avoid the potential waste of time and resources implicated by these issues. *See Moore*, 2017 WL 11195761, at *2 (finding the "materially advance" factor met where appeal could avoid "years of potential litigation"); *see also Stearns v. NCR Corp.*, 2000 WL 34423090 (D. Minn. Oct. 11, 2000) (third factor met where, "due to the complex nature of this class action litigation," a reversal would obviate "a substantial investment of administrative resources by the Court and the parties"); *Wieboldt Stores, Inc. v. Schottenstein Stores Corp.*, 1989 WL 51068, at *2 (N.D. Ill. May 5, 1989) (where an interlocutory appeal "might preclude wasteful and time-consuming discovery as well as a lengthy and complex trial, immediate resolution would materially advance the termination of this litigation"). Even if the Order is affirmed, interlocutory appeal will still have reduced the scope of any later appeal seeking to reverse the standing decision. *See Moore*, 2017 WL 11195761, at *2.

Because an immediate appeal will materially advance the ultimate termination of this litigation, and because all of the other requirements of 28 U.S.C. § 1292(b) are satisfied, the Court should grant this Motion and certify its Order for interlocutory appeal.

## II. THE COURT SHOULD STAY THE PROCEEDINGS PENDING RESOLUTION OF THE APPEAL TO THE EIGHTH CIRCUIT

"The Court has the inherent power to stay an action to control its docket, conserve judicial resources, and provide a just determination of the case." *See Schwendimann*, 2012 WL 5389674, at *5 (internal quotations and citation omitted). Courts consider "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2)

whether a stay will simplify the issues; and (3) whether discovery is complete and whether a trial date has been set." *See id.*[13] All three factors weigh in favor of a stay of this case.

A stay would not create any undue prejudice or disadvantage to the Plaintiff. Indeed, a stay would conserve the resources of all parties and the Court. The Order dramatically increases the scope of this case, which will create substantial additional expenditures of time and expense by all parties and the Court. If, however, the Order is contrary to the Eighth Circuit's position on the scope of the standing of the Plaintiff to represent the putative class, then all of this effort and expense will be for naught. *See Moore*, 2017 WL 11195761, at *2 (recognizing that "the time and expense of the parties" from litigating under a debatable issue "will be more harmful to each of them than simply staying pending resolution of an appeal"); *Stearns*, 2000 WL 34423090, at *2 (granting stay, even with possible delay of health care benefits to plaintiffs, to avoid investment of "unnecessary time and resources which, by certifying its Order for appeal, the Court has sought to avoid").

Additionally, the other two factors, whether a stay will simplify the case, and whether discovery is ongoing and a trial date is not set, support a stay. A stay would simplify the issues in this case by affording the Eighth Circuit an opportunity to clarify a fundamental issue upon which all future proceedings in this case will be dependent—whether the jurisdictional scope of this class action includes travel protection plans other than the Just Air Plan purchased by Plaintiff. Moreover, discovery is in a relatively early stage, and no trial date has been set. These

---

[13] Some cases have mistakenly cited decisions holding that a court "must evaluate four factors, including defendants' likelihood of success on the merits, irreparable harm to defendants in the absence of a stay, whether issuance of stay will substantially harm plaintiffs, and the public interest." *See Stearns*, 2000 WL 34423090, at *2 n.1. These factors are inapposite to the stay of proceedings requested here. *See id.* (four factors apply to "stays of district court *orders* pending appeal," such as orders of injunctive relief, but do not apply to "the stay of *proceedings*" until "the Eighth Circuit either declines the [1292(b)] appeal or issues a decision").

factors therefore favor a stay. *See Schwendimann*, 2012 WL 5389674, at *6 (finding stay appropriate where it would "avoid[] potentially unnecessary litigation" and where discovery would "not be completed for another six months, and the case [would] not be trial ready for another year").

A stay of this case pending an appeal of the Order is justified because the requested stay would clearly conserve judicial resources and provide a just determination of the case.[14]

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court grant this Motion and enter an order amending and certifying the March 20, 2020 Order for appeal pursuant to 28 U.S.C. §1292(b), and entering a stay of proceedings pending resolution of the appeal.

Dated:  April 10, 2020                                        Respectfully submitted,

<div style="margin-left:45%">

/s/  Markham R. Leventhal
Markham R. Leventhal (DC Bar No. 489597)
mleventhal@carltonfields.com
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
Telephone:  (202) 965-8189
Facsimile:  (202) 965-8104

</div>

---

[14] District courts in the Eighth Circuit have not hesitated to stay proceedings pending resolution of a 1292(b) interlocutory appeal. *See, e.g.*, *Moore*, 2017 WL 11195761, at *2; *Grant*, 2013 WL 1342985, at *3; *Delock*, 883 F. Supp. 2d at 792; *Schwendimann*, 2012 WL 5389674, at *6; *H&R Block Tax Servs.*, 2011 WL 13233811, at *2; *Perry*, 2010 WL 546774, at *4; *Pro-Edge*, 2006 WL 8456918, at 3; *Stearns*, 2000 WL 34423090, at *2.

Julianna Thomas McCabe (FL Bar No. 355010)
jtmccabe@carltonfields.com
Michael N. Wolgin (FL Bar No. 42962)
mwolgin@carltonfields.com
CARLTON FIELDS, P.A.
Miami Tower, Suite 4200
100 S.E. Second Street
Miami, Florida 33131
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055

*Attorneys for Defendants*
*Travelex Insurance Services, Inc. and*
*Transamerica Casualty Insurance Company*

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the Word Limits set forth in NECivR 7.1(d)(1)(A). This brief contains 5,516 words based on the word-count function of the undersigned's Microsoft Word version 2016 software applied to all text, including the caption, headings, footnotes, and quotations.

<div align="right">

Markham  R. Leventhal

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of April, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF:

Burke Smith, Esq.
BURKE SMITH LAW
10730 Pacific Street, Suite 100
Omaha, Nebraska 68114
Telephone: (402) 718-8865
Facsimile: (402) 218-4391
burke@burkesmithlaw.com

*Local Counsel for Plaintiff*
*and the Proposed Class*

Peter R. Kahana, Esq.
Lane L. Vines, Esq.
Y. Michael Twersky, Esq.
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone:  (215) 875-3000
Facsimile:  (215) 875-4604
pkahana@bm.net
lvines@bm.net
mitwersky@bm.net

*Co-Lead Counsel for*
*Plaintiff and the Proposed Class*

John G. Albanese, Esq.
BERGER & MONTAGUE, P.C.
43 S.E. Main Street, Suite 505
Minneapolis, Minnesota 55414
Telephone:  (612) 594-5997
Facsimile:  (612) 584-4470
jalbanese@bm.net

*Co-Lead Counsel for Plaintiff*
*and the Proposed Class*

Ingrid Evans, Esq.
EVANS LAW FIRM, INC.
3053 Fillmore Street, Suite 236
San Francisco, California 94123
Telephone:  (415) 441-8669
Facsimile:  (888) 891-4906
ingrid@evanslaw.com

*Co-Lead Counsel for Plaintiff*
*and the Proposed Class*

/s/  Markham R. Leventhal

121564942

-19-