# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

MICHELLE ANDERSON, an individual, on behalf of herself and all others similarly situated,

          Plaintiff,

v.

TRAVELEX INSURANCE SERVICES INC. and TRANSAMERICA CASUALTY INSURANCE COMPANY,

          Defendants.

Case No. 8:18-cv-00362-JMG-SMB

---

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO CERTIFY THE COURT'S MARCH 20, 2020 ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b), AND FOR A STAY OF PROCEEDINGS

---

Julianna Thomas McCabe
Michael N. Wolgin
CARLTON FIELDS, P.A.
Miami Tower, Suite 4200
100 S.E. Second Street
Miami, Florida 33131
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055

Markham R. Leventhal
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
Telephone:  (202) 965-8189
Facsimile:  (202) 965-8104

*Attorneys for Defendants*
*Travelex Insurance Services, Inc. and*
*Transamerica Casualty Insurance Company*

# TABLE OF CONTENTS

*Page*

INTRODUCTION TO REPLY ................................................................................. 1

ARGUMENT ........................................................................................................ 4

I. THE COURT SHOULD CERTIFY THE MARCH 20, 2020 ORDER FOR
INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) ............................................ 4

    A.    The Order Involves A Controlling Question Of Law ............................. 4

        1.    Plaintiff's argument that Defendants have not identified a pure
question of law is without merit ................................................................. 4

        2.    Plaintiff's argument that the question of law at issue in the Order is
not "controlling" is also without merit ........................................................ 5

    B.    The Order Involves Substantial Grounds For A Difference Of Opinion ............... 7

        1.    Plaintiff's attempt to disregard the split of district court decisions on
class standing within the Eighth Circuit should be rejected ...................... 7

        2.    Plaintiff's contention that *In re SuperValu*, as interpreted by the
Order, does not conflict with other Eighth Circuit decisions, is
mistaken ................................................................................................. 8

    C.    An Immediate Appeal Will Materially Advance The Ultimate Termination
Of The Litigation ................................................................................. 12

II. THE COURT SHOULD STAY THE PROCEEDINGS PENDING RESOLUTION
OF THE APPEAL TO THE EIGHTH CIRCUIT ............................................................ 16

CONCLUSION .................................................................................................. 17

CERTIFICATE OF COMPLIANCE ...................................................................... 19

CERTIFICATE OF SERVICE ............................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Altman v. White House Black Market, Inc.*,
2018 WL 3203151 (N.D. Ga. Apr. 9, 2018) ...................................................................8

*APCC Servs., Inc. v. Sprint Commc'ns, Co.*,
297 F. Supp. 2d 90 (D.D.C. 2003) ..................................................................................13

*Beseke v. Equifax Info. Servs., LLC*,
2018 WL 6040016 (D. Minn. Oct. 18, 2018) ............................................................14, 15

*Elizabeth M. v. Montenez*,
458 F.3d 779 (8th Cir. 2008) ...........................................................................................10

*In re Endosurgical Prods. Direct Purchaser Antitrust Litig.*,
2007 WL 9772276 (C.D. Cal. Oct. 9, 2007) ......................................................................6

*Hartley v. Suburban Radiologic Consultants, Ltd.*,
2013 WL 6511847 (D. Minn. Dec. 12, 2013) ..................................................................15

*Henggeler v. Brumbaugh & Quandahl, P.C., LLO*,
2012 WL 3030110 (D. Neb. July 25, 2012) .......................................................................7

*Leon v. Continental AG*,
301 F. Supp. 3d 1203 (S.D. Fla. 2017) ............................................................................10

*Lewis v. Casey*,
518 U.S. 343 (1996)..........................................................................................................11

*Molock v. Whole Foods Market Group, Inc.*,
317 F. Supp. 3d 1 (D.D.C. 2018) ............................................................................ *passim*

*Moore v. Apple Cent., LLC*,
2017 WL 11195761 (W.D. Ark. Mar. 16, 2017) ..................................................13, 16, 17

*Morales v. Farmland Foods, Inc.*,
2011 WL 344112 (D. Neb. Feb. 1, 2011) ...........................................................................7

*Olberding v. Union Pac. R.R. Co.*,
2007 WL 1656276 (W.D. Mo. Jun. 7, 2007) .....................................................................8

*Perry v. Johnston*,
2010 WL 546774 (E.D. Mo. Feb. 9, 2010) .....................................................................6, 8

*Prado-Steiman v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) ...............................................................10, 11

*Pro-Edge L.P. v. Gue*,
    2006 WL 8456918 (N.D. Iowa May 15, 2006)..................................................8

*Retirement Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago*
    *v. Bank of N.Y. Mellon*,
    775 F.3d 154 (2d Cir. 2014)..............................................................................5

*Rilley v. Moneymutual, LLC*,
    2017 WL 6343616 (D. Minn. Dec. 11, 2017)..................................................12

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
    2012 WL 5389674 (D. Minn. Nov. 2, 2012) ....................................................8

*Stearns v. NCR Corp.*,
    2000 WL 34423090 (D. Minn. Oct. 11, 2000) ....................................12, 16, 17

*In re SuperValu, Inc.*,
    870 F.3d 763 (8th Cir. 2017) ................................................................. *passim*

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    847 F.3d 608 (8th Cir.), amended, 855 F.3d 913 (8th Cir. 2017).....................10

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    892 F.3d 968 (8th Cir. 2018) ........................................................................9, 10

*White v. Nix*,
    43 F.3d 374 (8th Cir. 1994) ............................................................................13

*Wieboldt Stores, Inc. v. Schottenstein Stores Corp.*,
    1989 WL 51068 (N.D. Ill. May 5, 1989).........................................................16

*Wong v. Wells Fargo Bank N.A.*,
    789 F.3d 889 (8th Cir. 2015) ..........................................................................11

## Statutes

28 U.S.C. §1292(b) ................................................................................. *passim*

## Other Authorities

William B. Rubenstein, 1 Newberg on Class Actions § 2.6 .........................................11

Defendants Travelex Insurance Services, Inc. ("TIS") and Transamerica Casualty Insurance Company ("Transamerica") (collectively, "Defendants") respectfully submit this memorandum in further support of their Motion to Certify the Court's March 20, 2020 Memorandum and Order for Interlocutory Appeal Pursuant to 28 U.S.C. §1292(b), and for a Stay of Proceedings (Document Nos. 84, 85) (the "Motion"), and in reply to Plaintiff's Brief in Response to the Motion (Document No. 87) (the "Response").

## <u>INTRODUCTION TO REPLY</u>

As demonstrated in the Motion, this Court's March 20, 2020 Memorandum and Order (Doc. No. 82) (the "Order") presents a highly important, recurring, threshold issue of law impacting class action practice that has created substantial disagreement among district courts in this Circuit, and which has never been directly addressed by the Eighth Circuit. This is precisely the scenario in which a district court should provide the Court of Appeals with the opportunity to resolve the issue of law pursuant to 28 U.S.C. §1292(b).

Plaintiff argues, however, that the Order does not involve "a controlling question of law" because "the Court's Order was based on a factual record" including exhibits and deposition testimony. Response at 11. Plaintiff's argument misconstrues the requirements of § 1292(b). The Order involves a controlling question of law because there are no disputed issues of fact. The Plaintiff purchased only the Just Air Ticket Plan, and not any of the other types of plans purchased by the putative class. The record is unequivocal and presents the Eighth Circuit with the ability to address the legal question of subject matter jurisdiction without resolving any disputed facts. This satisfies the requirements of § 1292(b).

Plaintiff also argues that "the Order does not involve a 'controlling' question" because "the litigation would be conducted in the same way no matter how it were decided." Response at 10. But where, as here, the question for appeal involves "a procedural determination that may

significantly impact the action," such as a substantial impact on the scope and size of the class, the question is "controlling." *See Molock v. Whole Foods Market Group, Inc.*, 317 F. Supp. 3d 1, 4 (D.D.C. 2018). That impact is unquestionably present here, where the issue on appeal would determine whether the scope of this action involves (i) the Just Air Plan <u>versus</u> 221 travel insurance plans, and (ii) a potential class derived from 27,120 customers <u>versus</u> *5.7 million* customers of all 221 plans. The "controlling question of law" factor is clearly met.

Plaintiff's argument that there is no "substantial ground for difference of opinion" ignores this Court's Order itself, as well as the undeniable split in district court decisions within this Circuit. Plaintiff argues that "[m]ost of the[se] district court cases … pre-date the [Eighth Circuit's] decision in *In re SuperValu*." Response at 2, 12. But as this Court recognized, "*In re SuperValu* does not specifically address the issue in this case." Order at 5. Moreover, *In re SuperValu* does not cite, disagree with, or overrule any of the multiple district court cases that "fall on the standing side" of the legal issue addressed in the Order. *Id.* Accordingly, the fact that these decisions may "pre-date" *In re SuperValu* does not in any way negate the "substantial ground for difference of opinion" within the meaning of § 1292(b).

Regarding whether "an immediate appeal from the order may materially advance the ultimate termination of the litigation," Plaintiff argues that § 1292(b) is not satisfied because, regardless of the outcome of an appeal, the case "will proceed in largely the same manner." Response at 7. Plaintiff's argument ignores the law. An appeal materially advances the case if it could "hasten or at least simplify the litigation in some material way, such as by significantly narrowing the issues, conserving judicial resources, or saving the parties from needless expense." *See Molock*, 317 F. Supp. 3d at 6. Here, an appeal could simplify this litigation dramatically. The proposed class consists essentially of persons who purchased a travel insurance plan and cancelled their travel before departure. Based on the result of an appeal, this proposed class could be a subset

of 27,120 Just Air Ticket customers, or a subset of 5.7 million purchasers of 221 plans. The appeal has the potential to simplify exponentially all aspects of this case, including (i) whether discovery would extend to all 221 plans dating back to 2012, including paper and electronic documents relating to *more than 5.7 million consumers*, and documents relating to actuarial, financial, and contractual matters relating to 221 plans, (ii) the complexity of any attempt to determine, if possible, who is in the proposed class by identifying customers who cancelled scheduled trips prior to departure, and (iii) the complexity of damages and expert witness issues resulting from different pricing methodologies, benefits, and other components and individual facts associated with the different plans. There is no question that an immediate appeal could materially advance the ultimate termination of this case.

Finally, regarding Defendants' request to stay the proceedings pending resolution of the appeal, Plaintiff does not dispute that the elements for a stay are present and identifies no prejudice that would result from a stay. Instead, Plaintiff argues that "the case should not be stayed unless and until the Eighth Circuit accepts the appeal" and that the Court should "limit the scope of any stay to only the discovery that would be implicated by the appeal and allow all other discovery to continue." Response at 15-16. These proposals would defeat the very purpose of the stay—to conserve the resources of the parties and the Court while the disposition of the Order and the scope of this case is subject to potential appellate review.

For all of the reasons set forth in this reply and in the Motion, Defendants respectfully request that the Court: (1) amend the March 20, 2020 Order, to state that it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation," and (2) stay these proceedings pending resolution by the Eighth Circuit of the petition for appeal.

<h1 style="text-align:center"><u>ARGUMENT</u></h1>

I. **THE COURT SHOULD CERTIFY THE MARCH 20, 2020 ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

    A.     **The Order Involves A Controlling Question Of Law**

        1.     **Plaintiff's argument that Defendants have not identified a pure question of law is without merit**

The Court's Order decided a pure question of law regarding whether the Plaintiff in this putative class action has Article III standing to represent absent class members who purchased travel protection plans that she did not herself purchase. As explained in the Motion, the Court noted the "tension in the Supreme Court's case law" as to whether this issue was "a matter of Article III standing, or a matter of class certification pursuant to Fed. R. Civ. P. 23(a)." *See* Motion at 5; Order at 5. The Court decided that, once the Plaintiff establishes standing to sue with respect to her particular transaction, that ends the standing inquiry, and whether she can represent purchasers of different products should be addressed as a class certification question under Rule 23. *See* Motion at 5 (citing Order at 7). As the Motion showed, this is a prototypical legal question appropriate for an interlocutory appeal under § 1292(b). *See* Motion at 6. There is no merit to Plaintiff's argument that "Defendants never define what the 'prototypical legal question' is." Response at 11. The Motion plainly identifies the legal question as the Article III standing issue decided by the Court in the Order.[1]

Plaintiff is also incorrect in her contention that the Order does not "refer to a 'pure' question of law" because "the Court's Order was based on a factual record, including exhibits and

---

[1] There is no support for Plaintiff's assumption that the Court must certify the text of a question for review on appeal. But even if there were, the question is clear from the Motion, namely, whether Plaintiff, who alleges injury from the purchase of a Just Air Ticket Plan has Article III standing to assert claims on behalf of others who purchased other types of travel protection plans which the Plaintiff did not purchase.

deposition testimony." Response at 11. Because there are no disputed issues of fact to be resolved on appeal, the mere existence of facts in the record does not affect the analysis of whether the standing issue presents a pure question of law. Plaintiff fails to identify any disputed facts that the Eighth Circuit would need to address. Indeed, it is undisputed that Plaintiff purchased only the Just Air Plan, and did not purchase the other types of plans purchased by other putative class members. The Eighth Circuit need only resolve the important and recurring class action legal issue of whether a named plaintiff must possess Article III standing with respect to the claims of all putative class members.[2] As shown in the Motion but ignored by Plaintiff, the Second Circuit accepted for interlocutory appeal virtually the same legal question of "class standing" in *Retirement Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 155 (2d Cir. 2014) (considering on interlocutory appeal pursuant to 28 U.S.C. § 1292(b) whether "a named plaintiff in a putative class action has 'class standing' to assert, on absent class members' behalf, breach-of-duty claims against the trustee of [a trust] in which the named plaintiff did not invest"). The Motion identifies a pure question of law appropriate for interlocutory review.

### 2. Plaintiff's argument that the question of law at issue in the Order is not "controlling" is also without merit

Plaintiff contends that "the Order does not involve a 'controlling' question" because "the litigation would be conducted in the same way no matter how it were decided." Response at 10. This is unsupportable and contradicted by both the significant impact an appeal could have on the

---

[2] Plaintiff relies on the Court's statement in the Order that "the issue for decision presented a 'factual challenge' to whether or not there was requisite subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1)." Response at 11-12. This does not support Plaintiff's contention that the question for appeal is factual instead of legal. The quoted portion refers simply to the type of 12(b)(1) motion at issue before the Court.

scope of this case (5.7 million versus 27,120 purchasers), and the record of discovery Plaintiff has already sought. Plaintiff's argument that an order is not "controlling" under section 1292(b) unless it disposes of a count or a named party is not supported by the law.[3] For example, in *Molock v. Whole Foods Market Group, Inc.*, 317 F. Supp. 3d 1 (D.D.C. 2018), the court certified for interlocutory appeal under § 1292(b) an order denying a motion to dismiss a portion of a putative nationwide class based on lack of personal jurisdiction. *See id.* at 3. The defendant in *Molock* sought an appeal to allow the circuit court "to weigh in on whether the jurisdictional limits proscribed in *Bristol-Myers Squibb* [*Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017)] extend to unnamed, nonresident members of a putative nationwide class in federal court." *See id.* Like this case, the requested interlocutory appeal in *Molock* addressed the scope of the putative class, not the disposition of a count or a named party. *See id.* at 4.

The *Molock* court found that there was "no genuine dispute" that the order at issue there involved a "controlling question of law." *See id.* The court made clear that the "resolution of an issue need not necessarily terminate an action in order to be controlling, but instead may involve a procedural determination that may significantly impact the action." *See id.* at 4 (internal quotations and citation omitted). The court held that the "difference in scope" between possessing jurisdiction "over the claims of thousands of unnamed nonresident putative class members" as

---

[3] Plaintiff argues: "As recognized by the authorities cited in Defendants' memorandum (Defs.' Mem. At 5-6), a controlling question of law generally must dispose of some parties or claim to be 'controlling.'" Response at 10 (citing *Emerson Elec. Co. v. Yeo*, 2013 WL 440578, at *2 (E.D. Mo. Feb. 5, 2013); *Perry v. Johnston*, 2010 WL 546774, at *2 (E.D. Mo. Feb. 9, 2010); and *In re Endosurgical Prods. Direct Purchaser Antitrust Litig.*, 2007 WL 9772276, at *1 (C.D. Cal. Oct. 9, 2007). These cases in no way "recognized" or even addressed the proposition advanced by Plaintiff. They simply involved questions of law related to dismissals of claims or parties. Moreover, the answer to the question of whether Plaintiff's purchase of the Just Air Ticket Plan gives her standing to assert claims on behalf of consumers who purchased every other variety of travel protection plan *would dispose* of putative class claims if the Eighth Circuit were to resolve the question in Defendants' favor.

opposed to just over members residing in a single jurisdiction demonstrated that the jurisdictional issue was controlling. *See id.*

The same is true here. If the Eighth Circuit were to affirm the Order, then the Court will have jurisdiction over all 221 plans and a potential class derived from over 5.7 million customers. If, however, the Eighth Circuit were to disagree with the Order, then the Court would have jurisdiction over only the Just Air Ticket Plan and a potential class derived from 27,120 customers. The difference in the scope of the class will obviously have a significant impact on this case.

**B.     The Order Involves Substantial Grounds For A Difference Of Opinion**

**1.     Plaintiff's attempt to disregard the split of district court decisions on class standing within the Eighth Circuit should be rejected**

Defendants' Motion demonstrated, and the Court acknowledged (Order at 5), that the Eighth Circuit has never directly addressed whether a named plaintiff must have suffered the same injuries as the putative class in order to assert class claims, and that there is a significant split in the district courts within the Eighth Circuit addressing this issue. Motion at 7-9.

The Response argues that the district court split "predates the Eighth Circuit's ruling" in *In re SuperValu, Inc.*, 870 F.3d 763 (8th Cir. 2017), and therefore "does not establish substantial grounds for a difference of opinion." Response at 12.[4] This argument lacks merit because *In re*

---

[4] Plaintiff cites *Henggeler v. Brumbaugh & Quandahl, P.C., LLO*, 2012 WL 3030110, at *2 (D. Neb. July 25, 2012) for the proposition that a split of district court opinions is not a "substantial ground for difference of opinion" under 1292(b). *See* Response at 12. *Henggeler* is inapposite, however, because in that case, it was undisputed that the "Eighth Circuit [had] spoken on the issue at hand[.]" *See id.* Here, in contrast, the Court has acknowledged that the Eighth Circuit has not directly addressed the issue at hand. Plaintiff also cites *Morales v. Farmland Foods, Inc.*, 2011 WL 344112, at *5 (D. Neb. Feb. 1, 2011), for the notion that "the fact that the Eighth Circuit's opinion may not have definitively resolved Defendants' motion is likewise insufficient to justify interlocutory appeal." *See* Response at 12. *Morales* is not material because that case did not involve an issue that was the subject of a split of district court decisions, as this case involves.

*SuperValu* does not specifically address the standing issue Defendants seek to certify, and does not even cite, let alone disagree with or overrule, any of the district court decisions supporting the "standing" approach rejected in the Order. The timing of the district court decisions in relation to *In re SuperValu* is irrelevant. The Eighth Circuit should be afforded the opportunity to directly address the class standing issue that has repeatedly presented itself in the district courts, and resolve the significant split of authority that has developed within this Circuit. Indeed, courts in this Circuit have found that the "substantial ground" factor is met for far more minor "differences of opinion." *See Perry*, 2010 WL 546774, at *2 (finding substantial ground for difference of opinion where there was "some inconsistency" with how the issue was treated in certain districts within the Eighth Circuit).[5]

### 2. Plaintiff's contention that *In re SuperValu*, as interpreted by the Order, does not conflict with other Eighth Circuit decisions, is mistaken

Giving the Eighth Circuit an opportunity to address and resolve the district court split identified by Defendants, is sufficient reason for granting the Motion. The Motion, however, provided a second reason why the "difference of opinion" factor under § 1292(b) is satisfied. The Motion pointed out that the Court's interpretation of *In re SuperValu* is at odds with other Eighth Circuit opinions. Motion at 10-11 (citing Order at 5 (quoting *In re SuperValu*, 870 F.3d at 773 for

---

[5] *See also Schwendimann v. Arkwright Advanced Coating, Inc.*, 2012 WL 5389674, at *3 (D. Minn. Nov. 2, 2012) (substantial grounds for difference of opinion exists if there are a "sufficient number of conflicting and contradictory opinions" on the issue); *Olberding v. Union Pac. R.R. Co.*, 2007 WL 1656276, at *3 (W.D. Mo. Jun. 7, 2007) (certifying for interlocutory review where the Supreme Court and Eighth Circuit had not directly addressed the issue and "a substantial difference of opinion exists among the district courts"); *Pro-Edge L.P. v. Gue*, 2006 WL 8456918, at *2 (N.D. Iowa May 15, 2006) (finding substantial ground for difference of opinion where, *inter alia*, "courts have come to differing conclusions" with respect to the issue for appeal); *Altman v. White House Black Market, Inc.*, 2018 WL 3203151, at *1 (N.D. Ga. Apr. 9, 2018) (finding substantial ground for difference of opinion based on "non-binding cases" cited "by both parties in which some courts have found standing and others have found a lack of standing"). Plaintiff ignores all of these cases.

the proposition that "there is no separate class action standing requirement")). In the Response, Plaintiff erroneously contends that there is no discrepancy between the Court's interpretation of *In re SuperValu* in the Order on the one hand, and the Eighth Circuit's application of *In re SuperValu* in *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 973 at n.4 (8th Cir. 2018), on the other hand. Plaintiff is incorrect.

This Court's citation of *In re SuperValu* as support for the proposition that "the differences between a named plaintiff's claims and those of putative class members" are issues for Rule 23, not standing (Order at 5), is at odds with the Eighth Circuit's opinion in the *In re Target Corp.* litigation, where the Eighth Circuit held that a class settlement member who possessed standing to pose some objections to a settlement, had "*no standing* to assert" an objection related to relief made available to certain class members, but not to him. *See In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d at 973 n.4 (quoting *In re SuperValu*: "The requirements for standing do not change in the class action context."). In other words, the Eighth Circuit has relied on its *In re SuperValu* opinion to subsequently find that "the differences between a named plaintiff's claims and those of putative class members" (Order at 5), is a standing issue. This is inconsistent with the Order.[6] The Court's application of *In re SuperValu* thus provides an additional basis for

_____

[6] In attempting to distinguish *In re Target Corp.*, Plaintiff argues that the objector in that case "did not live in a state with better remedies" and was therefore "not personally harmed at all due to the conduct he was challenging." Response at 13. Plaintiff's argument overlooks that the objector in *In re Target Corp.* did possess standing to lodge other objections against other aspects of the settlement. The Eighth Circuit's reliance on *In re SuperValu* as support for precluding one of the objector's objections—on the ground that the objector did not suffer the same injury as other class members—suggests that the Eighth Circuit does not share this Court's interpretation of its prior opinion.

granting the Motion as the Eighth Circuit should be afforded an opportunity to resolve or clarify these conflicting conclusions.[7]

Plaintiff also contends, in conclusory fashion, that the facts and "the standing issues in" *Elizabeth M. v. Montenez*, 458 F.3d 779 (8th Cir. 2008), "were markedly different" than those at issue in this case. Response at 13-14. Contrary to Plaintiff's position, the opinion in *Elizabeth M.* is relevant here because it held that, under Article III, a court must determine that the named plaintiff suffered each injury underlying all claims on behalf of the putative class. Moreover, the Eighth Circuit in *Elizabeth M.* relied on *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000), which explained:

> Only *after* the court determines the issues for which the named plaintiffs have *standing* should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others. It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert. *Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.*

*See id.* at 1280 (internal quotations and citations omitted) (emphasis added).[8] This authority runs contrary to the Order's position that *In re SuperValu* relieves a plaintiff from showing that she

---

[7] Plaintiff also argues that *In re Target Corp.* "did not find any Article III issues with certifying" a settlement class with differences in state statutes applicable to class members. Response at 13. This observation is inapposite, because *In re Target* involved 112 named plaintiffs from multiple states, and there were no arguments raised as to the breadth of the injuries that they suffered. *See In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 611 (8th Cir.), amended, 855 F.3d 913 (8th Cir. 2017). Here, there is a single named plaintiff who was allegedly injured by one type of plan and who seeks to represent a class of customers allegedly injured by 221 plan varieties.

[8] *Prado-Steiman* has been widely cited in dismissing putative class claims for products not purchased by the named plaintiff. *See, e.g., Leon v. Continental AG*, 301 F. Supp. 3d 1203, 1221 (S.D. Fla. 2017) (collecting cases following *Prado-Steiman* and holding that "a class representative in a consumer class action may not bring claims on behalf of purchasers of products that the representative did not herself purchase").

suffered the same injuries as the putative class pursuant to Article III.[9]

In sum, because there is a significant split in the district courts within the Eighth Circuit addressing the standing issue decided in the Order, because the Eighth Circuit has never directly addressed the issue, and because the Order's interpretation of *In re SuperValu* arguably conflicts with other Eighth Circuit decisions,[10] the Court should find that the "substantial ground for difference of opinion" factor is satisfied for purposes of interlocutory appeal.[11]

---

[9] Plaintiff also attempts to distinguish *Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889 (8th Cir. 2015), because it "involved the dismissal of defendants against whom the named plaintiffs lacked standing to bring claims entirely." Response at 14. The Eighth Circuit in *Wong*, however, relied on *Lewis v. Casey*, 518 U.S. 343, 357 (1996), the seminal U.S. Supreme Court decision that requires courts to determine whether a named plaintiff possesses the same injuries as the putative class. *See Wong*, 789 F.3d at 895-96. The Newberg treatise upon which Plaintiff and the Order relies, cites *Lewis v. Casey* for the approach *contrary* to the "certification approach" to class standing—namely, the "standing approach." *See* William B. Rubenstein, 1 Newberg on Class Actions § 2.6.

[10] Plaintiff argues that "it is evident that what the Eighth Circuit meant [in *In re SuperValu*] was that a court must find that at least 'one named plaintiff has standing' using the Article III standing analysis that applies in all cases" in order to have jurisdiction. Response at 14. Defendants disagree. The court in *In re SuperValu* reversed the dismissal of a data breach class action with respect to one of the sixteen named plaintiffs in that case who alleged actual misuse of his credit card information. The court ruled that the district court should not have deduced that there was <u>no actual injury to the class</u> from the fact that the complaint could allege only a single fraudulent charge despite having sixteen named plaintiffs and "thousands" of putative class members. *See* 870 F.3d at 772-73. This does not address the question here, namely, whether the named plaintiff suffered <u>the same injuries</u> at issue in her proposed class.

[11] Plaintiff contends that "Defendants fail to cite any conflicting circuit-level authority from any other circuits that would suggest that the Court erred or that there are substantial grounds for disagreement." Response at 14. Plaintiff overlooks Defendants' discussion of the Eleventh Circuit's *Prado-Steiman* decision upon which the Eighth Circuit itself relied. In any event, relevant to this Motion is that there is clearly a substantial ground for difference of opinion within this Circuit on the issue of class standing. The Court has already acknowledged that this issue has not been definitively resolved and is the subject of "tension" in U.S. Supreme Court jurisprudence. There is no question that a substantial ground for difference of opinion exists.

**C.** **An Immediate Appeal Will Materially Advance The Ultimate Termination Of The Litigation**

In the Response, Plaintiff argues that an interlocutory appeal would not materially advance the ultimate termination of this litigation because "regardless of the outcome of the appeal, the litigation will proceed in largely the same manner." Response at 7. In conclusory fashion, Plaintiff then lists every stage of a class action, arguing that those stages will still occur and that no "parties will be dismissed and no claims will be resolved regardless of the outcome of the appeal." Response at 8. Plaintiff fails to cite any case where a court denied a motion under § 1292(b) because, even though the appeal could dramatically alter the scope of classwide litigation, it would remain a putative class action upon resolution of the issue appealed.[12]

Plaintiff's argument fails because the test for whether the "materially advance" factor is met is not if a case will remain a class action or whether the litigation will retain similar stages, but whether an appeal could "hasten or at least simplify the litigation in some material way, such as by significantly narrowing the issues, conserving judicial resources, or saving the parties from needless expense." *See Molock*, 317 F. Supp. 3d at 6 ("materially advance" factor was satisfied where order denying dismissal resulted in larger scope of a putative class); *see also Stearns v. NCR Corp.*, 2000 WL 34423090, at *1 (D. Minn. Oct. 11, 2000) (finding the "materially advance" factor

_____

[12] Plaintiff cites *Rilley v. Moneymutual, LLC*, 2017 WL 6343616 (D. Minn. Dec. 11, 2017) as an inapposite example where a court denied a 1292(b) motion because "the litigation will likely proceed in the ***exact same manner*** even if [the defendant] succeeds on appeal." *See* Response at 8 (emphasis added). In *Rilley*, the court denied dismissal of a certain defendant for lack of personal jurisdiction, and then denied a motion for a 1292(b) appeal because it found that "the same claims will still proceed against [the defendant's] subsidiaries, which are represented by the same attorneys." *See Rilley*, 2017 WL 6343616, at *2. Those facts are inapplicable here, where Defendants demonstrate that as a result of the Order, there will be a dramatic difference in the potential composition of the putative class, the complexity of discovery, expert witness issues, class certification proceedings, damages issues, dispositive motions, and trial issues.

met in a putative class action where an appeal "could obviate the need for a costly accounting of damages").[13]

Under the correct standard, Defendants satisfy the "materially advance" factor. Defendants' Motion demonstrated that, as a result of the Order, a massive difference in the potential composition of the putative class (from 27,120 customers of airfare plans to 5.7 million customers of each of the 221 travel plans), would impact every aspect of this case and exponentially increase the complexity of discovery, expert issues, class certification proceedings, dispositive motions, damages issues, and trial issues. Motion at 12-14.[14]

Plaintiff attempts to argue that Defendants' explanations of the substantial increase in complexity in this case resulting from the Order "appear overblown." Response at 9.[15] Plaintiff fails to refute Defendants' summaries and evidence showing the drastic increase in the scope of

---

[13] Meeting the test requires showing that the "litigation will not be conducted in substantially the same manner," i.e., that an immediate appeal would promote "the interests of efficiency, judicial economy, and fairness to all parties." *See* Motion at 12 (citing *H&R Block Tax Servs. LLC v. Franklin*, 2011 WL 13233811, at *2 (W.D. Mo. Nov. 16, 2011); *Grant v. Convergys, Corp.*, 2013 WL 1342985, at *2 (E.D. Mo. Apr. 3, 2013)).

[14] Plaintiff argues that no immediate appeal is necessary because Defendants could seek an appeal "at the time of class certification" under Rule 23(f). Response at 8. This argument ignores that the entire purpose of 1292(b) is avoiding "protracted and expensive litigation." *See White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994). An immediate appeal here would certainly achieve that objective. Also, Article III standing is a threshold issue that should be resolved now. *See APCC Servs., Inc. v. Sprint Commc'ns, Co.*, 297 F. Supp. 2d 90, 96-97 (D.D.C. 2003) (the Court "should not speak to any matter over which it lacks jurisdiction"). Moreover, even if the Order is affirmed, interlocutory appeal will still have reduced the scope of any later appeal seeking to reverse the standing decision. *See Moore v. Apple Cent., LLC*, 2017 WL 11195761, at *2 (W.D. Ark. Mar. 16, 2017).

[15] Plaintiff contends that "Defendants have apparently already determined how many plans are at issue and which consumers purchased plans." Response at 9. While TIS has expended resources determining the total amount of plans that included single-trip travel insurance coverage, TIS has not determined "which consumers purchased plans," a task that would involve over 5.7 million lines of data. In any event, this information would barely scratch the surface of the total documents and data associated with all 221 plans requested by Plaintiff in this case, as listed below.

the case depending upon the outcome of the Order. For example, with respect to discovery, Plaintiff ignores Defendants' list of the vast amounts of data, documents, and communications dating back to 2012 for all 221 plans, requested by Plaintiff. Indeed, Plaintiff ignores that the discovery already sought implicates the following:

- correspondence with *more than 5.7 million policyholders*;

- *all* travel insurance policy form and rate filings and correspondence with state insurance regulators *nationwide* with respect to the plans;

- *all* contracts with *every travel business* (travel suppliers, tour operators, and travel agencies) that makes plans available for purchase;

- *all* plan material and confirmations of coverage for *every* plan;

- *all* actuarial material underlying *all* plans;

- internal communications regarding plan pricing for *every* plan;

- plan-by-plan underwriting, premium, "profit," and loss information for *every* plan;

- premium, refund data, and purchase information for *every* policyholder;

- data regarding trip cancellation claims for *all* policyholders; and

- all documents and communications "relating to the purpose and drafting of" certain language in the plans or "showing when the risk of peril for post-departure coverages transfers to the insurer."

There is no question that the discovery, motion practice, and depositions related to the above will require exponentially more resources for both parties if Plaintiff's standing in the case covers all 221 varieties of plans instead of the Just Air Plan which she purchased.[16]

---

[16] Plaintiff's argument that the Court should disregard Ms. Dunlap's testimony explaining how extracting, collecting, and reviewing documents related to the plans would be extremely burdensome and expensive (*see* Motion at 13), because "this would not be a reason to deny discovery or deny class certification" (*see* Response at 9), is misguided. The reasons for denying class certification are not relevant to this Motion. Moreover, Plaintiff cites *Beseke v. Equifax Info. Servs., LLC*, 2018 WL 6040016, at *4 (D. Minn. Oct. 18, 2018), which *supports* an immediate

Additionally, Plaintiff virtually ignores Defendants' description of issues in the case that will become significantly more complex for the Court and the parties based on the Order. Plaintiff fails to address the fact that Defendants do not track whether customers complete or cancel their travel plans unless they file claims, which means that the inclusion of all plans in this case will exponentially complicate any attempt to identify which customers cancelled their trips prior to departure and are potentially included in the putative class.

Plaintiff also fails to adequately address the increased complexity on damages and expert witness issues resulting from different pricing methodologies and individualized factors utilized by different plans. Plaintiff does not dispute that her claims purport to require disassembling the plans in order to calculate a partial refund for a portion of the plan's benefits. The Motion explained that this task will be complicated by the variation of different pricing methodologies and individualized factors used by the different plans. *See* Motion at 13-14.[17]

---

appeal here because it demonstrates the expense of burdensome class discovery that the Court and the parties might be able to avoid. In *Beseke*, the court heard extensive briefing and argument related to overly broad class discovery and then limited the plaintiff's discovery requests based on the disproportionate burden on the defendant. *See id.* (limiting the requested production and timeframe of certain class discovery propounded by plaintiff, because, given the burden demonstrated by defendant, it was "clear that although relevant, not all of [plaintiff's] sought-after discovery [was] appropriate").

[17] Plaintiff cites *Hartley v. Suburban Radiologic Consultants, Ltd.*, 2013 WL 6511847, at *3 (D. Minn. Dec. 12, 2013), for the proposition that an immediate appeal "would only impose unwarranted delay and would result in additional burdens for Plaintiff and the proposed class members." *See* Response at 8. *Hartley*, which involved a motion for an interlocutory appeal following orders granting class certification and summary judgment, is not analogous to this case, which is at a relatively early stage of the discovery process. Additionally, the *Hartley* court denied leave to seek an appeal because irrespective of the outcome of an appeal, the case "would proceed with" the co-defendant and "involve nearly identical facts, motion practice, class notification process, and trial." *See Hartley*, 2013 WL 6511847, at *2. Such is not the case here, and Plaintiff fails to identify any additional burden for herself or the proposed class members by an immediate appeal, which could only help prevent unnecessary protracted and expensive litigation.

Plaintiff's contention that the above does not demonstrate that an immediate appeal would "materially advance the ultimate termination of this litigation" is unsupportable and overwhelmingly contradicted by authority. *See Molock*, 317 F. Supp. 3d at 7 ("given the potential of avoiding burdensome discovery costs and conserving judicial resources in the event of a reversal, this court finds that certifying its prior order for interlocutory appeal will 'materially advance the ultimate termination of the litigation'"); *Moore*, 2017 WL 11195761, at *2 (finding the "materially advance" factor met where appeal could avoid "years of potential litigation"); *Stearns v. NCR Corp.*, 2000 WL 34423090, at *1 (D. Minn. Oct. 11, 2000) (third factor met where, "due to the complex nature of this class action litigation," a reversal would obviate "a substantial investment of administrative resources by the Court and the parties"); *Wieboldt Stores, Inc. v. Schottenstein Stores Corp.*, 1989 WL 51068, at *2 (N.D. Ill. May 5, 1989) (where an interlocutory appeal "might preclude wasteful and time-consuming discovery as well as a lengthy and complex trial, immediate resolution would materially advance the termination of this litigation"). The Court should grant this Motion and certify its Order for interlocutory appeal.

## II. THE COURT SHOULD STAY THE PROCEEDINGS PENDING RESOLUTION OF THE APPEAL TO THE EIGHTH CIRCUIT

Plaintiff does not dispute that the factors supporting a stay of all proceedings in this case pending appeal are present. Plaintiff offers no suggestion that a stay would create any undue prejudice or disadvantage. Nor does Plaintiff rebut the fact that a stay would conserve the resources of all parties and the Court. Instead, Plaintiff argues that "the case should not be stayed unless and until the Eighth Circuit accepts the appeal." Response at 15. If, however, the Court decides to certify the Order for immediate appeal, waiting to enter a stay until the Eighth Circuit rules on the petition makes little sense and would defeat the very purpose of the stay -- to conserve the resources of the parties and the Court while the disposition of the Order and the scope of this

case may be subject to review. *See Moore*, 2017 WL 11195761, at *2 (recognizing that "the time and expense of the parties" from litigating under a debatable issue "will be more harmful to each of them than simply staying pending resolution of an appeal"); *Stearns*, 2000 WL 34423090, at *2 (granting stay, even with possible delay of health care benefits to plaintiffs, to avoid investment of "unnecessary time and resources which, by certifying its Order for appeal, the Court has sought to avoid"). The Court should therefore enter a stay if and when it determines that it will certify the Order for immediate appeal.

Plaintiff also requests that the Court "limit the scope of any stay to only the discovery that would be implicated by the appeal and allow all other discovery to continue." Response at 16. This proposal also would be inefficient and unnecessary. The issue for appeal here relates to Plaintiff's standing and is fundamental to all future proceedings in this case. If the Order stands, limiting the stay would create unnecessary expense and duplication of effort by requiring Defendants to collect, review, and produce a subset of potentially responsive documents and data in piecemeal fashion. The Court should enter a complete stay of proceedings to best conserve the resources of the Court and the parties and to provide a just determination of this case.

## CONCLUSION

For the reasons set forth above and in the Motion, Defendants respectfully request that the Court enter an order amending and certifying the March 20, 2020 Order for appeal pursuant to 28 U.S.C. §1292(b), and entering a stay of proceedings pending resolution of the petition for appeal by the Eighth Circuit.

Dated:  May 5, 2020

Respectfully submitted,

/s/  Markham R. Leventhal
Markham R. Leventhal (DC Bar No. 489597)
mleventhal@carltonfields.com
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
Telephone:  (202) 965-8189
Facsimile:  (202) 965-8104

Julianna Thomas McCabe (FL Bar No. 355010)
jtmccabe@carltonfields.com
Michael N. Wolgin (FL Bar No. 42962)
mwolgin@carltonfields.com
CARLTON FIELDS, P.A.
Miami Tower, Suite 4200
100 S.E. Second Street
Miami, Florida 33131
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055

*Attorneys for Defendants*
*Travelex Insurance Services, Inc. and*
*Transamerica Casualty Insurance Company*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the Word Limits set forth in NECivR 7.1(d)(1)(A). This brief contains 6,498 words based on the word-count function of the undersigned's Microsoft Word version 2016 software applied to all text, including the caption, headings, footnotes, and quotations.

Markham  R. Leventhal

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of May, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF:

Burke Smith, Esq.
BURKE SMITH LAW
10730 Pacific Street, Suite 100
Omaha, Nebraska 68114
Telephone: (402) 718-8865
Facsimile: (402) 218-4391
burke@burkesmithlaw.com

*Local Counsel for Plaintiff
and the Proposed Class*

Peter R. Kahana, Esq.
Lane L. Vines, Esq.
Y. Michael Twersky, Esq.
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
pkahana@bm.net
lvines@bm.net
mitwersky@bm.net

*Co-Lead Counsel for
Plaintiff and the Proposed Class*

John G. Albanese, Esq.
BERGER & MONTAGUE, P.C.
43 S.E. Main Street, Suite 505
Minneapolis, Minnesota 55414
Telephone: (612) 594-5997
Facsimile: (612) 584-4470
jalbanese@bm.net

*Co-Lead Counsel for Plaintiff
and the Proposed Class*

Ingrid Evans, Esq.
EVANS LAW FIRM, INC.
3053 Fillmore Street, Suite 236
San Francisco, California 94123
Telephone: (415) 441-8669
Facsimile: (888) 891-4906
ingrid@evanslaw.com

*Co-Lead Counsel for Plaintiff
and the Proposed Class*

/s/ Markham R. Leventhal

121900255

-20-