# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHELLE ANDERSON, an individual, On Behalf of Herself and All Others Similarly Situated, | Case No. 8:18-cv-00362-JMG-SMB |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| TRAVELEX INSURANCE SERVICES INC. and TRANSAMERICA CASUALTY INSURANCE COMPANY, | |
| Defendants. | |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................................. 2

THE SETTLEMENT AGREEMENT ...................................................................................... 5

    A.   The Settlement Class ................................................................................................. 5

    B.   Relief to the Settlement Class .................................................................................... 6

    C.   Class Notice ................................................................................................................ 8

    D.   Opt-Outs and Objections .......................................................................................... 10

    E.   Attorneys' Fees and Costs and Service Award for the Named Plaintiff .......................... 10

ARGUMENT ...................................................................................................................... 12

I.      THE SETTLEMENT CLASS SHOULD BE CERTIFIED ............................................. 13

    A.   The Settlement Class Is Numerous ........................................................................... 14

    B.   There are Common Questions of Law and Fact .......................................................... 15

    C.   Typicality is Met ...................................................................................................... 16

    D.   Plaintiff and Class Counsel are Adequate .................................................................. 17

    E.   Common Issue Predominate and a Class Action is Superior ......................................... 18

II.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ............................. 20

    A.   The Settlement is Procedural Fair, as the Class Representatives and Class Counsel Have Adequately Represented the Class, and the Proposed Settlement Was Negotiated at Arm's Length ..................................................................................................................... 21

    B.   Substantive Fairness is Met, as the Settlement Provides Adequate Relief and Treats Settlement Class Members Equitably Relative to Each Other ................................................ 24

III.   THE COURT SHOULD APPROVE THE NOTICE PLAN .......................................... 28

CONCLUSION ................................................................................................................... 29

## **TABLE OF AUTHORITIES**

Other Authorities

*Alpern v. UtiliCorp United, Inc.*,
   84 F.3d 1525 (8th Cir. 1996)............................................................................. 16
*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................... 14, 18, 19
*Anderson v. Travelex Ins. Servs., Inc.*,
   No. 8:18-cv-362, 2019 WL 1932763 (D. Neb. May 1, 2019)........................... 4
*Anderson v. Travelex Ins. Servs., Inc.*,
   No. 8:18-cv-362, 2020 WL 1323489 (D. Neb. Mar. 20, 2020) ................. passim
*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006) ............................................................................ 16
*Blades v. Monsanto Co.*,
   400 F.3d 562 (8th Cir. 2005)........................................................................... 14
C.Class N,
   otice 7 ................................................................................................................ i
*Campbell v. Transgenomic, Inc.*,
   No. 4:17-cv-3021, 2019 WL 3003920 (D. Neb. July 10, 2019) .............. 19, 28
*Campbell v. Transgenomic, Inc.*,
   No. 4:17-cv-3021, 2020 WL 2946989 (D. Neb. June 3, 2020)........................ 22
*Caroline C. by and through Carter v. Johnson*,
   174 F.R.D. 452 (D. Neb. 1996)....................................................................... 15
*Chaffin v. Rheem Mfg. Co.*,
   904 F.2d 1269 (8th Cir. 1990)......................................................................... 16
*Christina A. v. Bloomberg*,
   No. 00-cv-4036, 2000 WL 33980011 (D.S.D. Dec. 13, 2000) ....................... 23
*Coleman v. Watt*,
   40 F.3d 255 (8th Cir. 1994).............................................................................. 13
*Cortez v. Nebraska Beef, Inc.*,
   266 F.R.D. 275 (D. Neb. 2010)............................................................ 14, 15, 16
*Cortez v. Nebraska Beef, Inc.*,
   No. 8:08-cv-90, 2012 WL 12931431 (D. Neb. Feb. 9, 2012) ......................... 23
*Cullan and Cullan LLC v. M-Qube, Inc.*,
   No. 8:13-cv-172, 2016 WL 5394684 (D. Neb. Sept. 27, 2016) ...................... 25
*Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*,
   984 F.3d 595 (8th Cir. 2020)........................................................................... 18
*DeBoer v. Mellon Mortg. Co.*,
   64 F.3d 1171 (8th Cir. 1995)............................................................... 15, 16, 22
*Desert Orchid Partners, LLC v. Transaction Sys. Architects, Inc.*,
   Nos. 8:02-cv-553, 8:02-cv-561, 2007 WL 703515 (D. Neb. Mar. 2, 2007) ............ 23
*Ebert v. Gen. Mills, Inc.*,
   823 F.3d 472 (8th Cir. 2016)........................................................................... 15
*Est. of Mahoney v. R.J. Reynolds Tobacco Co.*,
   204 F.R.D. 150 (S.D. Iowa 2001) ................................................................... 20

*Gonzales v. Cassidy*,
  474 F.2d 67 (5th Cir. 1973) .................................................................................... 17

*Grunin v. Int'l House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975) .................................................................................. 25

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  No. 3:17-cv-2335-GPC-MDD, 2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ........... 11

*Huyer v. Buckley*,
  849 F.3d 395 (8th Cir. 2017) .................................................................................. 11

*Huyer v. Wells Fargo & Co.*,
  314 F.R.D. 621 (S.D. Iowa 2016) ........................................................................... 11

*In re CenturyLink Sales Pracs. & Sec. Litig.*, No. MDL172795MJDKMM,
  2021 WL 1040520 (D. Minn. Mar. 18, 2021) ......................................................... 27

*In re Charter Commc'ns, Inc., Sec. Litig.*,
  No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ................. 12

*In re Emp. Ben. Plans Sec. Litig.*,
  No. CIV. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993) .............................. 22

*In re Nassau Cty. Strip Search Cases*,
  461 F.3d 219 (2d Cir. 2006) .................................................................................... 20

*In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*,
  631 F. Supp. 2d 1151 (D. Minn. 2009) ................................................................... 23

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*,
  716 F.3d 1057 (8th Cir. 2013) ................................................................................ 22

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
  396 F.3d 922 (8th Cir. 2005) .................................................................................. 24

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
  No. 03-cv-015, 2004 WL 3671053 (W.D. Mo. Apr. 20, 2004) ............................... 12

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
  No. 08-MDL-1958 ADM/AJB, 2013 WL 716088 (D. Minn. Feb. 27, 2013) .......... 24

*Jones v. Novastar Fin., Inc.*,
  257 F.R.D. 181 (W.D. Mo. 2009) ........................................................................... 15

*Keil v. Lopez*,
  862 F.3d 685 (8th Cir. 2017) ............................................................................. 25, 27

*Khoday v. Symantec Corp.*,
  No. 11-cv-180 JRT/TNL, 2014 WL 1281600 (D. Minn. Mar. 13, 2014) ............... 20

*King v. Raineri Const., LLC*,
  No. 4:14-CV-1828 CEJ, 2015 WL 631253 (E.D. Mo. Feb. 12, 2015) .................... 24

*Klug v. Watts Regul. Co.*,
  No. 8:15-cv-61, 2017 WL 1373857 (D. Neb. Apr. 13, 2017) ................................. 23

*Lechner v. Mut. of Omaha Ins. Co.*,
  No. 8:18-cv-22, 2020 WL 5982022 (D. Neb. Oct. 8, 2020) ......................... 12, 13, 22

*Lechner v. Mut. of Omaha Ins. Co.*,
  No. 8:18-cv-22, 2021 WL 424421 (D. Neb. Feb. 8, 2021) ..................................... 23

*Mullane v. Cen. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ......................................................................................... 13, 28

*Paxton v. Union Nat'l Bank*,
  688 F.2d 552 (8th Cir. 1982) ......................................................................... 15, 16, 17

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999).................................................................. 12, 28

*Ramsey v. Sprint Commc'ns Co., L.P.*,
    No. 4:11-cv-3211, 2012 WL 6018154 (D. Neb. Dec. 3, 2012)................... 22, 24, 25

*Reynolds v. Credit Bureau Servs., Inc.*,
    No. 8:15CV168, 2016 WL 389977 (D. Neb. Feb. 1, 2016).................... 28

*Risch v. Natoli Eng'g Co., LLC*,
    No. 4:11CV1621 AGF, 2012 WL 4357953 (E.D. Mo. Sept. 24, 2012) .............. 24

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
    821 F.3d 992 (8th Cir. 2016)........................................................... 19

*Sch. Dist. No. 1*,
    921 F.2d 1371 (8th Cir. 1990).......................................................... 12

*Sharp v. Watts Regul. Co.*,
    No. 8:16-cv-200, 2017 WL 1373860 (D. Neb. Apr. 13, 2017)................. 23

*Smith v. Merchants & Farmers Bank of W. Helena*,
    574 F.2d 982 (8th Cir. 1978)........................................................... 13

*Stuart v. State Farm Fire & Cas. Co.*,
    910 F.3d 371 (8th Cir. 2018)........................................................... 20

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011)............................................................ 19

*Tardiff v. Knox County*,
    365 F.3d 1 (1st Cir. 2004) ........................................................ 20, 21

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ...................................................................... 18

*United States Fid. & Guar. Co. v. Lord*,
    585 F.2d 860 (8th Cir. 1978)........................................................... 14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................... 15

*Yarrington v. Solvay Pharms., Inc.*,
    No. 09-CV-2261 (RHK/RLE), 2010 WL 11453553 (D. Minn. Mar. 16, 2010)...... 27

## Statutes

28 U.S.C. § 1715.................................................................................... 8

## Rules

Fed. R. Civ. P. 12(b)(1)......................................................................... 4
Fed. R. Civ. P. 12(b)(6)......................................................................... 3
Fed. R. Civ. P. 23 ........................................................................ passim

## Other Authorities

4 NEWBERG ON CLASS ACTIONS § 13:10 (5th ed.) ................................... 12, 13
MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.634 ........................... 29

## INTRODUCTION

After nearly three years of hotly contested litigation, Plaintiff Michelle Anderson and Defendants Travelex Insurance Services Inc. ("Travelex") and Transamerica Casualty Insurance Company ("Transamerica") ("Defendants") (collectively, "the Parties") have reached an agreement to resolve this matter through a class action settlement.[1]

Defendants sold single-trip travel insurance plans ("Travel Plans") that included both pre-departure and post-departure benefits.[2] Plaintiff alleges that these two categories of coverage are distinct and divisible, and that by the Travel Plans' own terms the post-departure coverage only became effective upon commencement of travel. Defendants had a policy of not providing partial premium refunds for post-departure benefits whenever a covered trip was cancelled. Plaintiff alleges that Defendants violated the Nebraska Consumer Protection Act and were unjustly enriched by retaining the portion of the premium attributable to post-departure benefits when the covered trip was cancelled before departure, because the risk associated with providing these benefits to insureds never attached, and the premium was not earned. Defendants vigorously dispute Plaintiff's allegations in the case. Among other defenses, Defendants dispute that the travel insurance plans are divisible into pre and post-departure benefits; argue that all risk, including for post-departure benefits attached at the time of purchase of the Travel Plans; and otherwise deny that their refund practices violated any laws, or were unjust.

After hard fought litigation and two full days of mediation with mediator Rodney Max,[3] the Parties agreed to settle this matter by establishing a ***non-reversionary***, common fund of $3,237,500 ("Settlement Amount") from which Settlement Class Members who are reached will

---

[1] The Class Action Settlement Agreement ("Settlement Agreement" or "SA"), is attached hereto as Exhibit 1. All capitalized terms referred to herein are defined in the Settlement Agreement.
[2] Defendants stopped selling their Travel Plans in 2017.
[3] *See* https://www.floridamediators.org/rodney-max.

receive automatic payment *without the need to submit a claim form*. Defendants have identified

no more than 105,284 Settlement Class members.  The common fund will also be used for payment

of attorneys' fees, litigation expenses, administration costs, and a service award for Plaintiff, all of

which are subject to Court approval. If the anticipated fees, costs, and service award are approved,

Settlement Class Members will be eligible to receive a payment representing approximately 25%-

35% of the premium attributable to post-departure benefits, or $5.00, whichever is greater. This is

a substantial and commendable recovery given the risks and delays associated with continued

litigation and Defendants' myriad asserted defenses.

The class action Settlement warrants preliminary approval as the terms are "fair,

reasonable, and adequate" and meets all requirements of Rule 23 of the Federal Rules of Civil

Procedure. Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval

Order (Exhibit D to the Settlement Agreement), which: (1) preliminarily approves the Settlement;

(2) preliminarily certifies the Settlement Class; (3) appoints Plaintiff Michelle Anderson as the

Settlement Class Representative; (4) appoints Berger Montague PC as Class Counsel; (5) approves

the proposed Notice Program and issuance of Notice to Settlement Class members; and (6)

schedules a Final Approval Hearing to consider final approval of the Settlement. Defendants do

not oppose the relief sought in this Motion.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Defendants sold Travel Plans underwritten by Transamerica and marketed by Travelex.

These plans contained both pre-departure insurance benefits (such as payment for losses due to

trip cancellation), and post-departure insurance benefits (such as payment for losses due to trip

interruption and baggage delay). Dkt. No. 1, Compl. ¶¶ 18, 33. By the Travel Plans' express terms,

coverage for pre-departure losses takes effect when the plan is purchased; whereas coverage for

2

post-departure losses only becomes effective when the insured trip actually begins. *Id.* ¶ 30. Defendants ceased selling the plans at issue in this case in 2017.

Plaintiff purchased her Travel Plan from Defendants through the online travel agency, Just Air Ticket. *Id.* ¶¶ 32-33. Plaintiff did not take her covered trip and filed a claim for travel cancellation benefits, which was denied by Defendants for being outside the scope of such coverage. Moreover, upon her subsequent demand, Defendants refused to provide her a partial premium refund related to the post-departure benefits. *Id.* ¶¶ 37-39. Plaintiff initially brought this case in the Western District of New York because the address to send claims under Defendants' travel insurance plan was the "Travelex Claims Department" located in Niagara Falls, NY. Dkt. No. 33 at 7.[4] Defendants filed a motion to dismiss challenging personal jurisdiction in New York and requesting, in the alternative, that the case be transferred to Arizona. *Id.* at 7-8. Plaintiff voluntarily dismissed the action in New York and refiled in this Court based on Defendant Travelex's extensive ties to Nebraska. *Id.* at 8.

In the operative Complaint, Plaintiff alleges that Defendants' policy of failing to provide partial premium refunds was an unfair practice under the Nebraska Consumer Protection Act and constituted unjust enrichment as they were obligated to return unearned premiums in accord with long established insurance principles. Compl. ¶¶ 55-69. Defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff's unjust enrichment claim failed because the Parties' relationship was governed by a contract. Dkt. No. 27. Defendants also moved to dismiss Plaintiff's claim under the Nebraska Consumer Protection Act, arguing that she lacked statutory standing as a non-Nebraska resident to bring such a claim and had not adequately alleged

---

[4] Plaintiff originally filed this litigation on December 5, 2017. S*ee* W.D.N.Y. Case No. 1:17-cv-001274, Dkt. 1 (Class Action Complaint).

an unfair practice covered by the statute. *Id*. The Court denied Defendants' motion, finding that Plaintiff had plausibly alleged claims for unjust enrichment and violation of the Nebraska Consumer Protection Act. *See Anderson v. Travelex Ins. Servs., Inc.,* No. 8:18-cv-362, 2019 WL 1932763 (D. Neb. May 1, 2019). While Plaintiff prevailed on Defendants' motion, the Court noted that determining when the risk for post-departure coverage attached could "only be sorted out after the defendants have answered the complaint and the parties have had a reasonable opportunity for discovery." *Id.* at 3.

During discovery, Defendants objected to providing information regarding any of their travel protection plans other than plans sold through Just Air Ticket. Defendants moved to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) the claims of putative class members who bought plans other than through Just Air Ticket, arguing that Plaintiff lacked "Article III standing to pursue class claims with respect to products she did not purchase." Dkt. No. 66 at 3. In connection with this second motion to dismiss, Defendants submitted a declaration from Travelex Senior VP Risk and Compliance Sally Dunlap, and Plaintiff deposed Ms. Dunlap in connection with responding to Defendants' motion. Dkt. Nos. 67, 76-1. The Court denied Defendants' motion finding that "there is an absence of evidence suggesting that the plaintiff's claim and alleged injury is so different from the possible claims and injuries of putative class members, such that the exception to the general standing requirement for class actions should not apply." *Anderson v. Travelex Ins. Servs., Inc.*, No. 8:18-cv-362, 2020 WL 1323489, at *4 (D. Neb. Mar. 20, 2020). Defendants then moved to certify for interlocutory appeal the denial of their motion, which the Court also denied. *Anderson v. Travelex Ins. Servs., Inc.*, No. 8:18-cv-362, 2020 WL 2909980 (D. Neb. June 3, 2020).

Thereafter, the Parties agreed to mediate this case. Prior to mediation, Defendants produced additional discovery in the form of tens of thousands of pages of documents relating to the travel plans, including, (*e.g.*)*,* rate filings and documents setting forth the premiums collected. Plaintiff retained an actuarial consultant, Charles DeWeese, FSA, MAAA, to review Defendants' documents and develop a damages model. Mr. DeWeese estimated approximately between 26.35% and 29.27% of the total aggregate premium charged for Defendants' Travel Plans could be attributed to post-departure benefits. Defendants contest that the insurance provided through their Travel Plans are legally divisible (arguing that it is not), and the remainder of Plaintiff's allegations.

On November 11, 2020, the Parties attended via Zoom an all-day mediation session with Rodney Max. Dkt. No. 96 at ¶ 5. Prior to the mediation, the Parties exchanged detailed mediation statements and Plaintiff provided Defendants with a copy of a report prepared by Mr. DeWeese for the purposes of mediation. The Parties did not resolve the matter at the first mediation, but discussions were productive. Dkt. No. 96 at ¶ 6. The Parties continued to exchange settlement correspondence and reconvened for a second mediation with Rodney Max on March 4, 2021. Dkt. No. 99 at ¶ 4. After a second full day of mediation the Parties reached an agreement in principle to resolve this matter. Over the course of the next three months, the Parties negotiated the details of the Settlement Agreement.

### THE SETTLEMENT AGREEMENT

**A.    The Settlement Class**

The Settlement Class is defined as:

All persons in the United States who have been identified by Defendants as insured under a Travel Plan purchased within the Class Period, and for whom a claim for trip cancellation benefits was initiated under the Travel Plan. The Parties acknowledge that the third party administrator handling trip cancellation claims for the Travel Plans identified no more than 105,284 potential Settlement Class

Members. Excluded from the Settlement Class are: (i) all persons who previously received a refund of premium from the Defendants for any Travel Plan(s) at issue in the Litigation; (ii) all persons who previously entered into a written agreement with the Defendants releasing all claims related to a Travel Plan(s) at issue in the Litigation; (iii) all insureds for whom no premium was charged under a Travel Plan; and (iv) all persons who during the Class Period were officers, directors, or employees of either of the Defendants.

SA ¶ A.36. The Class Period is defined as January 1, 2014 to December 31, 2017 (SA ¶ A.4), as Defendants ceased selling the plans at issue in 2017. The Settlement Class is narrower than the putative class pled in the Complaint, inasmuch as the Settlement Class consists only of people who, based on Defendants' records, initiated a coverage claim in connection with a cancelled trip that was never commenced. *Compare* Compl. ¶ 43 *with* SA ¶ A.36. Here, the total number of potential Settlement Class Members is approximately 100,000. *Id.* Needless to say, the Settlement only releases the claims of Settlement Class Members (and related Persons). SA ¶ F.1.

### B.    Relief to the Settlement Class

The Settlement provides for Defendants to pay the Settlement Amount of ***$3,237,500*** from which payments to Settlement Class Members will be made. SA ¶ C.1. After deductions for Court-approved attorney fees, litigation expenses, settlement administration costs, and a service award, the Net Settlement Fund will be divided among Settlement Class Members *pro rata* based on the amount of premium paid to insure that Settlement Class Member under their applicable Travel Plan, SA ¶ C.3, unless a Settlement Class Member would receive a payment of less than $5.00, in which event the payment will be increased until the payment reaches $5.00. *Id.* Based on analysis of available data about Settlement Class Members, Plaintiff estimates that each Settlement Class Member who does not receive the minimum will receive 7.5-10% of their premium paid, which represents about 25%-35% of the estimated premium paid for post-departure benefits.[5]

---

[5] For instance, if Settlement Payments are 7.5% of the total premium paid by Settlement Class Members, and assuming 29.27% is the portion of the total premium attributable to post-departure

*No claim form is required for payment.* The Settlement Administrator will send the appropriate Settlement Payment by check to every Settlement Class Member for whom a mailing address has been provided, except that a check will not be sent to any Settlement Class member whose Postcard Notice is returned as undeliverable, and for whom no forwarding address has been found by the Settlement Administrator, and for whom no other address is provided by the Settlement Class Member prior to the Effective Date of the Settlement. SA ¶ C.4. If a Settlement Class member timely requests to be excluded from the Settlement, that Settlement Class member will also not receive a payment. SA ¶ E.1. Additionally, in lieu of receiving a check, the Settlement Administrator will provide Settlement Class Members as part of the Notice Plan with the option of receiving payment via electronic means, including Paypal, Venmo, or other reasonable and valid means made available by the Settlement Administrator. SA ¶ C.4. Settlement Class Members shall have a full 180 days to cash their checks. SA ¶ C.5.

If a portion of the Net Settlement Fund remains following the distribution by the Settlement Administrator to Settlement Class Members of their payments and the Check Cashing Deadline, then such remaining funds will be distributed to a *cy pres* recipient to be proposed by the Parties subject to the Court's approval in its Final Approval Order. SA ¶ C.6. If the amount remaining is of such an amount that in the discretion of Lead Counsel and the Settlement Administrator it is feasible that such monies should be redistributed, then Lead Counsel may petition the Court for an Order to distribute the remaining Net Settlement Fund to those Settlement Class Members (rather than making a *cy pres* distribution). *Id.*

---

benefits (as was the high-end of the range estimated by Plaintiff's expert), the Settlement Payment would represent 25.6% (7.5/29.27) of the recoverable damages. Of course, the final settlement payment amounts will depend on how many Settlement Class members can be found, the number of opt-outs, and the amounts approved for attorneys' fees, costs, and Plaintiff's service award.

In exchange for Defendants' payment of the Settlement Amount, Settlement Class Members will release all claims which were asserted or could have been asserted in the case concerning Defendants' alleged liability to pay partial refunds of premium paid by policyholders for post-departure benefits when their insured travel is cancelled (as described in the Settlement). SA ¶ F.1. Significantly, the release will ***exclude*** pending or as yet unfiled policyholder claims for trip cancellation benefits under the Travel Plans. *Id.*

### C.     Class Notice

After receiving competitive bids from several class action administration firms, the Parties have selected Angeion Group, LLC, ("Angeion") to serve as the Settlement Administrator. Angeion has provided a bid wherein costs of notice and administration shall not exceed $199,500.[6]

Defendants shall cause to be mailed notice of the Settlement to federal and state officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. SA ¶ D.3.e. Within five business days of preliminary approval, Defendants will also provide to the Settlement Administrator all known contact information for Settlement Class members, including, without limitation, each policyholders' name, address, and email address, and the amount of the premium paid to insure that Settlement Class member under their applicable Travel Plan. SA ¶ D.3.a.

Within 30 days of the Preliminary Approval Order, the Settlement Administrator will send notice by postcard ("Postcard Notice") and email ("Email Notice"). SA ¶ D.3.b. These notices will be in the forms set forth as Exhibits C and B to the Settlement Agreement. SA ¶¶ A.18, D.3.b. Prior to mailing the Postcard Notice, the Settlement Administrator will use the U.S. Postal Office's National Change of Address System to verify or update address information for members of the Settlement Class. *Id.* Additionally, if any Postcard Notice is returned with a forwarding address,

---

[6] Attached as Exhibit 2 hereto is the Declaration of Steven Weisbrot, which sets forth Angeion's background and qualifications to serve as the Settlement Administrator.

the Settlement Administrator will re-mail the Postcard Notice to the forwarding address. *Id.* Prior to sending the Email Notice, the Settlement Administrator will use software to correct errors in email addresses provided for members of the Settlement Class. *Id.*

The Settlement Administrator will also establish a Settlement Website specific to this Settlement, and the address of that Website will be included in all Settlement Notices. SA ¶ D.3.c. The Settlement Website will have: (i) the Long Form Notice; (ii) the Settlement Administrator's toll-free phone number applicable to the Settlement; (iii) copies of the Complaint, the Settlement Agreement and its exhibits, Court Orders regarding the Settlement, Plaintiff's Motion for Approval of Attorneys' Fees, Litigation Expenses and the Plaintiff's Service Award, and Plaintiff's Motion for Final Approval of Class Action Settlement; (iv) information about the ability for Settlement Class Members to update their addresses; (v) information about the ability for Settlement Class Members to select to receive any Settlement Payments via Paypal, Venmo, or other reliable electronic means made available at the discretion of the Settlement Administrator; and (vi) a Frequently Asked Questions page. *Id.* The Settlement Administrator will also shall establish a toll-free telephone number that will provide members of the Settlement Class with information regarding the Settlement and direct them to the Settlement Website. SA ¶ D.3.d.

To ensure a high check cashing rate, ninety days in advance of the 180-day check cashing deadline, the Settlement Administrator will send check-cashing reminders by email and/or postcard (if email is unavailable) to Settlement Class Members who were sent but who have not yet cashed their check. SA ¶ D.3.f.  The costs of settlement administration will be paid from the Gross Settlement Fund with the initial costs of sending notice being paid by Defendants prior to final approval. SA ¶ C.2. The remaining costs will be deducted from the Gross Settlement Fund after the Settlement is fully funded by Defendants following final approval. SA ¶ C.10.

### D.    Opt-Outs and Objections

To request exclusion (opt-out) from the Settlement, a member of the Settlement Class must mail the Settlement Administrator a written request, postmarked by the Objection and Opt-Out Deadline that: (i) includes the full name and address of the Settlement Class member seeking exclusion, (ii) includes the individual signature of the Settlement Class member seeking exclusion, and (iii) clearly states that the person desires to be excluded from the Settlement Class. SA ¶ E.1. A Settlement Class member who submits a Request for Exclusion cannot object to the Settlement and is not eligible to receive a Settlement Payment or any other relief under the Settlement. *Id.*

To object to the Settlement a Settlement Class Member must mail to the Settlement Administrator and file with the Clerk of Court a detailed written statement, postmarked by the Objection and Opt-Out Deadline, stating the objection(s) in detail and the specific aspect(s) of the Settlement being challenged; the specific reason(s), if any, for each such objection, including any evidence and legal authority that the Settlement Class member wishes to bring to the Court's attention; and whether the objection applies only to the objector, to a specific subset of the class, or to the entire class. SA ¶ E.2. Any objector who serves and files a valid and timely written objection as described above may appear at the Final Approval Hearing, either in person or through separate counsel hired at the objector's expense, to object to the Settlement. SA ¶ E.2.e. A member of the Settlement Class who objects can also withdraw their objection before the Final Approval Hearing by submitting a signed written request or email containing an electronic signature to the Settlement Administrator stating their desire to withdraw their objection. SA ¶ E.2.i.

### E.    Attorneys' Fees, Attorneys' Expenses and Plaintiff's Service Award

The Settlement allows Plaintiff to petition for attorneys' fees not to exceed one-third of the Settlement Amount, Litigation Expenses not to exceed $75,000, and a service award for Plaintiff Michelle Anderson not to exceed $6,500. SA ¶¶ C.7, C.8. Defendants' agreement not to oppose

Class Counsel's attorneys' fees and reasonable expenses identified herein, and Plaintiff's Service Award, were obtained only after the material terms for the relief to the Settlement Class were agreed upon. SA ¶ C.8. The Notice Plan will disclose to members of the Settlement Class that any attorneys' fees and expenses, service award to Plaintiff, and notice and administration costs will come from the Settlement Amount (upon approval by the Court). *See* SA Exhibit A, B, C.

No later than fourteen days before the Objection and Opt-Out Deadline, Class Counsel will file a Motion for Approval of Attorneys' Fees, Litigation Expenses, and Plaintiff's Service Award to be paid out of the Gross Settlement Fund. SA ¶ C.9. The Settlement Administrator will also promptly post the filed fee motion on the Settlement Website. *Id.* In other words, members of the Settlement Class will be able to sufficiently examine this motion before deciding whether to opt-out, or object.[7] Additionally, in connection with later moving for final approval of the Settlement, Class Counsel will also apply to the Court for the costs of the Settlement Administrator to be paid from the Settlement Amount. SA ¶ C.10.

---

[7] "[T]he Court does not need to determine attorney's fees at the preliminary approval stage, [as] Class Counsel … will fully address the reasonableness of their requested fee award in their forthcoming Motion for Attorneys' Fees, Costs, and Incentive Awards." *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD, 2020 WL 520616, at *7 (S.D. Cal. Jan. 31, 2020). In that motion, Plaintiff will present information why it believes the requested fee is proper, including all information needed for the Court to be able to determine the appropriateness of the fee request. *Accord Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (affirming fee award of one-third of settlement fund; finding that "courts have frequently awarded attorneys' fees ranging up to 36% in class actions"). When awarding fees at final approval, the Court may then consider, for example: "(1) the time and work required; (2) the preclusion of other employment by the attorney due to acceptance of this case; (3) the contingent nature of the fee; (4) the results obtained; and (5) the experience, reputation, and ability of the attorneys." *Id.* (quoting *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 628-29 (S.D. Iowa 2016)). At this stage of the case, however, Plaintiff only seeks to notify members of the Settlement Class that Plaintiff's counsel will seek a maximum of one-third of the total settlement amount as attorneys' fees, separate payment of their litigation expenses, and a service award for the Plaintiff.

## ARGUMENT

The Eighth Circuit has held that "strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (citing *Little Rock Sch. Dist. v. Pulaski Cnty. Spec. Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990)). *See also* William Rubenstein, 4 NEWBERG ON CLASS ACTIONS § 13:44 (5th ed.) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals."). "It is the surety of settlement that makes it a favored policy in dispute resolution as compared to unknown dangers and unforeseen hazards of litigation." *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *4 (E.D. Mo. June 30, 2005) (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. 03-cv-015, 2004 WL 3671053, at *11 (W.D. Mo. Apr. 20, 2004)).

In considering approval of a class action settlement, "the court makes a preliminary evaluation of the fairness of the settlement, prior to notice." *Lechner v. Mut. of Omaha Ins. Co.*, No. 8:18-cv-22, 2020 WL 5982022, at *3 (D. Neb. Oct. 8, 2020) (citing MANUAL OF COMPLEX LITIGATION (FOURTH) § 21.632 (2010)); *see also* Fed. R. Civ. P. 23(e)(1)(B)(i). "First, the court must make a *preliminary determination* of the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the proposed settlement and the date of the fairness hearing." *Id.* (emphasis added). "After an agreement is preliminarily approved, the second step of the process ensues: notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *Id. See also* Rubinstein, 4 NEWBERG ON CLASS ACTIONS § 13:10 (5th ed.) (describing the three prong process and noting "[p]reliminary approval is thus the first stage of the settlement process, and the

12

court's primary objective at that point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing").

"A settlement must provide adequate notice to class members so that each can make an informed choice about whether to object. Rule 23(e)(1) provides that, in the event of a class settlement, '[t]he court must direct notice in a reasonable manner to all class members who would be bound by' the proposed settlement." *Lechner*, 2020 WL 5982022, at *4 (quoting Fed. R. Civ. P. 23(e)(1)). "To satisfy due process, the notice must be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cen. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). However, "[b]efore assessing whether the Settlement is within the range of reasonableness for the purposes of preliminary approval, the Court must [also] conduct an independent class certification analysis," pursuant to the requisites of Rules 23(a)and (b)(3) of the Federal Rules of Civil Procedure. *Id.* at 2. *See also* Fed. R. Civ. P. 23(e)(1)(B)(ii).

As demonstrated below, the Settlement Class should be preliminarily certified, the Settlement should be preliminary approved, and the Notice plan should be approved, so that notice of the Settlement can be issued to the Settlement Class and a Final Fairness Hearing be scheduled at which the Court may consider the Settlement for final approval.

## I.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Fed. R. Civ. P. 23 sets forth the requirements for establishing and maintaining certification for a class-action lawsuit. "In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258-59 (8th Cir. 1994) (citing *Smith v. Merchants & Farmers Bank of W. Helena*, 574 F.2d 982, 983 (8th Cir. 1978)). Fed. R. Civ. P. 23(a) provides: "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the

class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." The United States Supreme Court has summarized these four basic requirements as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

"Plaintiffs must meet all requirements of Rule 23(a) and fall within one of the categories of Rule 23(b) to certify their … claims as a class action." *Blades v. Monsanto Co.*, 400 F.3d 562, 568-69 (8th Cir. 2005) (citing *Amchem Products, Inc.*, 521 U.S. at 614). Fed. R. Civ. P. 23(b) allows a class action if: (1) there is otherwise a risk of (a) inconsistent adjudications or (b) impairment of interests for non-class members; (2) the defendant's conduct applies generally to the whole class; or (3) questions of law or fact common to members of the class predominate, and the class action is a superior method for adjudication. *See* Fed. R. Civ. P. 23(b). Also, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems ... for the proposal is that there be no trial." *Amchem Products, Inc.*, 521 U.S. at 620.

Here, the Settlement Class warrants provisional certification as the Court "will likely be able to certify the class for purposes of judgment on the proposal." *See* Fed. R. Civ. P. 23(e)(1)(B)(ii).

## A.     The Settlement Class Is Numerous

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity "requires only the impracticality, not the impossibility, of joinder." *Cortez v. Nebraska Beef, Inc.*, 266 F.R.D. 275, 289 (D. Neb. 2010) (citing *United States Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 870 (8th Cir. 1978)). "[A]s few as

40 class members should raise a presumption that joinder is impractical." *Caroline C. by and through Carter v. Johnson*, 174 F.R.D. 452, 462 (D. Neb. 1996) (citations omitted). Here, the total number of Settlement Class Members is approximately 100,000. Numerosity is therefore easily satisfied. *See also Jones v. Novastar Fin., Inc.*, 257 F.R.D. 181, 186 (W.D. Mo. 2009) ("The proposed class numbers over one thousand persons. [Plaintiff] has satisfied Rule 23(a)(1).")

### B.    There are Common Questions of Law and Fact

Rule 23(a)(2) requires Plaintiff to establish that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). However, "[t]he rule does not require that every question of law or fact be common to every member of the class." *Cortez*, 266 F.R.D. at 289 (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982)). To establish commonality, there must be a "common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A single common question is enough. *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016) (noting that "a single common question 'will do' for purposes of Rule 23(a)(2)") (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 359)). "Rule 23 is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (internal quotation marks and citation omitted). Further, commonality may be shown "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Paxton*, 688 F.2d at 561 (citation omitted).

Here there are multiple common questions of law and fact central to this litigation that Plaintiff contends can be determined in one stroke using common evidence. These include key questions central to this litigation, such as:

15

- the divisibility of Defendants' Travel Plans;
- when the risk for post-departure benefits included in Defendants' Travel Plan attaches, and the related premium is earned;
- whether the Parties' relationship in connection with refunds for post-departure benefits was governed by a contract (potentially precluding unjust enrichment claims);
- whether Defendants were unjustly enriched by not providing premium refunds when covered trips were not taken; and
- whether Defendants' refusal to provide partial premium refunds in the circumstances of this litigation constitutes an unfair practice under Nebraska law.

Commonality is met for purposes of the Settlement Class.

### C.      Typicality is Met

Typicality "is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Paxton*, 688 F.2d at 561–62. "The Eighth Circuit, 'long ago defined typicality as requiring a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff.'" *Cortez*, 266 F.R.D. at 290 (quoting *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990)). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Id.* (citing *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006)); *see also Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). The burden to establish typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174.

Here, typicality is met. Plaintiff's claims arise from the same course of conduct and the same remedial theory, and Plaintiff suffered the same alleged injury as every other Settlement Class member. Plaintiff, like each member of the Settlement Class, did not receive a refund of the

premium paid for post-departure benefits when her trip did not commence despite Defendants never having accepted the risk of coverage. Typicality is easily met for the Settlement Class.

### D.     Plaintiff and Class Counsel are Adequate

The final prerequisite under Rule 23(a) for class certification is adequacy of representation. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562 (citing *Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973)).

Here, the proposed Settlement Class representative, Plaintiff Michelle Anderson, has been an active participant during the entirety of this litigation. Ms. Anderson's perseverance over the past three and one-half years allowed for the proposed Settlement, which may now provide a real and substantial recovery for all members of the Settlement Class.[8] Ms. Anderson's interests are squarely aligned with every other member of the Settlement Class (all seeking refunds for the portion of the premium paid for post-departure benefits), and she has no known conflict with any Settlement Class members. Further, Ms. Anderson's lead counsel, Berger Montague PC, is well-qualified and experienced in class actions, and has devoted significant resources in prosecuting the claims of the Settlement Class in this litigation.[9]

---

[8] The original suit in New York began on December 5, 2017 and was re-filed in Nebraska federal court on July 30, 2018.

[9] A copy of Berger Montague's firm biography with selected individual attorney biographies is attached as Exhibit 3 hereto. *See also* https://bergermontague.com/. In addition to Berger Montague, Plaintiff is also represented by the Evans Law Firm (https://www.evanslaw.com/bios/ingrid-evans/) and local counsel Burke Smith Law (https://bankruptcy-lawyer-omaha.com/about-our-firm/).

Here, the adequacy requirement is met and Plaintiff respectfully requests that she be appointed to serve as the Class Representative of the Settlement Class and that John Albanese, Shanon J. Carson, Peter R. Kahana, Lane L. Vines and Y. Michael Twersky of Berger Montague PC serve as Lead Class Counsel, pursuant to Fed. R. Civ. P. 23(g).

### E.      Common Issues Predominate and a Class Action is Superior

"To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: 'Common questions must predominate over any questions affecting only individual members'; and 'class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 615. The Supreme Court has stated the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc.*, 521 U.S. at 623 (citing 7A Wright, Miller & Kane, FED. PRACTICE & PROC. § 1777, at 518-19 (2d ed. 1986)).

Predominance measures "the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Id.* (internal quotation omitted). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id. See also Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020) (same). "At the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the

defendant's liability to all plaintiffs may be established with common evidence.... If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) (citation omitted). Further, "[p]redominance is 'a test readily met' in cases involving alleged consumer or securities fraud." *Campbell v. Transgenomic, Inc.*, No. 4:17-cv-3021, 2019 WL 3003920, at *1 (D. Neb. July 10, 2019) (quoting *Amchem Products, Inc.*, 521 U.S. at 625)).

Here, in the context of the Settlement Class, common issues far outweigh any individualized ones. The central questions in this litigation, for example, are when the risk attaches for post-departure benefits, and whether Defendants' Travel Plans are divisible. Plaintiff would not use individual evidence to answer these questions. Likewise, damages issues predominate inasmuch as they do not depend on individualized factors, but rather are determinable by means of a mechanical formula to actuarily compute for each Settlement Class Member the percentage of their total premium attributable exclusively to post-departure coverage. Further, because the Court is certifying a class in the settlement context, there are no trial management issues that the Court needs to consider because the Settlement obviates the need for any trial. Put simply, because the Parties seek to resolve these cases through a settlement, any manageability issues that could have arisen at trial are marginalized. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 302–03 (3d Cir. 2011). Predominance is easily met at this stage for the Settlement Class.

For the second prong of the Rule 23(b)(3) inquiry, the class action must be "superior to other available methods for the fair and efficient adjudication of the controversy." *See* Fed. R. Civ. P. 23(b)(3). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy.... Having to engage in separate threshold inquiries for each class member prior to reaching the common issues does not promote such

economy.... [It] will create judicial *dis* economy." *Est. of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 161 (S.D. Iowa 2001) (internal quotation marks and citation omitted). As shown above, the predominance test is satisfied.

Moreover, the Settlement Agreement ensures judicially economic resolution of this litigation by providing members of the Settlement Class with prompt, predictable, and certain relief. The Settlement also contains well-defined administrative procedures to ensure due process, including the right of any Settlement Class members who are dissatisfied with the Settlements to object to the Settlement or exclude themselves from it. The Settlement would relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues.

"Class actions are also superior if the alleged damages are small, and absent a class action most plaintiffs would not realistically enjoy a day in court." *Khoday v. Symantec Corp.*, No. 11-cv-180 JRT/TNL, 2014 WL 1281600, at *35 (D. Minn. Mar. 13, 2014); *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 377 (8th Cir. 2018) ("The district court properly noted that the class members' claims are generally small and unlikely to be pursued individually."). Here, there is little question that absent this litigation and Settlement most members of Settlement Class would not realistically enjoy a day in court. Therefore, "class status here is not only the superior means, but probably the only feasible [way] ... to establish liability and perhaps damages." *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 229 (2d Cir. 2006) (quoting *Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir. 2004)).

## II.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

In accord with Fed. R. Civ. P. 23, in determining whether notice should be sent to the Class regarding the Settlement, the Court should consider if:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment;[10] and
    (iv) any agreement required to be identified under Rule 23(e)(3);[11] and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D). These factors are meant to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23 adv. comm. notes (2018). In 2018, Rule 23(e) was amended to codify that at the preliminary approval phase, the Court must decide that it "will likely be able to" find that the settlement satisfies the criteria set out in Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(1).

As shown below, an examination of the core concerns of procedure and substance demonstrate that at this stage, the Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class, and should be preliminarily approved. There are no signs of collusion, excessive attorney fees, or any other red flags.

    **A.    The Settlement is Procedurally Fair, as the Class Representatives and Class Counsel Have Adequately Represented the Class, and the Proposed Settlement Was Negotiated at Arm's Length**

Rule 23(e)(2)(A) and (B) raise "'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) adv. comm. notes (2018). The "focus at this point is on the actual performance of counsel" for the class, and courts may consider factors such as "the nature and amount of discovery", the "conduct of the negotiations", the "involvement of a neutral … mediator". *Id.* A key goal is to determine whether counsel "had an adequate information base." *Id.*

---

[10] *See, supra*, discussion of the Settlement Agreement (section E).
[11] Other than the Settlement Agreement, there are no other such agreements here.

"[A] settlement agreement is presumptively valid." *Campbell v. Transgenomic, Inc.*, No. 4:17-cv-3021, 2020 WL 2946989, at *2 (D. Neb. June 3, 2020) (citing *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). "The experience and opinion of counsel on both sides may be considered, as well as whether a settlement resulted from arm's length negotiations, and whether a skilled mediator was involved." *Lechner*, 2020 WL 5982022, at *4 (granting preliminary approval) (citing *DeBoer*, 64 F.3d at 1178). Courts have held terms of a settlement are appropriate where the parties have engaged in extensive negotiations at an appropriate stage in the litigation when they can evaluate the strengths and weaknesses of the case and the propriety of settlement. *See, e.g., In re Emp. Ben. Plans Sec. Litig.*, No. CIV. 3-92-708, 1993 WL 330595, at *5–6 (D. Minn. June 2, 1993). "Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Ramsey v. Sprint Commc'ns Co., L.P.*, No. 4:11-cv-3211, 2012 WL 6018154, at *1 (D. Neb. Dec. 3, 2012).

Here, the Settlement has all the hallmarks of procedural fairness, and no signs of fraud or collusion. The Parties have been actively litigating the case for the past three and a half years. The Settlement was reached only after two separate rounds of motions to dismiss briefing in which Plaintiff prevailed following extensive arguments on both the viability of the merits of Plaintiff's claims and Article III jurisdictional challenges (relating to the scope of the putative class). Moreover, substantial discovery has taken place, including the production and review of tens of thousands of pages of documents, the deposition of Travelex's Senior VP, and the preparation of an expert damages analysis. In addition, the Parties' negotiations leading to the Settlement were prolonged and at arm's-length culminating in two full days of mediation conducted by a well-

respected and experienced neutral, Rodney Max. In short, the Parties were well informed regarding the material facts and in a position to properly assess the merits of Plaintiff's claims and Defendants' defenses. *See In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1158 (D. Minn. 2009) ("Where sufficient discovery has been provided and the parties have bargained at arm's length, there is a presumption in favor of the settlement."); *Desert Orchid Partners, LLC v. Transaction Sys. Architects, Inc.*, Nos. 8:02-cv-553, 8:02-cv-561, 2007 WL 703515, at *2 (D. Neb. Mar. 2, 2007) (finding the assistance of "qualified mediators" supports approval of a settlement).

Moreover, Plaintiff and the proposed Settlement Class are represented by competent and experienced counsel with experience in insurance and class action matters. *See Christina A. v. Bloomberg*, No. 00-cv-4036, 2000 WL 33980011, at *4 (D.S.D. Dec. 13, 2000) ("The Court attributes significant weight to Plaintiffs' attorney's assertion that the Settlement Agreement is fair, reasonable and provides significant benefits to the Plaintiff class.") Indeed, Plaintiff's counsel have decades of combined experienced in class actions and insurance matters. Lawyers from Berger Montague have been approved as Class Counsel in this District and this Circuit numerous times. *See, e.g., Lechner v. Mut. of Omaha Ins. Co.*, No. 8:18-cv-22, 2021 WL 424421 (D. Neb. Feb. 8, 2021); *Klug v. Watts Regul. Co.*, No. 8:15-cv-61, 2017 WL 1373857 (D. Neb. Apr. 13, 2017); *Sharp v. Watts Regul. Co.*, No. 8:16-cv-200, 2017 WL 1373860 (D. Neb. Apr. 13, 2017); *Cortez v. Nebraska Beef, Inc.*, No. 8:08-cv-90, 2012 WL 12931431 (D. Neb. Feb. 9, 2012).

In addition, Plaintiff Michelle Anderson has been an exemplary putative Class Representative, meeting and conferring with Class Counsel consistently throughout the course of this litigation, providing documents and information, coordinating with Class Counsel during the mediation, and reviewing and approving the Settlement Agreement.

In short, the circumstances in which this Settlement was reached weighs strongly in favor of preliminary approval. *See In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) (holding that "settlement agreements are presumptively valid, particularly where a settlement has been negotiated at arm's length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters") (internal quotations omitted); *Risch v. Natoli Eng'g Co., LLC*, No. 4:11CV1621 AGF, 2012 WL 4357953, at *3 (E.D. Mo. Sept. 24, 2012) (approving settlement when the parties engaged in "extensive fact discovery, exchanging and reviewing significant numbers of documents…[including] all documents necessary to evaluate the class claims and damages."); *King v. Raineri Const., LLC*, No. 4:14-CV-1828 CEJ, 2015 WL 631253, at *3 (E.D. Mo. Feb. 12, 2015) (approving settlement when the "parties engaged in settlement negotiations and exchanged a 'large amount of information and documents' for a month before submitting the proposed settlement").

As such, the Court will "likely be able to" find that the Settlement is procedurally fair.

### B.     Substantive Fairness is Met, as the Settlement Provides Adequate Relief and Treats Settlement Class Members Equitably Relative to Each Other

Rule 23(e)(2)(C) and (D) consider the substantive fairness of the Settlement, and focus on whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

"The most important consideration in deciding whether a settlement is fair, reasonable, and adequate 'is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005) (citation omitted). In considering the Settlement's fairness, a court must consider the challenges that Plaintiff would face in prevailing on the claims asserted. *See, e.g.*, *Ramsey*, 2012

24

WL 6018154, at *3. In doing so, the court "does not try the case," but instead identifies the disputed factual and legal issues that make it less likely for the plaintiff class to receive a full recovery. *Id.* (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)); *see also Cullan and Cullan LLC v. M-Qube, Inc.*, No. 8:13-cv-172, 2016 WL 5394684, *7 (D. Neb. Sept. 27, 2016) (approving settlement because it provided "a real and substantial remedy without the risk and delay inherent in prosecuting this matter through trial and appeal"). "As courts routinely recognize, a settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate." *Keil v. Lopez*, 862 F.3d 685, 696 (8th Cir. 2017) (internal citation omitted).

Here, the payments to Settlement Class Members will be approximately 25-35% of the premium paid for the post-departure benefit component of their Travel Plan and hence, the recoverable damages if they were successful at trial. This is a substantial recovery, especially where Settlement Class Members who are reached will be receiving these payments automatically without the need for any claims form or claim process and can elect to receive payment through electronic means. As long as a Settlement Class Member can be found, they will receive a payment.

The automatic payment process also mitigates against any concern regarding the timing of payment of attorney's fees. While attorneys' fees are being paid fifteen days after the Effective Date and checks are not required to be sent to Class members until 30 days after the Effective Date (SA ¶¶ C.3, C.11), that delay is strictly due to the time that it takes to print checks for the tens of thousands Settlement Class Members. This is not a case with a multi-year claims process where attorneys receive their full payment after approval, but class members have to wait years to be paid. Here, Settlement Class Members and the approved attorneys' fees will be paid within no later than a few weeks of each other.

Moreover, all Settlement Class Members are being treated equitably. Under the payment allocation plan, Settlement Class Members who are not receiving the $5.00 minimum are receiving a pro rata portion of the Net Settlement Fund based on the amount of premium paid by the Settlement Class Member, *i.e.*, Settlement Class Members who paid a bigger premium will receive a larger payment.[12] In order to ensure that no Settlement Class Members receives a *de minimis* amount, the Settlement also provides that Settlement Class Members who would otherwise receive less than $5.00 get a slightly increased payment to ensure that no one receives less than $5.00

This recovery is reasonable especially when compared to the alternative of further litigation. To obtain recovery through a fully litigated judgment, Plaintiff would have to win class certification, summary judgment, trial, post-trial motions, and potentially appeal. Any loss at any one of those steps would result in no recovery and any litigated judgment would take potentially years before it became final. The court system is still incurring delays and logistical hurdles as a result of the COVID-19 pandemic, and thus any litigated resolution will probably incur even more delays than in other times when there is not an ongoing public health emergency.

Moreover, in addition to the general risks and delays attendant with complex litigation, Defendants have raised numerous significant defenses that they intended to litigate potentially though appeal, including raising over 20 affirmatives defenses in their answers to Plaintiff's complaint. Dkt. Nos. 42 and 43. For example, as described above, Defendants contest whether the Travel Plans were divisible insurance policies wherein premiums for pre-departure benefits and

---

[12] The Settlement Payments will be calculated by adding up the total premium paid by all Settlement Class Members eligible for payment, calculating the pro rata share of the total premium of each Settlement Class Member, and multiplying the pro rata share by the Net Settlement Fund. Those Settlement Class Members whose payment would be less than $5.00 will then have their payments adjusted to $5.00 and the payments to the Settlement Class Members receiving higher than the $5.00 minimum payment will be adjusted accordingly pro rata.

post-departure benefits could be segregated. Relatedly, Defendants contest when the premium connected with post-departure benefits is earned. Defendants also contest whether their practice to not provide partial premium refunds constituted unjust enrichment or violated the Nebraska Consumer Protection Act.

While Plaintiff believes that Defendants' defenses could have been overcome, the defenses were substantial with no definite answers provided by case law, as this is not cookie cutter litigation. The risks at every turn of further litigation when weighed against the recovery warrants settlement approval here. *Yarrington v. Solvay Pharms., Inc.*, No. 09-CV-2261 (RHK/RLE), 2010 WL 11453553, at *9 (D. Minn. Mar. 16, 2010) (finding class counsel had "exhaustively assessed the probability of ultimate success on the merits against the risks of establishing liability and damages and maintaining a class action through trial and appeal" where parties had extensive motion practice, prepared expert reports, exchanged discovery and took depositions, and engaged in mediation); *see also Keil*, 862 F.3d at 695 (holding that this factor "weighs in favor of approving the settlement because the outcome of the litigation would be far from certain if the case had not settled, whereas the settlement provides substantial benefits to the class") (internal quotations omitted).

The proposed Settlement warrants preliminary approval, as the Court may easily find "that it will likely be able to finally approve the Settlement under Rule 23(e)(2) as being fair, reasonable, and adequate to the Class, subject to further consideration at the Settlement Fairness Hearing." *Accord In re CenturyLink Sales Pracs. & Sec. Litig.*, No. MDL172795MJDKMM, 2021 WL 1040520, at *1 (D. Minn. Mar. 18, 2021) (citing Fed. R. Civ. P. 23(e)(1)(B)(i)).

**III.     THE COURT SHOULD APPROVE THE NOTICE PLAN**

The Eighth Circuit has found that, pursuant to Fed. R. Civ. P. 23(e), "the district court directs the form of the notice of settlement, and the notice need only satisfy the 'broad 'reasonableness' standards imposed by due process.'" *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999). Moreover, the United States Supreme Court has concluded that a notice of class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. "The contents must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Campbell*, 2019 WL 3003920, at *2.

Here, the proposed Notices and manner of distribution negotiated and agreed upon by the parties is "the best notice practicable," as required under Fed. R. Civ. P. 23(c)(2)(B). The Notice Plan, includes multiple forms of Settlement Notice, including direct notice by a mailed postcard and by email. The proposed Notices themselves are clear, straightforward, and provide in plain English information on the meaning and nature of the terms and provisions of the Settlement Agreement, the benefits that the Settlement will provide to members of the Settlement Class, and information regarding how to object or opt-out of the Settlement. *See Reynolds v. Credit Bureau Servs., Inc.*, No. 8:15CV168, 2016 WL 389977, at *5 (D. Neb. Feb. 1, 2016) (notice is adequate if "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'") (citation omitted). *See also* Exhibit 2, Declaration of Steven Weisbrot, at ¶¶ 22-23.

Finally, as part of the preliminary approval of the Settlement, Plaintiff requests that the Court schedule certain deadlines and a Final Approval Hearing to consider whether the Settlement

Agreement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.634. Prior to that time, Plaintiff will file a motion asking the Court to: (i) finally approve the Settlement; (ii) certify the Settlement Class for settlement purposes; (iii) find that the Notice Plan fully complied with Rule 23 and due process mandates; (iv) authorize the Parties to implement the terms of the Settlement Agreement; and (v) enter a Final Approval Order dismissing the case with prejudice. *See also* SA ¶ G.1. The proposed schedule for implementing the proposed Settlement is set forth in the Parties' agreed-upon Preliminary Approval Order (SA Ex. D), which Plaintiff respectfully requests that the Court enter so that notice of the Settlement can be provided to the Settlement Class.

## CONCLUSION

For all of the aforementioned reasons, Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement should be granted.

Dated:  June 11, 2021                    Respectfully submitted,

                                    */s/ John G. Albanese*
                                    John G. Albanese
                                    BERGER MONTAGUE PC
                                    1229 Tyler Street, Suite 205
                                    Minneapolis, MN 55413
                                    Tel.: (612) 594-5997
                                    Fax: (612) 584-4470
                                    jalbanese@bm.net

                                    BURKE SMITH LAW
                                    Burke Smith, NE Bar No. 19883
                                    10730 Pacific St #100
                                    Omaha, NE 68114
                                    Tel.: (402) 718-8865
                                    Fax: (402) 218-4391
                                    burke@burkesmithlaw.com

                                    BERGER MONTAGUE PC
                                    Shanon J. Carson

Peter R. Kahana
Lane L. Vines
Y. Michael Twersky
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
scarson@bm.net
pkahana@bm.net
lvines@bm.net
mitwersky@bm.net

EVANS LAW FIRM, INC
Ingrid M. Evans
3053 Fillmore Street, #236
San Francisco, CA 94123
Tel.: (415) 441-8669
ingrid@evanslaw.com

*Counsel for Plaintiff and the Proposed Settlement Class*

## CERTIFICATE OF WORD COUNT COMPLIANCE

The undersigned certifies in accordance with Local Rule 7.1(d)(3), that the foregoing Memorandum contains 10,102 words, as counted by Microsoft Word 365's Word Count function, including all headings, footnotes, and quotations, as well as the caption.

Date: June 11, 2021                    /s/John G. Albanese
                                       John G. Albanese

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 11, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF:

Burke Smith
BURKE SMITH LAW
10730 Pacific Street, Suite 100
Omaha, NE 68114
burke@burkesmithlaw.com

Shanon J. Carson
Peter R. Kahana
Lane L. Vines
Y. Michael Twersky
BERGER MONTAGUE PC
1818 Market Street
Philadelphia, PA 19103
scarson@bm.net
pkahana@bm.net
lvines@bm.net
mitwersky@bm.net

Ingrid M. Evans
EVANS LAW FIRM, INC.
3053 Fillmore Street, Suite 236
San Francisco, CA 94123
ingrid@evanslaw.com

Markham R. Leventhal
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
mleventhal@carltonfields.com

Julianna Thomas McCabe
Michael N. Wolgin
CARLTON FIELDS, P.A.
2 MiamiCentral, Suite 1200
700 N.W. 1st Avenue
Miami, FL 33136
jtmccabe@carltonfields.com
mwolgin@carltonfields.com

   */s/ John G. Albanese*
John G. Albanese