## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHELLE ANDERSON, an individual, On Behalf of Herself and All Others Similarly Situated, | Case No. 8:18-cv-00362-JMG-SMB |
| Plaintiff, | **DECLARATION OF PETER R. KAHANA IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PAYMENT OF SERVICE AWARD** |
| v. | |
| TRAVELEX INSURANCE SERVICES INC. and TRANSAMERICA CASUALTY INSURANCE COMPANY, | |
| Defendants. | |

I, Peter R. Kahana, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I am a member in good standing of the bar of the Commonwealth of Pennsylvania, and I am admitted to this Court *pro hac vice*.

2.      I respectfully submit this Declaration in support of Plaintiff's Motion for Final Approval of Class Action Settlement and Motion for Approval of Attorneys' Fees, Expenses and Service Award for Plaintiff. The following is based on my personal knowledge, and if called upon to do so, I would competently testify thereto.

3.      I am a Shareholder of Berger Montague PC ("Berger Montague"). Berger Montague, along with our co-counsel in this matter, Evans Law Firm, and our Nebraska local

1

counsel, Burke Smith[1] (together, "Class Counsel"[2]), are counsel for Plaintiff and the Settlement

Class in this Action.

4.     Berger Montague represents plaintiffs in class action litigation in federal and state

courts and is one of the preeminent class action law firms in the United States. I have attached as

Exhibit 1 hereto a copy of Berger Montague's firm resume, along with biographies of certain

attorneys involved in this Action. Berger Montague currently consists of approximately 60

attorneys who represent plaintiffs in class action and other complex litigation around the country.

Our firm's Consumer Protection Department has extensive experience representing aggrieved

persons and entities in class action litigations. Berger Montague has played lead roles in major

class action cases for over 50 years, resulting in collective recoveries totaling many billions of

dollars for our firm's clients and the classes they have represented.

5.     I have an extensive background in class action litigation and have served as lead or

co-lead counsel in multiple class actions in federal courts across the country, including consumer

and insurance actions.  My experience enabled my firm (and the other affiliated Class Counsel) to

efficiently and successfully prosecute the claims alleged on behalf of the Settlement Class.

6.     Attached as Exhibit 2 is a true and correct copy of a Declaration executed by Ingrid

Evans of the Evans Law Firm, dated August 30, 2021 ("Evans Declaration"), which includes a

copy of that firm's resume, along with information about that firm's lodestar and the expenses on

behalf of the Settlement Class.

---

[1] *See* https://bankruptcy-lawyer-omaha.com/our-nebraska-bankruptcy-attorneys/.
[2] Capitalized terms not otherwise defined have the meaning set forth in the Parties' Class Action
Settlement Agreement dated June 11, 2021 (the "Settlement Agreement" or "Settlement") filed
previously with the Court. *See* Dkt. 108-2.

7.     Practice in the area of class action and other complex litigation requires specialized legal skills, knowledge, and experience, which I and other lawyers and professionals at Berger Montague have accumulated over decades of practice and experience. Among many other things, I, along with other Berger Montague attorneys, served as one of the class counsel law firms acting on behalf of class plaintiffs in *In Re the Exxon Valdez*, Case No. A89-0095-CV (D. Alaska) involving one of the largest oil spills in U.S. history, and I was a member of the trial team. In connection with that work (securing a $287 million compensatory damage award and a $507.5 million punitive damage award), I was selected in 1995 to share (with other members of the trial team) the Trial Lawyer of the Year Award given by the Public Justice Foundation. My other experience in the capacity as lead or co-lead counsel in prior class actions, including insurance related class actions, is detailed Exhibit 1.[3]

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.  This Case Concerns Defendants' Failure to Refund Alleged Unearned Insurance Premiums on Travel Insurance Plans Purchased by Consumers

8.     Plaintiff Michelle Anderson initiated this litigation some three and a half years ago seeking damages arising from Travel Plans underwritten by Defendant Transamerica Casualty Insurance Company ("Transamerica") and marketed by Defendant Travelex Insurance Services Inc. ("Travelex") (together, "Defendants"). These plans contained both pre-departure insurance benefits (such as payment for losses due to trip cancellation), and post-departure insurance benefits (such as payment for losses due to trip interruption and baggage delay). Dkt. 1, Compl. ¶¶ 18, 33. By the Travel Plans' express terms, coverage for pre-departure losses takes effect when the plan is purchased; whereas coverage for post-departure losses only becomes effective when the insured trip actually begins. *Id.* ¶ 30. Defendants ceased selling the plans at issue in this case in 2017.

---

[3] *See also* https://bergermontague.com/attorneys/peter-r-kahana/.

3

9.     Plaintiff purchased her Travel Plan from Defendants through the online travel agency, Just Air Ticket. *Id.* ¶¶ 32-33. Plaintiff did not take her covered trip and filed a claim for travel cancellation benefits, which was denied by Defendants for being outside the scope of such coverage. Moreover, upon her subsequent demand, Defendants refused to provide her a partial premium refund related to the post-departure benefits. *Id.* ¶¶ 37-39.

**B. Procedural History**

10.     Prior to filing this Action, Plaintiff and Class Counsel conducted an extensive factual and legal investigation concerning, among other things, Defendants' sales of Travel Plans and the prospective claims to be asserted by Ms. Anderson and a proposed class of consumers who were similarly situated.

11.     Plaintiff initially filed this litigation in the Western District of New York on December 5, 2017 (*see* W.D.N.Y. Case No. 1:17-cv-001274), because the address to send claims under Defendants' travel insurance plan was the "Travelex Claims Department" located in Niagara Falls, New York. Dkt. 33 at 7.[4] Defendants filed a motion to dismiss challenging personal jurisdiction in New York and requesting, in the alternative, that the case be transferred to Arizona. *Id.* at 7-8.

12.     After conducting additional factual and legal research, Plaintiff and her counsel voluntarily dismissed the action in New York and refiled in this Court on July 30, 2018, based on Defendants ties to Nebraska. *Id.* at 8.[5]

---

[4] Unless otherwise noted, all "Dkt." References are to the docket filings in *Anderson v. Travelex Ins. Serv. Inc.*, Case No. 8:18-cv-00362-JMG-SMB (D. Neb.).

[5] Plaintiff's local counsel in the New York litigation was Andreozzi Bluestein LLP. Attached as <u>Exhibit 3</u> is a true and correct copy of a Declaration executed by Randall Andreozzi of the Andreozzi Bluestein LLP, dated August 31, 2021 ("Andreozzi Declaration"), which includes a copy of that firm's resume, along with data for that firm's lodestar and the expenses that were incurred in the prosecution of the New York litigation. Plaintiff determined to voluntarily dismiss

13.     In the operative Complaint, Plaintiff alleges that Defendants' policy of failing to provide partial premium refunds was an unfair practice under the Nebraska Consumer Protection Act and constituted unjust enrichment as they were obligated to return unearned premiums in accord with long established insurance principles. Compl. ¶¶ 55-69. Defendants moved to dismiss the Complaint under FED. R. CIV. P. 12(b)(6), arguing that Plaintiff's unjust enrichment claim should fail because the Parties' relationship was governed by a contract. Dkt. 27. Defendants likewise moved to dismiss Plaintiff's claim under the Nebraska Consumer Protection Act, arguing that she lacked statutory standing as a non-Nebraska resident to bring such a claim and had not adequately alleged an unfair practice covered by the statute. *Id.* The Court denied Defendants' motion, finding that Plaintiff had plausibly alleged claims for unjust enrichment and violation of the Nebraska Consumer Protection Act. *See Anderson v. Travelex Ins. Servs., Inc.*, No. 8:18-cv-362, 2019 WL 1932763 (D. Neb. May 1, 2019). While Plaintiff prevailed on Defendants' motion, the Court noted that determining when the risk for post-departure coverage attached could "only be sorted out after the defendants have answered the complaint and the parties have had a reasonable opportunity for discovery." *Id.* at 3.

**C.  The Parties Conducted Significant Discovery**

14.     Following the Court's denial of Defendants' motion to dismiss on May 1, 2019, the Parties commenced discovery, including serving interrogatories, and propounding comprehensive requests for the production of relevant documents. Plaintiff also retained an

---

the New York litigation and refile in Nebraska federal court, in lieu of seeking a venue transfer under either 28 U.S.C. § 1404 or § 1406, to avoid potentially wasteful motion practice and delay. Moreover, the motion to dismiss filed by Defendants in the New York litigation provided new factual support regarding Defendants' jurisdictional ties that justified bringing suit in the District of Nebraska.

actuarial consultant, Charles DeWeese, FSA, MAAA,[6] to review Defendants' documents, assist in proffering expert opinions as warranted to support Plaintiff's theories of liability, and help develop a class-wide damages model.

15.     After Defendants initially responded, and objected, to Plaintiff's written discovery requests, Plaintiff and Defendants engaged in extensive meet and confer discussions to resolve related discovery disputes, to (if possible) avoid unnecessary motion practice. As discussed, later, Plaintiff and Defendants were not able to resolve all discovery issues without Court intervention. *See* Dkts. 59-62.

16.     Plaintiff received and reviewed thousands of pages that were produced by each of the Defendants. Collectively, during this litigation (including in connection with mediation), Defendants produced approximately 20,000 pages of documents. Among other things, the documents produced included Defendants' various Travel Plans and records of rate filings, and other materials. Defendants also provided Plaintiff with additional relevant information in connection with mediation. *See* paragraph 18, *infra*.

17.     During discovery, Defendants objected to providing information regarding any of their travel protection plans other than plans sold through Just Air Ticket. Defendants moved to dismiss for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) for claims of putative class members who bought plans other than through Just Air Ticket, arguing that Plaintiff lacked

---

[6] As is summarized in a confidential report prepared for mediation and shared with Defendants, Mr. DeWeese is a fellow in the Society of Actuaries and a Member of the American Academy of Actuaries. He is the President of DeWeese Consulting, Inc., an actuarial consulting firm he founded in 1990. Prior to that, he was employed as an actuary by Connecticut General Life Insurance Company (now part of CIGNA) and by Tillinghast, a Towers Perrin Company (now part of Willis Towers Watson). His consulting practice focuses on the review of rate filing for a state regulatory agency, pricing and valuation of liabilities for a dental and vision insurance entity, and litigation support services, including expert testimony on a range of actuarial subjects.

"Article III standing to pursue class claims with respect to products she did not purchase." Dkt. 66 at 3. In connection with this second motion to dismiss in the Nebraska litigation, Defendants submitted a declaration from Travelex Senior Vice President of Risk and Compliance Sally Dunlap. Plaintiff deposed Ms. Dunlap in connection with responding to Defendants' motion. Dkt. 67, 76-1. The Court denied Defendants' motion finding that "there is an absence of evidence suggesting that the plaintiff's claim and alleged injury is so different from the possible claims and injuries of putative class members, such that the exception to the general standing requirement for class actions should not apply." *Anderson v. Travelex Ins. Servs., Inc.*, No. 8:18-cv-362, 2020 WL 1323489, at *4 (D. Neb. Mar. 20, 2020). Defendants then moved to certify for interlocutory appeal the denial of their motion, which the Court also denied following full briefing by the Parties. *Anderson v. Travelex Ins. Servs., Inc.*, No. 8:18-cv-362, 2020 WL 2909980 (D. Neb. June 3, 2020).

18.     Thereafter, the Parties agreed to mediate this case. Prior to mediation, the Parties negotiated with Defendants to produce further discovery in the form of additional documents and supplemental interrogatory responses relating to the Travel Plans, including, (*e.g.*), rate filings and documents setting forth the premiums collected. Plaintiff also requested her previously retained consultant to prepare an expert report in support of Plaintiff's mediation position.

19.     Mr. DeWeese's work of necessity included:  a) an analysis of the standard insurance principles and prevailing insurance practice that refunds should be provided to customers for the unused portion of insurance coverage, such as where consumers bought travel insurance with a variety of post-departure benefits and trip was cancelled; and b) a determination of the portion of premium that relates to post-departure benefits based on Defendants' own rate manual, which builds up the premium based on the cost of each specific benefit, whether pre-departure or post-departure.

20.     Among other things, Mr. DeWeese estimated approximately between 26.35% and 29.27% of the total aggregate premium charged for Defendants' Travel Plans could be attributed to post-departure benefits.

21.     While Plaintiff's theory of post-departure liability is predicated on well-established insurance principles that premium can be recovered by an insured (and needs to be refunded by an insurer) for any risk of loss never assumed, there was no existing legal precedent for her attempt to apply these principles in the specific setting of trip cancellation insurance and the travel insurance industry's sale of packages of bundled trip-related benefits. Subsequent to Plaintiff's commencement of this litigation, litigation has been filed in other courts (in the context of trip cancellations due to COVID-19) which also addresses the legal question of whether insurers who are paid travel insurance premiums must refund the portion allocable to post-departure benefits in the circumstance where insured travel is cancelled. Defense motions to dismiss and for judgment on the pleadings have been denied in two of those cases. *See, e.g., Haas v. Travelex and Berkshire Hathaway Specialty Ins. Co.,* 2021 WL 3682309 at *5 (C.D. Cal. Aug. 19, 2021) (discussing this Court's decision at 2019 WL 1932763, and stating that "[t]he district court in *Anderson* reached the same conclusion on a very similar set of facts"); and, *Gordon v. Arch Ins. Co.,* No. 21-cv-1911, 2021 WL 2186392, at *3 (E.D. Pa. May 28, 2021) (sustaining unjust enrichment claim: "Plaintiffs argue that unjust enrichment is properly pleaded as an alternative theory of liability, but additionally argue that where a premium was not earned by exposure to any risk, there is a lack of consideration calling the validity of the contract into question, creating a pathway to equitable relief. In support of this theory, Plaintiff contends that the duty of insurers to return unearned premiums is 'contractual or quasi-contractual in nature' and cites several insurance treatises to that effect.").

22.     In addition, Plaintiff had to address, and succeed upon, Defendants' second motion to dismiss pursuant to FED. R. CIV. P. 12 (b)(l), challenging Plaintiff's standing with respect to travel insurance plans that were not the specific kind of plan that was purchased by the Plaintiff (which in effect was intended by Defendants to limit the prospective class of potential similarly situated individuals to only those who had purchased a Just Air Ticket plan). Dkt. 65.

23.     While Defendants have agreed to resolve the litigation through the Settlement, they disagree with Plaintiff's position on the merits of the claims asserted in this case and have advanced many defenses. Among other things, Defendants:  contest that the insurance provided through their Travel Plans are legally divisible (arguing that it is not); argue that all risk (including for post-departure benefits) attached at the time of purchase of the Travel Plans; argue that Plaintiff's unjust enrichment claims are barred because a contract exists between the Parties (purportedly covering the subject matter of this action); and, otherwise deny that their refund practices violated any laws, or were unjust.

24.     In summary, through all the formal, and informal fact discovery, expert analysis and motion practice conducted, the Parties gained significant knowledge of the strengths and weaknesses of the claims and defenses both as to class certification and as to the merits of the claims.

**D.  The Mediation Process Resulted in This Settlement**

25.     On November 11, 2020, the Parties attended via Zoom an all-day mediation session with Rodney Max. Dkt. 96 at ¶ 5. Prior to the mediation, the Parties exchanged detailed mediation statements and Plaintiff provided Defendants with a copy of the report prepared by Mr. DeWeese for the purposes of mediation. The Parties did not resolve the matter at the first mediation, but discussions were productive. Dkt. 96 at ¶ 6. The Parties continued to exchange settlement

correspondence and reconvened for a second mediation with Rodney Max on March 4, 2021. Dkt. 99 at ¶ 4. Only after a second full day of hotly contested mediation did the Parties reach an agreement in principle to resolve this matter. Over the course of the next three months, the Parties negotiated the details of the Settlement Agreement, and on June 11, 2021, Plaintiff filed her Unopposed Motion for Preliminary Approval of Class action Settlement. Dkt. 108.

### THE SETTLEMENT AGREEMENT

### A. The Settlement Class

26.     The Settlement Class in the Settlement is defined as:

> All persons in the United States who have been identified by Defendants as insured under a Travel Plan purchased within the Class Period, and for whom a claim for trip cancellation benefits was initiated under the Travel Plan…. Excluded from the Settlement Class are: (i) all persons who previously received a refund of premium from the Defendants for any Travel Plan(s) at issue in the Litigation; (ii) all persons who previously entered into a written agreement with the Defendants releasing all claims related to a Travel Plan(s) at issue in the Litigation; (iii) all insureds for whom no premium was charged under a Travel Plan; and (iv) all persons who during the Class Period were officers, directors, or employees of either of the Defendants.

SA ¶ A.36. The Class Period is defined as January 1, 2014 to December 31, 2017 (SA ¶ A.4), as Defendants ceased selling the plans at issue in 2017. *See also* Dkt. 109 at 3 (¶ 3), Memorandum and Order Certifying Settlement Class, Preliminarily Approving Class-Action Settlement, and Approving Form and Manner of Notice.[7]

27.     The Settlement Class is narrower than the putative class pled in the Complaint, inasmuch as the Settlement Class consists only of people who, based on Defendants' records,

---

[7] As restated by the Court, "For settlement purposes only, this action may be maintained as a class action on behalf of all persons in the United States who have been identified by the defendants as insured under a Travel Plan purchased from January 1, 2014 to December 31, 2017, and for whom a claim for trip cancellation benefits was initiated under the Travel Plan." *Id.* (also reciting all exclusions from the Settlement Class).

initiated a coverage claim in connection with a cancelled trip that was never commenced. *Compare* Compl. ¶ 43 *with* SA ¶ A.36. Here, the total number of Settlement Class members identified by the Settlement Administrator is 96,382. *Id.*[8] Notably, the Settlement only releases the claims of Settlement Class Members and related persons identified in the Release. SA ¶ F.1.

### B. The Settlement Provides Significant Compensation to the Settlement Class

28.    The Settlement provides for Defendants to pay a non-reversionary Gross Settlement Fund of ***$3,237,500*** from which payments to Settlement Class Members will be made. SA ¶ C.1. After deductions for Court-approved attorney fees, litigation expenses, settlement administration costs, and a service award, the Net Settlement Fund will be divided among Settlement Class Members *pro rata* based on the amount of premium paid to insure that Settlement Class Member under their applicable Travel Plan, SA ¶ C.3, unless a Settlement Class Member would receive a payment of less than $5.00, in which event the payment will be increased until the payment reaches $5.00. *Id.* Based on analysis of available data about Settlement Class Members, Plaintiff estimates that Settlement Class Members will receive 7.5-10% of their premium paid, which represents about 25%-35% of the disputed premium amount paid for post-departure benefits.[9]

29.    Significantly, the Settlement does not require Settlement Class members to file a claim form in order to receive payment. Under the terms of the Settlement Agreement, the Settlement Administrator will send the appropriate Settlement Payment by check to every

---

[8] As of the time of the filing of Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement, the Parties had identified 105,284 potential settlement class members. Dkt. 108-1 at 5.
[9] For instance, if Settlement Payments are 7.5% of the total premium paid by Settlement Class Members for their travel plans, and assuming 29.27% is the portion of the total premium attributable to post-departure benefits (as was the high-end of the range estimated by Plaintiff's expert), the Settlement Payment would represent 25.6% (7.5/29.27) of the amount in dispute. Of course, the final settlement payment amounts will depend on if the Fee Motion is granted, how many Settlement Class members cash their check, and relatedly if a second distribution of the Residual Settlement Fund takes place.

Settlement Class Member for whom a mailing address has been provided, except that a check will not be sent to any Settlement Class member whose Postcard Notice is returned as undeliverable, and for whom no forwarding address has been found by the Settlement Administrator, and for whom no other address is provided by the Settlement Class Member prior to the Effective Date of the Settlement. SA ¶ C.4. If a Settlement Class member timely requests to be excluded from the Settlement, that Settlement Class member will also not receive a payment. SA ¶ E.1. Additionally, in lieu of receiving a check, the Settlement Administrator has (and will continue) to provide Settlement Class Members as part of the Notice Plan with the option of receiving payment via electronic means, including Paypal, Venmo, or other reasonable and valid means made available by the Settlement Administrator. SA ¶ C.4. Settlement Class Members shall have a full 180 days to cash their checks. SA ¶ C.5.

30.     If a portion of the Net Settlement Fund remains following the distribution by the Settlement Administrator to Settlement Class Members of their payments and the Check Cashing Deadline, then such remaining funds will be distributed to a *cy pres* recipient to be proposed by the Parties subject to the Court's approval. SA ¶ C.6. If the amount remaining is of such an amount that in the discretion of Lead Counsel and the Settlement Administrator it is feasible that such monies should be redistributed, then Lead Counsel may petition the Court for an Order to distribute the remaining Net Settlement Fund to those Settlement Class Members (rather than making a *cy pres* distribution). *Id.*

31.     In exchange for Defendants' payment of the Settlement Amount, Settlement Class Members (and related persons identified in the Release) will release all claims which were asserted or could have been asserted in the case concerning Defendants' alleged liability to pay partial refunds of premium paid by policyholders for post-departure benefits when their insured travel is

12

cancelled (as described in the Settlement). SA ¶ F.1. Significantly, the Release will ***exclude*** pending or as yet unfiled policyholder claims for trip cancellation benefits under the Travel Plans. *Id.*

## COURT APPROVAL OF THE SETTLEMENT

32.     By Order entered on June 16, 2021 (Dkt. 109), the Court preliminarily approved the Settlement under FED. R. CIV. P. 23(e)(1)(B), that Plaintiff has made a sufficient showing that it will "likely be able to" meet FED. R. CIV. P. 23(e)(2) and certification of the Settlement Class under FED. R. CIV. P. 23(a) and (b)(3).

33.     The Court also appointed Plaintiff Michelle Anderson as the class representative of the Settlement Class, and appointed Shanon J. Carson, Peter R. Kahana, Lane L. Vines, Y. Michael Twersky, and John G. Albanese of Berger Montague PC as settlement class counsel. *Id.*

34.     The Court also approved the Notice of Settlement and Claim Form attached as exhibits to the Settlement Agreement. The Court appointed Angeion Group, LLC ("Angeion") as the Settlement Administrator, and directed that Notice be given to the Settlement Class in accord with the Court's Preliminary Order.

35.     The Court scheduled a Final Approval Hearing to be held on September 22, 2021, to determine: whether the Settlement should receive final approval because it is fair, reasonable and adequate; whether an order and judgment should be entered dismissing the claims of the Settlement Class members and bringing the litigation of those claims to a conclusion; and other settlement-related matters, including the consideration of Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award.

36.     The Preliminary Approval Order directed Plaintiff to file a motion for final approval of the Settlement by September 1, 2021, and a motion for attorneys' fees, costs, a service

award for Plaintiff by September 8, 2021. Dkt. 109 at 9 (¶¶ 21, 22). In order to coordinate Plaintiff's filings, Plaintiff is filing both motions together on September 1, 2021, along with instant Declaration.[10]

## THE SETTLEMENT ADMINISTRATOR PROVIDED
## DUE PROCESS NOTICE AND CAFA NOTICE

37.     Angeion was retained by the Parties and appointed by the Court to serve as the Settlement Administrator in this litigation (Dkt. 109, Preliminary Approval Order at ¶ 6). Among other things, Angeion was tasked to provide notice to Settlement Class members; respond to Settlement Class member inquiries; and perform other duties as specified in the Settlement Agreement and by the directives of the Court, including but not limited to the Court's Order entered on June 16, 2021 (Dkt. 109), granting preliminary approval of the Settlement. The Court directed Angeion to issue the approved Notice of the Settlement, including using direct mail and email, by July 19, 2021 (Dkt. 112).[11] Pursuant to the Court's Preliminary Approval Order, Defendants advanced the estimated cost of providing the Notice, and Angeion successfully implemented the Notice Plan set out in the Settlement. As set forth in the Devery Declaration, Direct Notice by mail and/or email was disseminated to over 93% of the Settlement Class of 96,382 Settlement Class members identified from Defendants' records, and notice was also published on the Settlement Administrator's website. *See* Devery Declaration.

---

[10] Following the filing of these motions and supporting papers, the Settlement Administrator will also promptly post the filed fee motion on the Settlement Website. SA ¶ C.9. In other words, members of the Settlement Class will be able to fully examine this motion before deciding whether to opt-out, or object, by the September 14, 2021 deadline set by the Court in accordance with the preliminarily approved Settlement Agreement. Dkt. 109 at ¶ 11.

[11] *See* Declaration of Brian Devery of Angeion Group, LLC Regarding Implementation of Notice, dated August 31, 2021 ("Devery Decl."), at ¶ 5. A true and correct copy of the Devery Decl. is attached hereto as <u>Exhibit 4</u>.

38.     On June 21, 2021, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), Angeion, on behalf of the Defendants, caused notice of the Settlement and related materials (collectively, "CAFA Notice") to be sent to the Attorney General of the United States, the Attorneys General of all U.S. states and territories, and/or insurance commissioners or other state level departments responsible for insurance regulations of the states and the District of Columbia. Devery Decl. at ¶ 6. *Accord* Dtk. No. 109 at 8 (¶ 18); SA ¶ D.3.e.

39.     On or about June 24, 2021, Angeion received from the Defendants multiple Excel spreadsheets containing contact information for Settlement Class members to whom the Court-approved Notice of the Settlement to be sent. Devery Decl. at ¶ 7. *Accord* SA ¶ D.3.a. Angeion then combined all of the contact information provided to establish the Class List. Devery Decl. at ¶ 7. Angeion reviewed the spreadsheet data to identify and remove duplicate records, which resulted in a Class List that totals 96,382 Settlement Class members. *Id.* Of these Settlement Class members: 4,116 records did not contain a valid mailing address or email address; 663 contained a valid email address only; 67,737 contained only a mailing address; and 23,866 contained both a mailing address and a valid email address. *Id.*

40.     On or about July 15, 2021, Angeion caused all records on the Class List with an email address to be subjected to an email verification process whereby common errors and typos are corrected and the email is verified with the hosting email system. Devery Decl. at ¶ 8. After the completion of the verification process, 24,529 emails were determined to be valid. *Id.*

41.     On July 16, 2021, Angeion caused the Court-approved Email Notice to be sent via email to the 24,529 records on the Class List that contained a valid email address. Devery Decl. at ¶ 9. *Accord* SA ¶ D.3.b.

42.     On or about July 16, 2021, Angeion caused all Settlement Class member address data to be updated utilizing the NCOA database, which provides updated addresses for all individuals who have moved during the previous four years and filed a change of address with the United States Postal Service ("USPS"). Devery Decl. at ¶ 10.

43.     On July 17, 2021, Angeion caused the Class Mailed Notice to be sent via first-class mail to 91,603 Settlement Class members with a mailing address. Devery Decl. at ¶ 11. *Accord* SA ¶ D.3.b.

44.     During the period from the initial notice through August 30, 2021, Angeion received notification from the USPS of 1,446 Notices with updated addresses. The USPS forwarded these Notices to the updated addresses and Angeion updated its database records accordingly. Devery Decl. at ¶ 12.

45.     During the period from the initial notice through August 30, 2021, a total of 7,883 Notices were returned to Angeion by the USPS without forwarding addresses. Angeion conducted skip traces utilizing Lexis Nexis, a nationally recognized address search firm. Devery Decl. at ¶ 13.

46.     New addresses were identified for 5,228 of the undeliverable notices that were skip traced. The Class List and database were updated with the new address information and a Notice was re-mailed to these 5,288 Settlement Class members. Devery Decl. at ¶14. As of August 30, 2021, none of these Notices were returned to Angeion by the USPS as undeliverable. Devery Decl. at ¶ 15.

47.     On July 16, 2021, Angeion established the following website devoted to the Settlement: www.TravelPlanSettlement.com ("Settlement Website"). Devery Decl. at ¶16.[12]

---

[12] The Settlement Website contains an online portal whereby Settlement Class members may log in using the Claim Number and Confirmation code provided to them on their respective Notices to update their address information as well as select an alternative method of payment other than

*Accord* S.A. ¶ D.3.c. On that same day, Angeion also established a dedicated toll-free hotline for this Settlement to further apprise Settlement Class members of their rights and options under the Settlement. Devery Decl. at ¶17.[13] *Accord* S.A. ¶ D.3.d.

48.     The deadline to postmark exclusion requests or to file an objection to the Settlement is September 14, 2021. Dkt. 109 at 5 (¶ 11). As of August 30, 2021, Angeion has not received any objections to the Settlement and has received only one written request for exclusion from the Settlement Class. Devery Decl. at ¶ 18 (attaching redacted copy of the exclusion request).

49.     Angeion will continue to accept and process exclusion requests and objections, and shall inform the Parties if any additional exclusions or objections are received. Devery Decl. at ¶ 19. Angeion will also continue to accept address updates and form of payment selections from Settlement Class members, as well as reply to any inquiries they may have. Angeion will also continue to keep the Parties apprised of any additional exclusion requests or objections received, and any documentation that is received or postmarked after the deadline date. Devery Decl. at ¶ 20.

50.     Following an Order from the Court that provides final approval of the Settlement, and following the Effective Date of the Settlement, Angeion will cause the distribution of the Settlement funds in accord with the terms of the Settlement Agreement and the directives and Orders of the Court. Devery Decl. at ¶ 21.

---

check should they chose to do so. The Settlement Website also contains general information about the Settlement Agreement, documents filed with the Court, and important dates and deadlines pertinent to the Settlement in this litigation. The Settlement Website also has a "Contact Us" page whereby Settlement Class members can contact Angeion via email to update their address or submit additional questions regarding the Settlement. Additionally, a copy of the Settlement Class Notice and other important documents are available on the Settlement Website.
[13] The toll-free hotline utilizes an interactive voice response ("IVR") system to provide Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. This hotline is accessible 24 hours a day, seven days a week.

51.     Based on the Notice Plan and other administrative services contemplated by the Parties' Settlement Agreement, Angeion prepared a detailed estimate of Angeion's costs for the services to be provided, which were calculated as not exceeding $199,500. Dkt. 108-3 at ¶ 24. Angeion's estimate of costs to complete remains unchanged. Devery Decl. at ¶ 22. I have reviewed Angeion's work and cost estimate, and deem the work performed and the cost estimate (capped at $199,500) to be reasonable.

### THE SETTLEMENT ALLOWS FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARD FOR PLAINTIFF

52.     The Settlement allows Plaintiff to petition for attorneys' fees not to exceed one-third of the Settlement Amount, Litigation Expenses not to exceed $75,000, and a service award for Plaintiff Michelle Anderson not to exceed $6,500. SA ¶¶ C.7, C.8. Defendants' agreement not to oppose Class Counsel's attorneys' fees and reasonable expenses identified herein, and Plaintiff's Service Award, were obtained only after the material terms for the relief to the Settlement Class were agreed upon. SA ¶ C.8. The Notice Plan disclosed to members of the Settlement Class that any attorneys' fees and expenses, service award to Plaintiff, and notice and administration costs will come from the Settlement Amount (upon approval by the Court). *See, supra*.

53.     Most significantly, the Settlement Administrator has not received any objections to the Settlement and has received only one written request for exclusion from the Settlement Class.

### PLAINTIFF'S COUNSEL'S LODESTAR

54.     Plaintiff's Counsel spent significant time and resources in reaching this Settlement.

55.     I have reviewed the billing records maintained in this case by Berger Montague and believe the amount of time billed to specific tasks, and the amount spent on the case overall by Berger Montague, is reasonable and not excessive in light of the complexity and uniqueness of the case and the results achieved. As of August 18, 2021, the total number of recorded hours recorded

18

on this litigation by Berger Montague is 1,340.2 hours, and the lodestar amount for attorney and professional support staff time, based on the firm's current rates, is $822,647.00. A breakdown of Berger Montague's lodestar is reflected below, using the hourly rates that are usual and customarily charged in all of our cases:

| Name | Title | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Shanon J. Carson, Esq. | Managing Shareholder | 74.7 | $830.00 | $62,001.00 |
| Peter R. Kahana, Esq. | Shareholder | 296.4 | $830.00 | $246,012.00 |
| Lane L. Vines, Esq. | Senior Counsel | 310.8 | $630.00 | $195,804.00 |
| Y. Michael Twersky, Esq. | Associate | 211.5 | $530.00 | $112,095.00 |
| John G. Albanese, Esq. | Associate | 312.9 | $520.00 | $162,708.00 |
| Ariana B. Kiener, Esq. | Associate | 9.0 | $430.00 | $3,870.00 |
| Elizabeth W. Peterson, Esq. | Associate | 14.2 | $400.00 | $5,680.00 |
| Ruben Green | Paralegal | 8.0 | $330.00 | $2,640.00 |
| Rachel Gebo | Paralegal | 24.8 | $310.00 | $7,688.00 |
| Mai Xiong | Paralegal | 77.9 | $310.00 | $24,149.00 |
| **TOTAL** | | **1,340.2** | | **$822,647.00** |

56.     Due to the amount of potentially privileged, and work product protected, information contained in Berger Montague's actual hourly billing records, those detailed records are not attached here, but can readily be provided for this Court's *in camera* review should the Court wish to review them.

57.     The hourly rates for the attorneys and professional staff are the same as have been submitted by Berger Montague in other recent class actions to federal courts that have approved Berger Montague's applications for attorneys' fees and expenses. *See also, e.g., Klug v. Watts Regul. Co.*, No. 8:15-cv-61, 2017 WL 1373857, at *2 (D. Neb. Apr. 13, 2017) (approving rates of professional from Berger Montague and other counsel; finding that "[t]he hourly rates for the partners, associates and professional staff who worked on the litigation are in line with the rates of attorneys with similar expertise and experience would charge in non-contingent matters; *Sharp v.*

*Watts Regul. Co.*, No. 8:16-cv-200, 2017 WL 1373860, at *2 (D. Neb. Apr. 13, 2017) (same); *South Peninsula Hospital v. Xerox State Healthcare, LLC*, No. 3:15-cv-00177-JMK, slip op. at Dkt. No. 251 (D. Alaska Mar. 16, 2021) (accord).

58.     As detailed in the attached Evans Declaration (Ex. 2 at ¶ 9), Evans Law Firm's current lodestar is $99,691.50, based on 217.5 hours. As detailed in the attached Andreozzi Declaration (Ex. 3 at ¶ 7), Andreozzi Bluestein LLP's lodestar is $10,463.50, based on 36.4 hours. In addition, Plaintiff's local counsel in Nebraska spent two hours in connection with finalizing and filing the Complaint in this Action; Burke Smith Law's current lodestar is $550.

59.     Accordingly, the total current lodestars of Plaintiff's Counsel in the prosecution of this case are as follows:

| Firm | Total Hours | Total Lodestar |
|------|-------------|----------------|
| Berger Montague | 1,340.2 | $822,647.00 |
| Evans Law Firm | 217.5 | $99,691.50 |
| Andreozzi Bluestein LLP | 36.4 | $10,463.50 |
| Burke Smith Law | 2.0 | $550.00 |
| **TOTAL** | **1,596.1** | **$933,352.00** |

As combined, the total number of hours expended by Plaintiff's Counsel is 1,596.1 hours, and the total lodestar is $933,352.00.

60.     As settlement administration is ongoing, and additional submissions concerning the Settlement approval process are possible, based on my experience in previous class action cases, I estimate the actual lodestar of Plaintiff's Counsel could likely increase by more than $20,000 by the time of Settlement distribution. Such additional work may be expected to include overseeing the work of the Settlement Administrator, addressing (if any) unresolved objections, communicating with Settlement Class members, drafting supplemental filings for the Court, and attending the Final Approval Hearing scheduled for September 22, 2021. The proposed attorneys'

fee award of $1,079,166.67, represents a very modest multiplier of approximately 1.16 relative to Plaintiff's Counsel's actual, current lodestar. This multiplier will only decrease when taking into account the future work that Plaintiff's Counsel must perform to bring this case to a successful resolution, including supervising the Settlement Administrator in claims administration and overseeing the distribution of the Net Settlement Fund, among other things.

### SUMMARY OF WORK PERFORMED

61.     I, and the other attorneys under my supervision at Berger Montague, oversaw and reviewed the work performed by attorneys and other professionals throughout this litigation.

62.     I was involved with initially developing the case at this firm, including through extensive factual and legal research, beginning in the fall of 2016. I then managed and/or participated directly throughout this litigation, including: drafting of the detailed initial complaints; preparation of the briefs in opposition to Defendants' two motions to dismiss and motion seeking to certify for interlocutory appeal the Court's denial of Defendants' second motion to dismiss; review of approximately 20,000 pages of documents received in formal and mediation discovery, as well as extensive factual material amassed by Berger Montague's own informal discovery efforts and investigation (many of which documents were of a technical nature related to regulatory filings); retention of and extensive consultation with Plaintiff's expert, Charles DeWeese; interview and consultation with lead Plaintiff Michelle Anderson; preparation of Plaintiff's mediation statement and related exhibits used in ADR; and generation of status reports to the Court and Plaintiff, as well as numerous other legal and factual analyses relevant to the investigation, prosecution, discovery, mediation and settlement of this litigation. I also managed preparation of Plaintiff's written discovery requests propounded on Defendants during the discovery phase, including planning for the potential deposition examination of the Parties. I was also a primary

participant (along with Mr. Carson and others from my firm) in the mediation and settlement of this case. I am currently involved, along with other attorneys at Berger Montague who have been assigned to prosecuting this case, in overseeing the settlement administration process and will hereafter be involved in seeking the Court's final approval of the Settlement so that the Net Settlement Fund may be distributed to Settlement Class Members as the Court may so approve. Throughout this litigation, I have been a primary contact for communication and coordination with Plaintiff, Plaintiff's co-counsel, and Plaintiff's expert, Mr. DeWeese.

63.    Below, I provide a summary description of the work performed by each of the attorneys and professional staff members at Berger Montague who billed over five hours on this matter.

64.    Shanon Carson, Co-Chair of the Consumer Protection Department and a Managing Shareholder at Berger Montague, prepared for the ADR process, led the mediation and negotiating sessions that led to the Settlement, managed the briefing in support of the preliminary approval of the Settlement, and is currently assisting in overseeing the Settlement Administration process that was approved by the Court.

65.    John Albanese, an Associate, participated throughout this litigation, including drafting and editing motions, briefs, mediation statements and discovery; conducting legal and factual research; working with Mr. DeWeese in the development of his expert report; conducting the deposition of Travelex Senior VP Risk and Compliance Sally Dunlap; attending Court conferences and mediations; assisting in the mediation that led to the Settlement; communicating with the named Plaintiff; and coordinating discovery and settlement negotiations with co-counsel. Mr. Albanese had a primary role in the day-to-day conduct of the prosecution and discovery of this litigation.

66.    Lane Vines and Y. Michael Twersky, a Senior Counsel and an Associate, respectively, also participated throughout this litigation, including drafting and editing motions, briefs, mediation statements and discovery; conducting legal and factual research; propounding and responding to written discovery; reviewing documents and discovery responses received from Defendants; working with Mr. DeWeese in the development of his expert report; attending Court conferences and mediations; assisting in the mediation that led to the Settlement; communicating with the named Plaintiff; and coordinating with co-counsel, Defendants' counsel and the Settlement Administrator.

67.    Attorney Elizabeth W. Peterson assisted in the litigation by conducting legal research regarding state law claims in connection with Defendants' first motion to dismiss; and attorney Ariana B. Kiener conducted legal research in connection with Defendants' second motion to dismiss challenging Plaintiff's standing with respect to travel insurance plans that were not the specific kind of plan that was purchased by the Plaintiff.

68.    Paralegals Ruben Green, Mai Xiong assisted in editing, proofing and cite-checking briefs and other documents filed in this case, and also participated in organizational tasks and assisted in the preparation of pretrial filings. Ms. Gebo assisted conducting factual investigations and communications with potential class members.

69.    All of the work described above was to the best of my knowledge reasonable and necessary to the prosecution and settlement of this factually and legally novel case involving the component mix of travel insurance products, and the sale and regulation of those products. Through their comprehensive evaluation of the facts and law, as set forth above, and through their persistence, perseverance and determination over the past years, Plaintiff's Counsel was able to settle this case for a substantial sum (given the risks presented to a favorable outcome).

70.     Plaintiff's Counsel assumed a very real risk in taking on this contingent fee class action. Plaintiff's Counsel took the case on a contingency basis and has more than demonstrated that they were prepared to invest time, effort, and money over a period of years with absolutely no guarantee of any recovery. Contingent litigation on an individual basis is often based on 35% to 40% contingent fee. If this Action had proceeded through trial, and possibly an appeal, and Plaintiff was ultimately found to be unsuccessful in its claims, Plaintiff's Counsel would not be entitled to recover any attorneys' fees or costs.

## PLAINTIFF'S COUNSEL'S EXPENSES

71.     This litigation required Berger Montague, Evans Law Firm and Andreozzi Bluestein LLP to advance significant costs. Because the risk of advancing costs in this type of litigation is significant, doing so is often cost prohibitive to many attorneys and law firms.

72.     As of August 18, 2021, Berger Montague expended costs in the amount of $45,055.56 to prosecute this action, as follows:

| Expense | Amount |
|---|---|
| Telephone | $88.42 |
| Database Processing and Hosting | $1,899.30 |
| Reproduction Costs | $142.85 |
| Transcripts | $2,225.83 |
| Filing, Service Fees and Delivery | 641.76 |
| Computer Research | $8,632.40 |
| Expert and Consulting Fees | $17,050.00 |
| Mediation Fees | $14,375.00 |
| **TOTAL** | **$45,055.56** |

73.     The expenses incurred by Berger Montague pertaining to this case are reflected in the books and records of this firm. These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. The expenses incurred were reasonable and necessary to the prosecution of this case.

24

74.     As detailed in the attached Evans Declaration (Ex. 2 at ¶ 16), the Evans Law Firm incurred expenses totaling $2,420.75 in the prosecution of this case. As detailed in the attached Andreozzi Declaration (Ex. 3 at ¶ 12), Andreozzi Bluestein LLP incurred expenses totaling $808.77 in the prosecution of this case. In addition, the Burke Smith Law firm incurred a $400.00 expense for Court filing fees in filing the Complaint in this case. *See* Dkt. 1.

75.     Accordingly, the total costs incurred by Plaintiff's Counsel are as follows:

| Firm | Total Expenses |
|------|----------------|
| Berger Montague | $45,055.56 |
| Evans Law Firm | $2,420.75 |
| Andreozzi Bluestein LLP | $808.77 |
| Burke Smith Law | $400.00 |
| **TOTAL** | **$48,685.08** |

Collectively, Plaintiff's Counsel expended to date a total of $48,685.08 in the prosecution of this case. If approved, Plaintiff's Counsel intends to only seek reimbursement for the above and for any additional expenses that collectively total no more than $75,000, which is the maximum reimbursement provided for in the Preliminary Approval Order and set forth in the Notice to the Settlement Class. Plaintiff's Counsel anticipates that the firms may incur some additional expenses in preparing for the Final Approval Hearing (and potentially attending, if an in-person were to be held) and in administering and distributing the Settlement.

## PLAINTIFF'S SERVICE AWARD

76.     During this litigation, Plaintiff's Counsel worked closely with the sole named Plaintiff, Michelle Anderson, in each phase of litigation. Among other things, Ms. Anderson: assisted Plaintiff's Counsel in their preparation of pleadings, motions and other papers; conducted searches for and provided copies of relevant documents in her possession; received case status updates on behalf of proposed class members; consulted with Plaintiff's Counsel regarding the

strategy and discovery of this litigation, as well as in connection with the mediation sessions that lead to the proposed settlement that is now before the Court for final approval.

77.     Attached as <u>Exhibit 5</u> is a true and correct copy of a Declaration in support of the Motion for Fees that was executed by Michelle Anderson, the sole named Plaintiff and Class Representative, attesting to (Ex. 5, at ¶¶ 5-8):

   a.   Ms. Anderson's assistance in the investigation, preparation and review of the class action Complaint filed in this Action and in the predecessor litigation in the Western District of New York;

   b.   Ms. Anderson's assistance to Plaintiff's Counsel, in connection with the three motions to dismiss filed by Defendants (that is, including the related New York action from which this case stemmed);

   c.   Ms. Anderson's assistance producing documents relevant to her case; and

   d.   Ms. Anderson's work to receive case status updates and consult with Plaintiff's Counsel regarding the strategy and discovery of this litigation, as well as in connection with the mediation sessions, spanning multiple months, that lead to the proposed settlement that is now before the Court for final approval.

78.     Throughout this litigation, Ms. Anderson has dedicated the resources and efforts necessary to act as a steward to protect the interests of absent class members, *id.* at ¶ 9.

79.     As attested, Ms. Anderson approved and authorized the proposed Settlement and requests that the Court grant final approval to the Settlement. She believes that the Settlement is in the best interests of the Settlement Class, in that it will provide a certain and significant recovery, which is abundantly fair, reasonable and adequate in the circumstances. Ms. Anderson also support

Plaintiff's Counsel's request for attorneys' fees and reimbursement of costs and expenses. *Id.* at ¶¶ 10-11.

80.     In connection with the approval of this Settlement, Plaintiff has authorized Plaintiff's Counsel to request a service award for Michelle Anderson, the sole named Plaintiff and Class Representative in this litigation, in connection with her representation of the Settlement Class in this action. *Id.* at ¶ 12.

81.     Plaintiff's Counsel strongly and whole-heartedly supports the $6,500 service award requested for Plaintiff Michelle Anderson in this litigation. Ms. Anderson has been an impetus for this suit when no other consumer stepped up to take on the responsibilities for leading the prosecution of this important litigation.

Dated: September 1, 2021

 */s/ Peter R. Kahana*
Peter R. Kahana
BERGER MONTAGUE PC

*Counsel for Plaintiff and the Settlement Class*