IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MICHELLE ANDERSON, a individual, on behalf of herself and all others similarly situated,

Plaintiff,

vs.

TRAVELEX INSURANCE SERVICES INC. and TRANSAMERICA CASUALTY INSURANCE COMPANY,

Defendants.

8:18-CV-362

MEMORANDUM AND ORDER

This matter is before the Court on the Plaintiff's Motion for Final Approval of Class Action Settlement (filing 113) and Plaintiff's Motion for Approval of Attorney's Fees, Expenses and Service Award (filing 115). Having received the statements of counsel at a fairness hearing, and reviewed and considered the entire record, the Court will grant the motion.

BACKGROUND

This action was filed on July 30, 2018. Filing 1. The plaintiff charged the defendants with, generally speaking, wrongfully retaining premiums for illusory insurance coverage. *See* filing 1. The defendants moved to dismiss some or all of the plaintiff's claims on two separate occasions, but the Court denied each motion. *See* filing 41; filing 82. The defendants also moved for certification of an interlocutory appeal, but the Court denied that motion as well. *See* filing 92. After that, the parties went to mediation. *See* filing 93. A

few months later, the parties advised the Court that they had reached a settlement. Filing 101.

The plaintiffs filed an unopposed motion, pursuant to Fed. R. Civ. P. 23(b) & (e), to certify the settlement class, preliminarily approve the settlement agreement, and approve the form and manner of notice to the class. Filing 108. The Court granted that motion, finding, among other things, that this action could be maintained as a class action; the prerequisites to class certification under Rule 23(a) had been satisfied; and certification of the settlement class was superior to other available methods for the fair and efficient resolution of this controversy, satisfying Rule 23(b)(3). Filing 109. The Court designated a class representative, appointed settlement class counsel and a claims administrator, and scheduled a fairness hearing. Filing 109. And the Court reviewed the forms of notice submitted by the parties, approved them as to form, and approved their plan for directing notice to the class members, finding it provided the best notice practicable under the circumstances and was in compliance with Rule 23 and the requirements of due process. Filing 109.

Notice was sent to identified class members, setting a deadline for the class members to request exclusion from the class or object to the settlement. Filing 117-4. Notices were also sent as required by 28 U.S.C. § 1715. Filing 110; filing 117-4. Neither the claims administrator nor the Court received any objection that the proposed settlement was unfair to the settlement class. *See* filing 117-4 at 7. Accordingly, the plaintiffs filed the present motions. A fairness hearing was held, at which no objecting class members or other objectors appeared. Filing 119.

## SETTLEMENT AGREEMENT

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the Court's approval. Rule

23(e). The Court acts as a fiduciary who must serve as a guardian of the rights of absent class members. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (9th Cir. 2005); *In re BankAmerica Corp. Secs. Litig.*, 350 F.3d 747, 751 (8th Cir. 2004); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). The Court's role in reviewing a negotiated class settlement is to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned. *Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017); *Marshall v. Nat'l Football League*, 787 F.3d 502, 509 (8th Cir. 2015); *see Pollard v. Remington Arms Co., LLC*, 896 F.3d 900, 907 (8th Cir. 2018). If the proposed settlement would bind the class members, the Court may approve it only after a hearing and upon finding that it is fair, reasonable, and adequate. Rule 23(e)(2). But a class action settlement is a private contract negotiated between the parties. *Marshall*, 787 F.3d at 509; *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 934. And a settlement agreement is presumptively valid. *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013).

In this case, the Court finds that the appointed class representative and her counsel fairly and adequately represented the interests of the class members in connection with the settlement agreement, and that the class representative and the settling defendants were represented by able and experienced counsel. The settlement agreement was the product of good-faith, arm's-length negotiations by the class representative, settling defendants, and their respective counsel.

With respect to notice, the Court reaffirms its earlier finding that the form, content, and method of disseminating notice to the class members was adequate and reasonable and constituted the best notice practicable under the circumstances, satisfying Rule 23(c)(2)(B). By virtue of the fact that an action

maintained as a class suit under Rule 23 has res judicata effect on all members of the class, due process requires that notice of a proposed settlement be given to the class. *Grunin*, 513 F.2d at 120; *see Pollard*, 896 F.3d at 906. The notice given must be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Grunin*, 513 F.2d at 120; *see Pollard*, 896 F.3d at 906. In addition, the notice must reasonably convey the required information and it must afford a reasonable time for those interested to make their appearance. *Grunin*, 513 F.2d at 120. The contents must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options open to them in connection with the proceedings. *Id.* at 122.

The notice given in this case met those requirements; it informed the class members of the action and their options, accurately characterized all the pertinent terms of the settlement agreement (including attorney fees and expenses), and afforded the class members a reasonable opportunity to object.[1] As established in the Court's preliminary order approving notice, notices were sent directly to class members using the best available contact information. In short, the notice satisfied the requirements of Rule 23 and due process.

The Court also finds that the settlement agreement is fair, reasonable, adequate, and in the best interests of class members. In determining whether a settlement agreement is fair, the Court should consider (1) the merits of the plaintiffs' case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement. *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 978 (8th Cir. 2018); *Keil*, 862 F.3d at 693;

---

[1] The Court notes, in particular, the opportunity to object to the award of attorney's fees in the amount of ⅓ of the settlement fund. Filing 108-2 at 45-46; *see Keil*, 862 F.3d at 703-05.

*Marshall*, 787 F.3d at 508; *Uponor*, 716 F.3d at 1063.; *see Pollard*, 896 F.3d at 907. The most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement. *Rawa v. Monsanto Co.*, 934 F.3d 862, 868 (8th Cir. 2019); *see Pollard*, 896 F.3d at 907; *Target*, 892 F.3d at 978; *Keil*, 862 F.3d at 695; *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 648 (8th Cir. 2012). If the plaintiff class faced a strong unlikelihood of success, or an initial defeat followed by another round at the appellate level, virtually any benefit inuring to the class would be better than the prospect of an ultimately unsuccessful litigation. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995).

That said, the Court has neither the duty nor the right to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute. *Grunin*, 513 F.2d at 123. In examining a proposed settlement for approval or disapproval, the Court does not try the case; the very purpose of a compromise is to avoid the delay and expense of a trial. *Id.* at 124; *see also DeBoer*, 64 F.3d at 1178. So, the Court need not make a detailed investigation consonant with trying the case; it must, however, provide an appellate court with a basis for determining that its decision rests on well-reasoned conclusions, and is not mere boilerplate. *Keil*, 862 F.3d at 693; *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 932-33. The views of the parties to the settlement must also be considered; if only a handful of members object to the settlement, that weighs in its favor. *DeBoer*, 64 F.3d at 1178.

Of course, the Court did reach some preliminary conclusions on the issues underlying this dispute, in denying two motions to dismiss. *See* filing 41; filing 82. But those decisions in the plaintiff's favor left much to be contested on the evidence discovered, both on the merits of the claims and in class certification. Instead, the settlement agreement provides for the creation

of a common fund of over $3 million. Filing 108-2 at 5. That is, in the Court's view, a fair bargain, considering that the plaintiffs have avoided potentially lengthy and complex litigation without objection from the settlement class.

Based on the foregoing, the Court finds that the settlement agreement is fair, reasonable, and adequate within the meaning of Rule 23(e)(2), and will approve it.

ATTORNEY FEES AND EXPENSES

In a certified class action, the Court may award reasonable attorney's fees and non-taxable costs that are authorized by the parties' agreement. Rule 23(h). Settlement class counsel has moved for an award of fees and expenses pursuant to Fed. R. Civ. P. 54(d)(2). Filing 115. The Court bears the responsibility of scrutinizing attorney fee requests, and the burden rests with counsel to establish a factual basis to support the award. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996).

Courts utilize two main approaches to analyzing a request for attorney fees. *Johnston*, 83 F.3d at 244. Under the "lodestar" methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action. *Id.* Another method, the "percentage of the benefit" approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation. *Id.* at 244-45. The percentage-of-the-benefit method is recommended in common-fund cases. *Id.* But the Court has the discretion to use either method. *Target*, 892 F.3d at 976-77; *see Rawa,* 934 F.3d at 870; *Keil*, 862 F.3d at 701; *In re U.S. Bancorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *Johnston,* 83 F.3d at 245.

Under *either* the lodestar or percentage-of-the-benefit method, the Court may determine the reasonableness of the fee award by considering relevant factors from the twelve factors listed in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719-20 (5th Cir. 1974). *Target*, 892 F.3d at 977; *Keil*, 862 F.3d at 701. Those factors are:

1. The time and labor required,
2. The novelty and difficulty of the questions,
3. The skill requisite to perform the legal service properly,
4. The preclusion of other employment by the attorney due to acceptance of the case,
5. The customary fee,
6. Whether the fee is fixed or contingent,
7. Time limitations imposed by the client or the circumstances,
8. The amount involved and the results obtained,
9. The experience, reputation, and ability of the attorneys,
10. The "undesirability" of the case,
11. The nature and length of the professional relationship with the client, and
12. Awards in similar cases.

*Johnson*, 488 F.2d at 717-19.

The "percentage of the benefit" here is ⅓ of the settlement fund.[2] That's well in line with other attorney's fee awards in this circuit. *See Rawa*, 934 F.3d at 870; *Target*, 892 F.3d at 977; *Keil*, 862 F.3d at 701; *Caliguri*, 855 F.3d at

[2] The Court is aware that administrative costs and litigation expenses are to be paid from the settlement fund. The Court has considered those costs, and they are justifiable. *See Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865-66 (8th Cir. 2017); *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 623 (8th Cir. 2017).

865-66; *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017); *In re Life Time Fitness*, 847 F.3d at 623. The award is further supported by a lodestar cross-check. The standards to be considered in calculating attorneys' fees under a "lodestar" approach include (1) the number of hours spent in various legal activities by the individual attorneys, (2) the reasonable hourly rate for the individual attorneys, (3) the contingent nature of success, and (4) the quality of the attorneys' work. *Jorstad v. IDS Realty Trust*, 643 F.2d 1305, 1312-13 (8th Cir. 1981); *see also Grunin*, 513 F.2d at 127. But the starting point is multiplying hours and typical hourly rates; only after such a calculation do other, less objective, factors come into the equation. *Grunin*, 513 F.2d at 127.

The term "reasonable hourly rate" has been defined as the "hourly amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation." *Jorstad*, 643 F.2d at 1313. But the prevailing rate in the market from which attorneys have traveled may be considered. *See Miller v. Dugan*, 764 F.3d 826, 831 (8th Cir. 2014). The Court's own experience and research indicate that the rates at issue are at least defensibly representative for the relevant communities. *See E.I.H. v. Fair Lawn Bd. of Educ.*, No. 2:15-CV-8658, 2021 WL 1153139, at *4 (D.N.J. Mar. 25, 2021) (discussing hourly rates in Philadelphia). (And even if those rates were adjusted downward, the lodestar multiplier, discussed below, would still be relatively modest).

Generally, attorneys have substantiated their fee claims by providing detailed records relating to standard hourly rates for themselves or their firm and a complete breakdown of who spent what time in what endeavors. *Id.*; *see Grunin*, 513 F.2d at 127. Here, those records result in a lodestar multiplier of 1.16, which is highly reasonable in light of the quality of the work and the results obtained, and the contingency basis on which representation was

undertaken. *See Rawa*, 934 F.3d at 870; *Keil*, 862 F.3d at 701; *Caligiuri*, 855 F.3d at 866; *Huyer*, 849 F.3d at 399-400.

The Court is aware that the separate negotiation of attorney fees may present an opportunity for abuse. *See Johnston*, 83 F.3d at 246 n.11. But the Court finds no basis to suspect any type of abuse or collusion here. The Court also notes that the potential award of fees and expenses was disclosed in the notices to class members, including the amount, and no objections to the amount of the fees and costs were received. *See In re U.S. Bancorp.*, 291 F.3d at 1038. Given the time and skill necessary to litigate this case, including an appeal, and the result obtained in a contingency-fee case, the Court finds that the requested attorney's fees and non-taxable costs are reasonable, and will grant them.

SERVICE AWARD

Finally, the class representative seeks a service award of $6,500. Filing 116 at 35. It is within the Court's discretion to award service awards to a plaintiff who served as a class representative, considering the actions he took to protect the class's interests, the degree to which the class has benefitted from those actions, and the amount of time and effort she expended in pursuing the litigation. *Caligiuri*, 855 F.3d at 867. There has been no objection to the service award proposed here, and the Court finds that it is fair, reasonable, and properly based in the benefit to the class members generated by the litigation. The Court will approve the award.

IT IS ORDERED:

1. The Plaintiff's Motion for Final Approval of Class Action Settlement (filing 113) is granted.

2. The Plaintiff's Motion for Approval of Attorney's Fees, Expenses and Service Award (filing 115) is granted.

3. The plaintiff's counsel are hereby awarded total attorney's fees in the amount of $1,079,166.67, or one-third of the total $3,237,500 gross settlement fund amount.

4. The plaintiff's counsel are also awarded $48,789.03 in reimbursement of litigation expenses they incurred and disbursed in prosecuting this litigation.

5. The settlement agreement is approved in all respects, and the parties are directed to perform and satisfy the terms and conditions of the settlement agreement.

6. The distribution plan for the net settlement fund set forth in the settlement agreement provides a fair and reasonable basis upon which to allocate the proceeds of the settlement fund, and that distribution plan is approved.

7. The following terms of the settlement agreement shall be effective as set forth in the settlement agreement:

   a. The release of claims set forth in Section F of the settlement agreement is effective as of the effective date defined in the settlement agreement, and the released parties are forever released, relinquished and discharged from all released claims by the releasing parties as set forth below.

i. Upon the effective date, the plaintiff and all settlement class members, on behalf of themselves and all of their agents, heirs, estates, executors and administrators, successors, assigns, insurers, attorneys, representatives, and any and all persons who seek to claim through or in the name or right of any of them (the "releasing parties"), expressly and irrevocably release and forever discharge, upon good and sufficient consideration, the defendants and all of their respective present and former administrators, insurers, reinsurers, firms, parents, subsidiaries, and affiliates, and all of the defendants and the foregoing persons' respective predecessors, successors, assigns and present and former officers, directors, shareholders, employees, agents, indemnitees, attorneys, and representatives (collectively, the "released parties"), from any and all claims, demands, complaints, disputes, causes of action, rights of action, suits, debts, liabilities, obligations, and damages of every nature whatsoever, on any legal or equitable ground, whether based on federal, state, or local law, statute, ordinance, regulation, common law, private contract, agreement or any other authority, asserted or unasserted, known or unknown, that the releasing parties now have, ever had, or may in the future have, arising out of, resulting from, or related in any way to the litigation or the subject matter of the litigation,

and which were or could have been asserted in the litigation based upon the facts alleged, including, without limitation, any and all claims for attorney's fees, costs, or expenses, and any and all past and present claims, damages, or liability on any legal or equitable ground whatsoever ("released claims"). This release is as a result of the settlement class members' membership in the settlement class and status as releasing parties, the Court's approval process, and the occurrence of the effective date, and is not conditioned on receipt of payment by any particular settlement class member or releasing party. The released claims do not include either pending or as yet unfiled policyholder claims for trip cancellation benefits under the travel plans.

ii. All other release of claims provisions set forth in Section F of the settlement agreement are further incorporated by reference into, and made a part of, this memorandum and order and accompanying judgment.

b. The release of claims was bargained for and is a material element of the settlement agreement.

c. The release does not affect the rights of members of the settlement class who timely and properly submitted a request for exclusion from the settlement class in accordance

with the requirements of the preliminary approval order and settlement agreement.

d. The settlement shall be the exclusive remedy for any and all settlement class members, and the released parties shall not be subject to liability or expense for any of the released claims to any settlement class member.

e. The release shall not preclude any action to enforce the terms of the settlement agreement, including participation in any of the processes detailed in it. The release set forth in this memorandum and order and in the settlement agreement was not intended to include the release of any rights or duties of the parties arising out of the settlement agreement, including the express warranties and covenants contained in them.

8. Upon the effective date, the plaintiff and the settlement class members who have not timely and properly opted out and excluded themselves from the settlement shall be permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating in (individually or in a representative capacity) any lawsuit, action, or proceeding in any jurisdiction asserting or based upon any claims or causes of action released in the settlement and this memorandum and order and accompanying judgment, and from soliciting or encouraging any other class members to participate in any such lawsuit, action, or proceeding.

9. Pursuant to Rule 23, the Court finally certifies Michelle Anderson as the class representative and Shanon J. Carson, Peter R. Kahana, Lane L. Vines, Y. Michael Twersky, and John G. Albanese of Berger Montague PC as settlement class counsel.

10. Michelle Anderson is awarded $6,500 for her service as class representative.

11. The settlement administrator may be paid from the settlement fund its actual fees and costs incurred, up to $199,500, for notice and settlement administration services.

12. Upon the effective date, as defined in the settlement agreement and by operation of this memorandum and order, the terms of the settlement agreement (including all exhibits to it) and the terms of this memorandum and order are forever binding on and shall have *res judicata* and preclusive effect in all pending and future lawsuits maintained by settlement class members, as well as their agents, heirs, executors, administrators, successors, and assigns, against any of the released parties in any forum of any kind. The plaintiff and each settlement class member shall be bound by the terms of the settlement as set forth in the settlement agreement and this memorandum and order; shall be deemed to have released, dismissed and forever discharged the released claims against the released parties, with prejudice and on the merits, without costs to any of the parties; and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any of the released claims against any of the released

parties in any forum of any kind, whether directly or indirectly, whether on their own behalf or otherwise.

13. This this memorandum and order and accompanying judgment and the stipulation of settlement may be filed in any action against or by any released person to support a defense of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

14. In the event that the settlement does not become final as contemplated by the stipulation of settlement, this memorandum and order and the accompanying judgment shall automatically be rendered null and void and shall be vacated and, in such event, all orders entered and releases delivered in connection with them shall be null and void.

15. Neither the stipulation of settlement nor this memorandum and order and accompanying judgment constitute an admission of liability, fault, or wrongdoing on the part of the defendants.

16. Without affecting the finality of this memorandum and order and accompanying judgment in any way, the Court retains exclusive and continuing jurisdiction over the administration, consummation, and enforcement of the settlement agreement.

17. This case is dismissed with prejudice, parties to bear their own costs except as provided in the settlement agreement and other orders of this Court.

18. A separate judgment will be entered.

Dated this 22nd day of September, 2021.

BY THE COURT:

John M. Gerrard
United States District Judge