IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHELLE ANDERSON, an individual, on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br><br>vs.<br><br>TRAVELEX INSURANCE SERVICES INC. and TRANSAMERICA CASUALTY INSURANCE COMPANY,<br><br>                Defendants. | 8:18-CV-362<br><br>MEMORANDUM AND ORDER |

      This matter is before the Court on the parties' joint motion (filing 123) for a *cy pres* distribution of residual settlement monies. As pertinent, the parties' agreement provided for a settlement fund of $3,237,500.00, to be distributed by check to settlement class members on a *pro rata* basis based on their percentage of the premium paid under their applicable travel insurance plan. Filing 108-2 at 14. The settlement agreement further provided that

> [i]f a portion of the Net Settlement Fund remains following the distribution by the Settlement Administrator to Settlement Class Members of the Settlement Payments and after the expiration of the Check Cashing Deadline, then such remaining funds will be distributed to a *cy pres* recipient to be agreed to by the Parties and approved by the Court. If the Parties cannot agree, the Court shall select a *cy pres* recipient. However, if the amount remaining is of such an amount that, in the discretion of Lead Counsel and the

> Settlement Administrator, it is feasible that such monies should be redistributed to the Settlement Class Members who have previously received a Settlement Payment electronically or cashed their Settlement checks, then Lead Counsel may petition the Court for an Order to distribute the remaining Net Settlement Fund, net of the Settlement Administrator's additional fees and costs, to those Settlement Class Members rather than making a *cy pres* distribution.

Filing 108-2 at 15. Here, there is $407,004.71 left in the settlement fund, filing 123-1 at 3, and instead of asking for a supplemental distribution to the class members, the parties have asked the Court to approve their selection of two *cy pres* recipients, filing 123.

The *cy pres* doctrine takes its name from the Norman French expression, *cy pres comme possible,* which means "as near as possible." *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir. 2002); *accord Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017). The doctrine originated to save testamentary charitable gifts that would otherwise fail: If the testator had a general charitable intent, the Court looks for an alternate recipient that will best serve the gift's original purpose. *See Airline Ticket Comm'n,* 307 F.3d at 682. But it may also be used in the class action context, when it is appropriate for the court to use *cy pres* principles to distribute unclaimed funds. *Caligiuri,* 855 F.3d at 866; *Airline Ticket Comm'n,* 307 F.3d at 682. In such a case, the unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated. *Caligiuri,* 855 F.3d at 866; *Airline Ticket Comm'n,* 307 F.3d at 682-83.

But before considering the specifics of the proposed *cy pres* distribution, the threshold question is whether *cy pres* distribution is appropriate at all.

> [U]nless the amount of funds to be distributed *cy pres* is de minimis, the district court should make a *cy pres* proposal publicly available and allow class members to object or suggest alternative recipients before the court selects a *cy pres* recipient. This gives class members a voice in choosing a "next best" third party and minimizes any appearance of judicial overreaching.

*In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1066 (8th Cir. 2015). Determining whether a potential distribution is de minimis "*must* be based primarily on whether the amounts involved are too small to make individual distributions economically viable." *Id.* at 1065 (citation and quotation omitted).

The potential recovery to class members here, assuming every class member who claimed their initial settlement payout would claim a residual payout, is estimated by the settlement administrator to be $4.97 per person, *see* filing 123-1 at 4—right on the cusp of what might be considered de minimis. Courts have found larger amounts per person not to be de minimis. *E.g.*, *Perkins v. Linkedin Corp.*, No. 13-CV-4303, 2016 WL 613255, at *13 (N.D. Cal. Feb. 16, 2016) ($20) *Connor v. JPMorgan Chase Bank, N.A.*, No. 3:10-CV-1284, 2021 WL 1238862, at *2 (S.D. Cal. Apr. 2, 2021) ($8.19). And courts have found comparable and only slightly smaller amounts to be de minimis. *E.g.* *Good v. W. Virginia-Am. Water Co.*, No. 2:14-CV-1374, 2021 WL 6197053, at *7 (S.D. W.Va. Dec. 30, 2021) ($5.94 for roughly 1/3 of the claimants and $1.94 for the rest); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947-48 (D. Minn. 2016) ($3); *In re Easysaver Rewards Litig.*, 906 F.3d 747, 761 (9th Cir. 2018) (approximately $3). But on the other hand, smaller amounts have been found

not de minimis, *see Malta v. Fed. Home Loan Mortg. Corp.*, No. 3:10-cv-1290, 2017 U.S. Dist. LEXIS 121844 (S.D. Cal. July 31, 2017) ($3.07), and other courts have found that larger amounts were, *see In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 06-cv-4333, 2013 WL 12333442, at *81 (N.D. Cal. Jan. 8, 2013) (collecting cases).

In other words, the one conclusion the caselaw definitively supports is that "[t]he term '*de minimis*' carries no precise definition." *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1004 (N.D. Ohio 2016). But the Court finds here that given the facts and circumstances, and considering both the nature of the claims and the plaintiff class, the amount of $4.97 would be de minimis. The Court particularly notes that in the settlement agreement, filing 108-2 at 14, the parties agreed no class member would be sent a check for less that $5.00—a determination that is entitled to some consideration by the Court. *Cf. Rawa v. Monsanto Co.*, 934 F.3d 862, 871 (8th Cir. 2019).[1]

That requires the Court to consider whether the proposed *cy pres* recipients are appropriate. *See Caligiuri,* 855 F.3d at 866; *Airline Ticket Comm'n,* 307 F.3d at 682-83. The Court recognizes that "it is not sufficient to find that no next-best recipient is immediately apparent." *BankAmerica,* 775 F.3d at 1067. "Rather, a district court must carefully weigh all considerations, including the geographic scope of the underlying litigation, and make a thorough investigation to determine whether a recipient can be found that most closely approximates the interests of the class." *Id*. (quotation omitted).

The settlement class in this case, however, is challenging: Essentially, the only thing the Court can say the class members have in common is that

---

[1] Having made that finding, the Court does not consider whether the existing class members were fully compensated for their unliquidated damages by the initial distribution. *See Jones v. Monsanto Co.*, 38 F.4th 693, 698-99 (8th Cir. 2022).

they purchased travel insurance. The Court is hard-pressed to think of any charitable organization specifically devoted to helping people who've made insurably expensive travel plans. Rather, the Court agrees that the two organizations chosen by the parties are sufficiently consistent with the nature of the underlying action, based on their connection to consumer protection and international travel and aid. *See Caligiuri,* 855 F.3d at 867. Legal Aid provides, among other things, services to clients needing assistance with consumer debts and economic rights. *See* filing 123-2. And Direct Relief provides humanitarian assistance overseas, presumably of some appeal to those with an interest in international travel. *See* filing 123-3. Accordingly,

IT IS ORDERED:

1. The parties' joint motion for a *cy pres* distribution of residual settlement monies (filing 123) is granted.

2. The Court designates Legal Aid of Nebraska and Direct Relief as the *cy pres* recipients for the residual monies remaining after the distribution of the settlement fund, and directs the settlement administrator to distribute the residual monies equally to the two designated *cy pres* recipients.

Dated this 15th day of March, 2023.

BY THE COURT:

John M. Gerrard
Senior United States District Judge